LATHAM & WATKINS LLP
Mary Rose Alexander (Bar No. 143899)
*mary.rose.alexander@lw.com*
Thomas J. Heiden (Admitted *Pro Hac Vice*)
*thomas.heiden@lw.com*
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Tel: 312.876.7700
Fax: 312.993.9767

Shannon D. Lankenau (Bar No. 294263)
*shannon.lankenau@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: 415.391.0600
Fax: 415.395.8095

Michael A. Hale (Bar No. 319056)
*michael.hale@lw.com*
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Tel: 213.485.1234
Fax: 213.891.8763

Attorneys for Defendant
MARATHON OIL COMPANY

[Additional Counsel Listed on Next Page]

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| MDR HOTELS, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>MARATHON OIL COMPANY; THE DOW CHEMICAL COMPANY; and DOES 1 through 10, inclusive,<br><br>Defendants | **Case No. 2:20-cv-08008-DSF(JPRx)**<br><br>The Honorable Dale S. Fischer<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS** (F.R.C.P. 12(b)(6))<br><br>Hearing Date: January 4, 2021<br>Time: 1:30 p.m.<br>Place: First Street Courthouse, 350 West 1st Street, Courtroom 7D, Los Angeles, California 90012<br><br>*(Concurrently filed with Notice of Motion and Motion to Dismiss, Defendants' Request for Judicial Notice, Declaration of Michael R. Leslie, and Exhibits)* |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

DEFENDANTS' MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 2:20-cv-08008-DSF(JPRx)

PETER HSIAO (Bar No. 119881)
*phsiao@kslaw.com*
MICHAEL R. LESLIE (Bar No. 126820)
*mleslie@kslaw.com*
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone:   (213) 443-4355
Facsimile:    (213) 443-4310

JOEL BLANCHET (*Pro Hac Vice*)
*jblanchet@phillipslytle.com*
**Phillips Lytle LLP**
One Canalside
125 Main Street
Buffalo, NY 14203-2887
Telephone: (716) 847-7050
Facsimile: (716) 852-6100

CHRISTOPHER BARRAZA (*Pro Hac Vice*)
*cbarraza@phillipslytle.com*
340 Madison Ave., 17th Floor
New York, NY 10173
Telephone: 212.759.4888
Facsimile:   212.308.9079

*Attorneys for Defendant The Dow Chemical
Company*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

DEFENDANTS' MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 2:20-cv-08008-DSF(JPRx)

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ...................................................................................... 1

II.   RELEVANT FACTUAL BACKGROUND ................................................ 3

    A.   Ohio Oil Company's Lease, Abandonment, and
        Quitclaim of the Well........................................................................ 3

    B.   Dow's Lease and Abandonment of the Well ..................................... 4

    C.   The County's Ownership and Re-abandonment of the
        Well .................................................................................................. 5

    D.   MDR's Development Plans for and Lease of the Property
        "As Is"............................................................................................. 5

III.   LEGAL STANDARD ............................................................................... 6

IV.   MDR'S COMPLAINT IS LEGALLY DEFICIENT AS TO
      BOTH DEFENDANTS............................................................................. 6

    A.   MDR's Claims for Negligence, Permanent Nuisance, and
        Trespass Are Barred by the Statute of Limitations
        (Counts I, IV, V, VI) ....................................................................... 7

        1.   Torts Alleging Injury to Land Are Subject to the
            Three-Year Statute of Limitations............................................ 7

        2.   MDR's Contamination Claims Accrued Decades
            Ago............................................................................................ 7

        3.   The Discovery Rule Does Not Save MDR's
            Claims ...................................................................................... 9

    B.   MDR Cannot State a Claim for Negligence (Count I) ..................... 10

        1.   Neither Marathon Nor Dow (Remote Former
            Lessees of the Property) Owed a Legal Duty to
            MDR (the Current Lessee of the Property) to Use
            Due Care ................................................................................ 10

        2.   MDR's Negligence Damages Are Barred by the
            Economic Loss Rule ............................................................... 14

    C.   MDR Must Elect Between Continuing and Permanent
        Nuisance (Counts II, III, IV, V)......................................................... 16

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

i

DEFENDANTS' MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 2:20-cv-08008-DSF(JPRx)

V.    MDR'S COMPLAINT IS INDEPENDENTLY DEFICIENT
      AS TO MARATHON (ALL COUNTS) ....................................................... 17

           1.    Ohio Oil's Voided Lease with Recreation Gun
                 Club Has No Legal Effect ........................................................ 18

           2.    The County Took the Property From Ohio Oil
                 "As-Is" ................................................................................... 19

VI.   MDR'S COMPLAINT FAILS TO SATISFY REQUIRED
      PLEADING STANDARDS .................................................................... 21

      A.    MDR Improperly Relies Upon Group Pleading and Fails
            to Specify Actionable Conduct by Marathon or Dow ...................... 21

      B.    MDR Fails to Adequately Plead Tortious Conduct with
            Specificity ....................................................................................... 22

      C.    MDR Fails to Adequately Plead Causation ................................... 23

VII.  CONCLUSION ........................................................................................ 25

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

DEFENDANTS' MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 2:20-cv-08008-DSF(JPRx)

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allison v. Thomas*,
  72 Cal. 562, 14 P. 309 (1887)..................................................................19

*April Enters., Inc. v. KTTV*,
  147 Cal. App. 3d 805 (1983)...................................................................10

*Arutyunyan v. Chase Bank U.S.A., N.A.*,
  Case No. CV 12-8357, 2013 WL 12402582 (C.D. Cal. May 15,
  2013)........................................................................................................21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...........................................................................6, 23, 25

*Baker v. Burbank-Glendale-Pasadena Airport Auth.*,
  39 Cal. 3d 862 (1985)........................................................................16, 17

*Balistreri v. Pacifica Police Dep't*,
  901 F.2d 696 (9th Cir. 1988), *overruled in part on other grounds*.....................6

*Beck Dev. Co. v. S. Pac. Transp. Co.*,
  44 Cal. App. 4th 1160 (1996)................................................................8

*Camsi IV v. Hunter Tech. Corp.*,
  230 Cal. App. 3d 1525 (1991)....................................................7, 8, 9, 10

*Century Sur. Co. v. Crosby Ins., Inc.*,
  124 Cal. App. 4th 116 (2004).................................................................10

*Chase v. Residential Credit Sols., Inc.*,
  No. CV 15-09224-BRO, 2016 WL 7469604 (C.D. Cal. Mar. 28,
  2016)..............................................................................................10, 11, 12

*City of Modesto v. Dow Chem. Co.*,
  19 Cal. App. 5th 130, 158 (2018), *as modified on denial of reh'g*
  (Feb. 6, 2018), *review denied* (Apr. 25, 2018).......................................23

*Cnty. of Santa Clara v. Atlantic Richfield Co.*,
  137 Cal. App. 4th 292 (2006)...................................................................14

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

DEFENDANTS' MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 2:20-cv-08008-DSF(JPRx)

*Galen v. Mobil Oil Corp.*,
    922 F. Supp. 318 (C.D. Cal. 1996)................................................................. 13, 20

*Harry v. Ring the Alarm, LLC*,
    34 Cal. App. 5th 749, 759 (2019)................................................................. 12

*Hart v. Select Portfolio Servicing, Inc.*,
    Case No. CV 15-7953-R, 2015 WL 8374926 (C.D. Cal. Dec. 9,
    2015)......................................................................................................... 22, 23

*Hukill v. Warren*,
    Case No. EDCV 17-02448, 2018 WL 5880779 (C.D. Cal. May 16,
    2018)......................................................................................................... 21

*Jones v. Texaco, Inc.*,
    945 F. Supp. 1037 (S.D. Tex. 1996)............................................................. 12

*Little v. Cfs Serv. Corp.*,
    188 Cal. App. 3d 1354 (1987)..................................................................... 18

*Lorenzo v. Qualcomm Inc.*,
    No. 08cv2124 WQH (LSP), 2009 WL 2448375 (S.D. Cal. Aug. 10,
    2009)......................................................................................................... 25

*Mains v. City Title Ins. Co.*,
    34 Cal. 2d 580 (1949)................................................................................. 19, 21

*Mangini v. Aerojet-General Corp.*,
    12 Cal. 4th 1087 (1996).............................................................................. 17

*Mangini v. Aerojet-General Corp.*,
    230 Cal. App. 3d 1125 (1991)..................................................................... 7

*In re Marriage of Gioia*,
    119 Cal. App. 4th 272 (2004)...................................................................... 19, 20

*McCoy v. Gustafson*,
    180 Cal. App. 4th 56 (2009)........................................................................ 16, 17

*Miller & Lux v. Gray*,
    136 Cal. 261 (1902).................................................................................... 19

*Novak v. Continental Tire North America*,
    22 Cal. App. 5th 189, 231 Cal. Rptr. 324 (2018)........................................ 23, 24

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

iv

DEFENDANTS' MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 2:20-cv-08008-DSF(JPRx)

*O'Neil v. Crane Co.*,
   53 Cal. 4th 335 (2012) .................................................................................... 10

*People v. Kinder Morgan Energy Partners, L.P.*,
   159 F. Supp. 3d 1182 (S.D. Cal. 2016) ......................................................... 17

*Progressive Collection Bureau v. Whealton*,
   62 Cal. App. 2d 873 (1944) ........................................................................... 18

*Rines v. Riverside Cty. Jails*,
   No. 519CV00426PAMAA, 2019 WL 8806228 (C.D. Cal. May 7,
   2019) .............................................................................................................. 21

*Rosenblatt v. Exxon Co., U.S.A*,
   335 Md. 58 (1994) .................................................................................. 11, 13

*S. California Gas Leak Cases*,
   7 Cal.5th 391 (2019) ............................................................................... 14, 15

*Sacramento Regional Transit Dist. v. Grumman Flxible*,
   158 Cal. App. 3d 289 (1984) ........................................................................ 15

*Safarian v. Govgassian*,
   47 Cal. App. 5th 1053, 1067 (2020) ............................................................. 18

*Scotten v. First Horizon Home Loan Corp.*,
   No. CIV. 2:12-1266 WBS DAD, 2012 WL 3277104 (E.D. Cal.
   Aug. 9, 2012) ................................................................................................. 24

*Shamsian v. Atl. Richfield Co.*,
   107 Cal. App. 4th 967 (2003) ......................................................................... 8

*Shapiro v. Hu*,
   188 Cal. App. 3d 324 (1986) ........................................................... 13, 20, 21

*Sheahan v. State Farm Gen. Ins. Co.*,
   394 F. Supp. 3d 997 (N.D. Cal. 2019) .......................................................... 14

*Thomas v. Dep't of Child Support Servs.*,
   No. CV 18-3236-DSF-KK, 2019 WL 1371150 (C.D. Cal. Jan. 18,
   2019) .............................................................................................................. 21

*Vavak v. Abbott Labs., Inc.*,
   SACV 10-1995 JVS, 2011 WL 13130493 (C.D. Cal. Mar. 7, 2011) ............... 24

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
CHICAGO

v

DEFENDANTS' MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 2:20-cv-08008-DSF(JPRx)

*Verse Two Properties, LLC v. Medplast Fremont, Inc.*,
No. 5:14-CV-03765-EJD, 2015 WL 7075969 (N.D. Cal. Nov. 13,
2015) ............................................................................................................... 15

*Veterans of Foreign Wars v. City of El Paso de Robles*,
62 Cal. App. 4th 1077 (1998) .................................................................. 19, 20

*W. Mining Council v. Watt*,
643 F.2d 618 (9th Cir. 1981) ............................................................................ 6

*Wendell v. Johnson & Johnson*,
No. 09-CV-04124, 2010 WL 271423 (N.D. Cal. Jan. 20, 2010) ....................... 22

*Wilshire Westwood Assocs. v. Atlantic Richfield Co.*,
20 Cal. App. 4th 732 (1993) .............................................................. 7, 8, 9

*Wilson Auto Enterprises, Inc. v. Mobil Oil Corp.*,
778 F. Supp. 101 (D.R.I. 1991) ...................................................................... 12

**Statutes**

28 U.S.C. § 1332 ............................................................................................... 6

28 U.S.C. § 1441 ............................................................................................... 6

28 U.S.C. § 1446 ............................................................................................... 6

Cal. Pub. Res. Code § 3208 ............................................................................... 1

Cal. Pub. Res. Code § 3208.1 ............................................................................ 1

Cal. Pub. Res. Code § 3230 ............................................................................... 1

Cal. Pub. Res. Code § 3232 ............................................................................... 1

Cal. Pub. Res. Code §§ 3746-3748 .................................................................... 1

Code Civ. Proc., § 338, subd. (b) ................................................................... 7, 8

**Other Authorities**

*Black's Law Dictionary* 115, 270 (3d. ed. 1933) .............................................. 19

*Black's Law Dictionary* 115, 270 (11th ed. 2019) ............................................ 20

L.R. 7-3 ............................................................................................................ 6

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

DEFENDANTS' MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 2:20-cv-08008-DSF(JPRx)

Miller & Starr, Cal. Real Estate (4th ed. 2020) § 8:13 ..................................... 19, 20

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

DEFENDANTS' MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 2:20-cv-08008-DSF(JPRx)

1   Defendants Marathon Oil Company ("Marathon") and The Dow Chemical
2   Company ("Dow") respectfully submit this Memorandum of Points and Authorities
3   in support of their Motion to Dismiss each and every claim Plaintiff MDR Hotels,
4   LLC ("MDR") asserts in its Complaint.  ECF No. 1-2 ("Compl.").

5   **I.    INTRODUCTION**

6   This case concerns an improper attempt by MDR, a sophisticated real estate
7   developer, to shift blame for an apparent methane gas release it caused while
8   attempting to build a hotel in Marina Del Rey.  Rather than take responsibility for its
9   failings and those of its contractor when attempting to re-abandon a 1930's-era well
10  ("Well No. 10" or "the Well"), MDR seeks to foist liability onto Dow and Marathon,
11  two remote former lessees that have not had any ownership of, control over, or
12  involvement with either the Well or the Property for at least 60 years.[1]

13  MDR further fails to apprise the Court of the role of the County of Los Angeles
14  ("County"), which is the current owner of the Property.  MDR ignores that after Ohio
15  Oil Company ("Ohio Oil") (Marathon's predecessor) and Dow lawfully abandoned
16  the Well in 1941 and 1956, respectively, the County took over ownership of the Well
17  in 1958 and subsequently re-abandoned it in 1959.  More than 60 years later—and
18  with full knowledge of the presence of the abandoned Well—MDR leased the
19  Property from the County "as is" without any covenants or warranties as to its
20  condition.

21  Because it cannot seek recourse from the County—the only entity that arguably
22  owed any duty to MDR—MDR filed the present lawsuit against Defendants.  But
23  California law does not countenance MDR's attempt to shift blame to two former and
24  extremely remote lessees.  MDR's Complaint should be dismissed in its entirety
25  based upon the following irreparable and independent foundational legal defects:

26

27  [1] The terms "abandon" and "re-abandon" under the California Public Resources Code
    refer to specific steps taken with the approval of the regulating agency,
28  DOGGR/CalGEMS, to properly seal wells at the end of their productive lives.  *See,
    e.g.*, Cal. Pub. Res. Code §§ 3208, 3208.1, 3230, 3232, 3746-3748.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

1

DEFENDANTS' MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 2:20-cv-08008-DSF(JPRx)

*First*, MDR's negligence, trespass and permanent nuisance claims, all of which allege injury to the Property, are time-barred because neither Defendant is alleged to have constructed, operated, or abandoned the Well for at least 60 years.  The discovery rule does not save MDR's claims because MDR knew by 2013, *at the latest*, of the abandoned Well and of the presence of methane gas on the Property.  All but two of MDR's claims are time-barred.

*Second*, as remote lessees of the Property many decades ago, neither Marathon nor Dow owes any duty to the current lessee, MDR.  There is no relationship between the Parties that would have made it foreseeable that an act or omission by Defendants would result in harm to MDR more than 60 years later.  Nor could any such relationship exist—MDR leased the Property "as-is" from the County with all of its faults, including any faults related to the condition of the Well that allegedly caused the methane gas release.  Simply put, MDR has no legally cognizable negligence claim against prior lessees Marathon and Dow.  Moreover, its alleged losses—increased disposal costs, regulatory compliance costs, delays, and loss of business, to name a few—are purely economic, and thus not recoverable under the economic loss rule.  And, likewise, MDR cannot recover for damage to Property that is owned by the County.  As such, MDR's negligence claims must be dismissed.

*Third*, MDR cannot pursue both continuing nuisance and permanent nuisance claims simultaneously.  Its contradictory allegations that it has abated the alleged nuisance, but that the alleged nuisance presents an ongoing threat, cannot be reconciled.  MDR cannot have it both ways.

*Fourth*, Marathon extinguished any obligations it may have had related to the Property three different times several decades ago when it voided its lease, and twice quitclaimed the Property, including Well No. 10.  MDR cannot resurrect what was extinguished decades ago.  For this independent reason, all claims must be dismissed against Marathon.

*Fifth*, even if MDR had pled claims that survive as a matter of law (it has not),

1    its claims would still fail to satisfy the *Twombly/Iqbal* pleading standards.

2         For each of these independent reasons, MDR's Complaint should be dismissed.

3    **II.     RELEVANT FACTUAL BACKGROUND**

4         MDR's Complaint relates to the abandoned Well No. 10, located at 4360 Via

5    Marina in Marina Del Rey, California (the "Property").  Compl. ¶ 1.  The Property is

6    presently owned by the County.  *Id.* ¶ 2.  MDR leased the Property from the County

7    on July 31, 2017.  RJN Ex. 14.  Marathon's predecessor Ohio Oil operated the Well

8    from 1931 to 1933 and in 1941.  *Id.* ¶ 3.  Dow operated the Well from 1941 to 1956.

9    *Id.* ¶ 4; RJN Exs. 6-9.  Dow transferred ownership of the Well to the County in 1958,

10   which re-abandoned the Well in 1959.  Compl. ¶ 4; RJN Exs. 12, 13.

11        MDR's Complaint omits any allegations related to Defendants' actual

12   involvement with, and legal relationship to, the Property or Well No. 10.  MDR

13   merely alleges that the Property is owned by the County and that Defendants drilled,

14   operated, and abandoned the Well more than 60 years ago.  Compl. ¶¶ 2-4.  However,

15   publicly available documents subject to judicial notice fill in what MDR has failed to

16   disclose to the Court.  The relevant undisputed facts are as follows.

17        **A. <u>Ohio Oil Company's Lease, Abandonment, and Quitclaim of the Well</u>**

18        In 1929, the original owner of the Property, Recreation Gun Club, executed a

19   lease with A. A. Curtice authorizing the extraction of oil and gas from the subsurface.

20   RJN Ex. 1.  The following year, A. A. Curtice assigned its lease to Marathon's

21   predecessor, Ohio Oil.  RJN Ex. 2.  Ohio Oil was assigned all rights, title, and interest

22   of the original lessee to the lands covered thereunder between Recreation Gun Club

23   and A. A. Curtice, including "the sole and exclusive right . . . to explore, mine and

24   operate, take, store, remove and dispose of oil, gas, casing-head gas and other

25   hydrocarbon substances from the leased property."  *Id.*  In 1931, Ohio Oil drilled an

26   oil well known as "Well No. 10" on the Property.  Compl. ¶ 3; RJN Ex. 3.  Ohio Oil

27   operated the Well for only three years from approximately 1931 to 1933.  Compl. ¶ 3.

28        In 1940, Ohio Oil received approval from the State of California Department

1    of Natural Resources Division of Oil and Gas ("DNR") to abandon Well No. 10 and

2    did so in January 1941.  Compl. ¶ 3; RJN Ex. 8.  In January 1941, Ohio Oil also gave

3    notice to DNR of its intent to transfer ownership of Well No. 10 to Dow.  RJN Ex. 8.

4    On July 10, 1941, Ohio Oil sold Well No. 10 to Dow.  RJN Ex. 7.

5       Thereafter, Ohio Oil's interests in the Property and obligations to those holding

6    an interest in the Property were conveyed, deeded, and terminated—by three

7    conveyances—each more than 60 years ago.

8       ***First***, on July 10, 1941, Ohio Oil executed a "Partial Release" that "***cancelled***,

9    surrendered, ***annulled***, and held for naught" its lease assignment for the Property,

10    including specifically Well No. 10 and the surrounding land.  RJN Ex. 5 (emphasis

11    added).

12       ***Second***, and also on July 10, 1941, Ohio Oil conveyed and deeded back to the

13    Recreation Gun Club its interest in certain portions of the Property, including Well

14    No. 10 and the land surrounding it, via a recorded quitclaim deed.  *Id.*  Ohio Oil's

15    quitclaim deed conveyed the Property "as is" to Recreation Gun Club with no

16    covenant, representation, or warranty as to the condition of the Property.  *Id.*

17    Recreation Gun Club took Ohio Oil's interest in the Property as so conveyed.

18       ***Third***, on November 24, 1958, Ohio Oil conveyed and deeded to the County

19    whatever remaining interest it may have had in the Property via a recorded quitclaim

20    deed.  RJN Ex. 10.  That quitclaim deed, like the 1941 quitclaim deed, conveyed the

21    Property "as is" with no covenant, representation, or warranty as to the condition of

22    the Property.  *Id.*  The County took Ohio Oil's interest in the Property as so

23    conveyed.

24      **B. Dow's Lease and Abandonment of the Well**

25       In 1941, Dow recompleted the Well for the purpose of brine extraction and

26    iodine production.  RJN Ex. 8.  On July 15, 1941, Dow entered into a mineral lease

27    with Recreation Gun Club for Well No. 10, which it operated until 1956, when it

28    received approval from DNR to abandon the Well.  RJN Ex. 6; RJN Ex. 9.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

4

DEFENDANTS' MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 2:20-cv-08008-DSF(JPRx)

**C. The County's Ownership and Re-abandonment of the Well**

On December 4, 1958, Dow transferred ownership of Well No. 10 to the County.  RJN Ex. 12.  On December 1, 1958, Recreation Gun Club conveyed ownership of the Property to the County such that the County owned the Property and all related rights, title, and interest therein, including Well No. 10.  RJN Ex. 11.  The County then filed a Notice of Intention to Abandon Well with DNR, which was approved on January 2, 1959, and re-abandoned the Well on April 7, 1959.  Compl. ¶ 4; RJN Ex. 13.  The County has owned the Property since 1958.

**D. MDR's Development Plans for and Lease of the Property "As Is"**

Almost 50 years later, in October 2013 MDR submitted a Development Plan that explicitly acknowledged the presence of an abandoned oil well and methane gas on the Property.  RJN Ex. 14, at § 5.1 and Exhibit B to the Lease ("There is one known abandoned oil well on the site that will have to be re-abandoned in accordance with Department of Conservation – Division of Oil, Gas & Geothermal Resources.  Furthermore, the building structure will have to be designed for the mitigation of methane gas.").  On July 31, 2017, MDR leased the Property, including Well No. 10, from the County.  RJN Ex. 14.  Pursuant to MDR's lease, MDR took the Property "as-is" from the County with all of its faults, including any faults related to the condition of Well No. 10.  *Id.* §§ 1.2.1 and 15.4.1.

At an unspecified time in the fall of 2017, MDR claims it "discovered" that Well No. 10 was within the footprint of MDR's planned building and assessed that it was leaking methane.  Compl. ¶¶ 5, 6.  MDR then submitted proposals to re-abandon the Well to the County and DOGGR (the predecessor of CalGEM), which were approved.  *Id.* ¶ 10. MDR's contractor proceeded with re-abandonment despite numerous signs that a catastrophic blowout was imminent.  *Id.* ¶¶ 11-14.

MDR filed its Complaint in Los Angeles County Superior Court on July 31, 2020, alleging causes of action for negligence, continuing public nuisance, continuing private nuisance, permanent public nuisance, permanent private nuisance,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

5

DEFENDANTS' MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 2:20-cv-08008-DSF(JPRx)

1    and trespass.  ECF No. 1-2.  On September 1, 2020, Dow filed a Notice of Removal

2    to Federal Court Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  ECF No. 1.  On

3    September 2, Marathon filed a Joinder to Dow's Notice of Removal.  ECF No. 10.

4    On October 2, 2020, the Court granted the Parties' joint stipulation to extend

5    Defendants' deadline to answer or otherwise respond to MDR's Complaint to

6    November 2, 2020.  ECF No. 35.  On October 26, 2020, the Parties met and

7    conferred regarding Defendants' intent to file a Motion to Dismiss in accordance

8    with Local Rule 7-3.  No agreement was reached.  *See* Decl. of Michael Leslie, ¶ 16.

9    **III.    LEGAL STANDARD**

10          Federal Rule of Civil Procedure 12(b)(6) allows a Court to dismiss an action

11   for failure to state a claim upon which relief can be granted.  *Balistreri v. Pacifica*

12   *Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (as amended), *overruled in part on*

13   *other grounds.*  While a court must accept as true all of the factual allegations

14   contained in a complaint, "[t]hreadbare recitals of the elements of a cause of action,

15   supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556

16   U.S. 662, 678 (2009).  Instead, the plaintiff must plead "factual content that allows

17   the court to draw the reasonable inference that the defendant is liable for the

18   misconduct alleged."  *Id.* at 678 (internal citation omitted).  Courts need not accept as

19   true a plaintiff's (1) conclusory allegations, (2) legal conclusions, (3) allegations that

20   contradict matters properly subject to judicial notice, or (4) allegations that contradict

21   documents attached to or incorporated by reference into the complaint.  *W. Mining*

22   *Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

23   **IV.    MDR'S COMPLAINT IS LEGALLY DEFICIENT AS TO BOTH**
     **DEFENDANTS**
24

25          MDR's Complaint must be dismissed against both Defendants because: (a) all

26   but two of the claims are barred by the applicable statute of limitations; (b) the

27   negligence claim fails for lack of duty and is barred by the economic loss doctrine;

28   and (c) the four nuisance claims present an irreconcilable conflict barred by

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

6

DEFENDANTS' MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 2:20-cv-08008-DSF(JPRx)

California law.

**A. <u>MDR's Claims for Negligence, Permanent Nuisance, and Trespass Are Barred by the Statute of Limitations (Counts I, IV, V, VI)</u>**

1. <u>Torts Alleging Injury to Land Are Subject to the Three-Year Statute of Limitations</u>

Because MDR alleges injury to land, its claims are governed by the three-year statute of limitations in Code of Civil Procedure Section 338(b) for actions "for trespass upon or injury to real property." Code Civ. Proc., § 338(b); *Camsi IV v. Hunter Tech. Corp.*, 230 Cal. App. 3d 1525, 1533 (1991) (section 338(b) applied to time-bar negligence, trespass, and nuisance claims based on property contamination). MDR's first, fourth, fifth, and sixth claims are all predicated on allegations of Defendants' conduct on the Property that occurred over 60 years ago and must be dismissed. *See, e.g.*, Compl. ¶¶ 3-4. The sole allegation in the Complaint directed specifically at Marathon and its alleged predecessor Ohio Oil is that Ohio Oil drilled and operated an oil well on the Property between 1931 to 1933 and abandoned the Well in 1941. *Id.* ¶ 3. Likewise, the sole allegation directed specifically at Dow is that Dow acquired the Well after Ohio Oil, operated it until 1956 for iodine production, and then abandoned the Well in 1958. *Id.* ¶ 4. The County then acquired the Well and undertook additional work to re-abandon it in 1959. *Id.*; RJN Exs. 12, 13. There are no allegations that Marathon or Dow had any other ownership, control, or involvement with either the Well or the Property after 1958.

2. <u>MDR's Contamination Claims Accrued Decades Ago</u>

In tort cases, the "traditional rule is that a statute of limitations begins to run upon the occurrence of the last element essential to the cause of action, even if the plaintiff is unaware of his cause of action." *Mangini v. Aerojet-General Corp.*, 230 Cal. App. 3d 1125, 1149-50 (1991). The infliction of actual and appreciable harm will start the limitations period. *Wilshire Westwood Assocs. v. Atlantic Richfield Co.*, 20 Cal. App. 4th 732, 739 (1993).

Under California law, harm to real property runs with the land. *See id.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

7

DEFENDANTS' MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 2:20-cv-08008-DSF(JPRx)

("Where the harm at issue is a tortious injury to property, the injury is considered to be to the property itself, rather than to the property owner.").  In such cases, the running of the statute of limitations operates to bar claims by the owner *and* all subsequent owners of the property.  *Beck Dev. Co. v. S. Pac. Transp. Co*., 44 Cal. App. 4th 1160, 1216 (1996).  "In other words, the statute of limitations does not commence to run anew every time the ownership of the property changes hands." *Id.*; *see also Wilshire Westwood*, 20 Cal. App. 4th at 740 ("An owner must bring its claim to court within the statutory period or the claim will be barred for that and all subsequent owners."); *Camsi IV*, 230 Cal. App. 3d at 1535 ("Normally a subsequent owner will not be personally harmed by the tort until he or she becomes the owner, but no case has held that each new owner thus becomes entitled to a new statute of limitations against the tortfeasor.  Such a rule would wholly disregard the repose function of statutes of limitations.").[2]

MDR filed its Complaint on July 31, 2020, more than 60 years after either Defendant is alleged to have conducted any construction, operation, or abandonment work on the Well.  Although MDR alleges Defendants' actions somehow caused "injurious consequences" in the form of soil contamination and blowouts decades later in 2018 and 2019, s*ee, e.g.*, Compl. ¶¶ 17-18, MDR does not allege Defendants contributed to these incidents in any way outside of their initial operation and abandonment of the Well between 1931 and 1958.  *See id*. ¶¶ 3, 4.  In fact, MDR does not allege Marathon or Dow conducted *any* work on the Property after 1941 and 1958, respectively, but rather that the County took over operations on the land from Dow by "at least 1959."  *Id.* ¶ 4.

Because the alleged harms in this case run with the land, MDR's claims that Defendants were allegedly negligent in developing or operating the Property from

---

[2] This rule applies regardless of the parties' respective property rights to the land. *See, e.g.*, *Shamsian v. Atl. Richfield Co.,* 107 Cal. App. 4th 967, 972 (2003) (genuine issue of material fact as to whether current lessor's nuisance and trespass claims against former lessee and sublessee were time-barred under Code. Civ. Proc. § 338(b)).

1   1931 to 1956 accrued no later than 1941 for Ohio Oil and 1958 for Dow.  *See, e.g.*,

2   *Camsi IV*, 230 Cal. App. 3d at 1535 ("once the sewer line has been improperly

3   located on the property, or the lot preparation and foundation construction have been

4   improperly done, or the encroaching buildings are constructed, the tort is complete

5   and the statute of limitations . . . begins to run") (internal citations omitted).  Thus,

6   MDR's claims for negligence, permanent nuisance, and trespass expired as to all

7   subsequent possessors of the Property including Marathon and Dow decades ago, and

8   this action—which was not filed until July 2020—is untimely.

9                 3.      The Discovery Rule Does Not Save MDR's Claims

10         In certain cases, the "discovery rule" may toll the statute of limitations on an

11  accrued claim until the plaintiff discovered or reasonably should have discovered the

12  facts essential to its cause of action.  *See Wilshire Westwood*, 20 Cal.App.4th at 740.

13  Actual knowledge, however, is not required: "A plaintiff is charged with

14  'presumptive' knowledge so as to commence the running of the statute once he or she

15  has notice or information of circumstances to put a reasonable person on inquiry, or

16  has the opportunity to obtain knowledge from sources open to his investigation . . . ."

17  *Id.* (internal citation omitted).

18         Here, the discovery rule cannot save MDR's expired claims.  As a threshold

19  matter, MDR failed to properly invoke the discovery rule in its pleading.  The

20  Complaint fails to plead when and how MDR discovered the alleged defects in the

21  Well, and contains no allegations showing whether MDR attempted to discover them

22  earlier.  *See, e.g.*, Compl. ¶¶ 5, 8, 11.  The pleadings and proof requirements

23  necessary to invoke the discovery rule are strict and explicit: "A plaintiff whose

24  complaint shows on its face that his or her claim would be barred by the orthodox

25  statute of limitations, and who intends to rely on the discovery rule to toll the

26  orthodox limitation, must specifically plead facts which show (1) the time and

27  manner of discovery and (2) the inability to have made earlier discovery despite

28  reasonable diligence."  *Camsi IV*, 230 Cal. App. 3d at 1536-37.  MDR failed to meet

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

9

DEFENDANTS' MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 2:20-cv-08008-DSF(JPRx)

this burden.  *See April Enters., Inc. v. KTTV*, 147 Cal. App. 3d 805, 832 (1983) (facts giving rise to the discovery rule must be pleaded in the complaint).

More importantly, MDR *does* allege that (i) it was aware there was a long-abandoned oil well located on the Property, and (ii) it had obtained the historical records submitted to DOGGR related to the Well.  Compl. ¶ 5.  As established in RJN Exh. 14, at Lease Ex. B, MDR submitted a Development Plan in 2013 that explicitly acknowledged the presence of an abandoned oil well and methane gas on the Property.  *See* Section II.D, *supra*.  Thus, MDR was on actual notice of the abandoned Well and related environmental conditions, including soil contamination and gas leaks, by no later than 2013—at least seven years before filing suit.  Because MDR cannot plead around these facts, MDR's first, fourth, fifth, and sixth claims for relief must be dismissed with prejudice.

### B. <u>MDR Cannot State a Claim for Negligence (Count I)</u>

MDR's negligence claim fails for two independent reasons: (a) neither Marathon nor Dow owe a duty to MDR; and (b) MDR has failed to plead non-economic damages and cannot recover for damage to Property that is owned by the County, not MDR.

1. <u>Neither Marathon Nor Dow (Remote Former Lessees of the Property) Owed a Legal Duty to MDR (the Current Lessee of the Property) to Use Due Care</u>

In order to establish negligence, a plaintiff must prove that a defendant had a legal duty to exercise due care.  *Chase v. Residential Credit Sols., Inc.*, No. CV 15-09224-BRO (AGRx), 2016 WL 7469604, at *7 (C.D. Cal. Mar. 28, 2016).  "[T]he recognition of a legal duty of care depends upon the foreseeability of the risk and a weighing of policy considerations for and against imposition of liability."  *O'Neil v. Crane Co.*, 53 Cal. 4th 335, 364 (2012) (citations omitted).  "The question of the existence of a legal duty of care in a given factual situation presents a question of law which is to be determined by the courts alone."  *Century Sur. Co. v. Crosby Ins., Inc.*,

1   124 Cal. App. 4th 116, 127 (2004).

2       MDR nakedly asserts that Defendants—former lessees that last had an interest

3   in the Property over 60 years ago—owed a duty to MDR—the current lessee 60 years

4   later—"to use due care in their construction, use, and maintenance of [Well No. 10],

5   and in particular, the measures they undertook to install, operate and abandon the

6   well after their use of the Property ended."  Compl. ¶ 26.  MDR's conclusory

7   assertion fails to articulate how Marathon or Dow has a duty of care to MDR as

8   remote lessees of the Well during different time periods many decades ago.  As far as

9   Defendants are aware, there is no California case law supporting the notion that a

10   former remote lessee, which last held an interest in property nearly 60 years prior to a

11   current lessee, owes a duty of care to a current lessee.

12       A Maryland Court of Appeals opinion addressing such an alleged duty is

13   instructive.  In *Rosenblatt v. Exxon Co., U.S.A*, the court considered, among other

14   issues, whether a subsequent lessee has a cause of action in negligence against a

15   former remote lessee "whose activities during its occupancy allegedly caused the

16   property to become contaminated by toxic chemicals."  335 Md. 58, 63 (1994).  The

17   court indicated that in determining whether a duty was owed to plaintiff, it applied

18   the "foreseeability of harm" test, "which is based upon the recognition that duty must

19   be limited to avoid liability for unreasonably remote consequences, and considered

20   the relationship between the parties," but noted that, "ultimately, the determination of

21   whether a duty should be imposed is made by weighing the various policy

22   considerations and reaching a conclusion that the plaintiff's interests are, or are not,

23   entitled to legal protection against the conduct of the defendant."  *Id.* at 77.  The court

24   held that there was no such duty, as "[t]here exists no relationship between the parties

25   which would have made it foreseeable that an act or failure to act by [the former

26   remote lessee] would result in harm to the [subsequent lessee]."  *Id.*  The court was

27   "unwilling to impose upon a lessee of commercial property a duty to remote

28   successor lessees for losses resulting from a condition on the property that could have

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

11

DEFENDANTS' MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 2:20-cv-08008-DSF(JPRx)

been discovered with reasonable diligence prior to occupancy and thus could have

been avoided." *Id.*  Indeed, a lessee of commercial property "is expected to make

basic inquiry and inspection of the property prior to entering into a lease," and has the

ability to test the property for contamination and negotiate[] express warranties in the

lease so as to "completely avoid the harm he now alleges."  *Id.* at 77-78.

The bottom line is that MDR and Defendants have ***no*** relationship whatsoever

that would have made it foreseeable that an act or failure to act by Defendants would

have resulted in harm to MDR over 60 years later.  *Harry v. Ring the Alarm, LLC*, 34

Cal. App. 5th 749, 759 (2019) ("Whether a duty of care is owed in a particular

context depends on considerations of public policy, viewed in light of the nature of

the activity and the relationship of the parties to the activity."); *see also Wilson Auto

Enterprises, Inc. v. Mobil Oil Corp.*, 778 F. Supp. 101, 105 (D.R.I. 1991) ("The seller

of land owes no duty of care to a purchaser who does not make even the most basic

inquiries.  The seller's former *lessee*, as a matter of both logic and public policy, also

owes no such duty."); *Jones v. Texaco, Inc.*, 945 F. Supp. 1037, 1047 (S.D. Tex.

1996) ("[T]o impose a duty upon [remote owner] to remote, subsequent purchasers,

who acquired the land sixteen years after it had already passed through several other

owners, is unwarranted.  No relationship exists between [remote owner] and the

plaintiffs that would justify the imposition of such a far-reaching duty.").  Even if it

were reasonably foreseeable that Defendants' purportedly negligent abandonment of

Well No. 10 would harm MDR over 60 years later, policy considerations militate

against imposing liability where a commercial lessee knew that a property was

previously used for oil production, yet failed to either conduct due diligence in the

years of negotiations leading up to the execution of its lease agreement, or to

negotiate express warranties in its contract.  *See Harry*, 34 Cal. App. 5th at 759.  This

is especially true in light of the County's re-abandonment of the Well in 1959 and

ownership of the Property for the next 60 years, long after either Marathon and Dow

no longer had any ownership or involvement with the Property.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

12

DEFENDANTS' MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 2:20-cv-08008-DSF(JPRx)

1    The lack of duty between Marathon and Dow, on the one hand, and MDR, on

2  the other, is even more stark here where MDR is an experienced commercial lessee

3  that made the decision to enter into a lease with the County taking the Property "as

4  is."  RJN Ex. 14.  MDR knew of the abandoned oil well on the Property and that it

5  needed to be re-abandoned.  *Id.*, at Exhibit B (MDR's 2013 Development Plan).

6  Similar to the plaintiff in *Rosenblatt*, MDR could have had the Well itself inspected

7  and tested and could have had the soil on the Property tested.  MDR also could have

8  negotiated for express warranties in its lease agreement with the County regarding the

9  condition of Well No. 10 and the soil on the Property.  MDR did neither of these

10  things, and instead decided to take the Property "as-is," with all its faults, including

11  any faults related to the condition of Well No. 10 and the condition of the soil on the

12  leased Property.  *Id.* §§ 1.2.1 and 15.4.1.  MDR was "in a position to avoid

13  completely the harm [it] now alleges."  *Rosenblatt*, 335 Md. at 72.  Indeed, MDR's

14  allegation that it did not know that the Well was located "inside the proposed

15  footprint of the planned building," Compl. ¶ 5, suggests that MDR did not conduct

16  *any* inspection of the Well before entering into the lease, despite its awareness of the

17  presence of the Well and that the Well required re-abandonment.

18    Realizing its blunder and the fact that it cannot recover from the County, MDR

19  now looks to recover its losses from remote lessees with whom it has no relationship.

20  The only party that could have owed a duty to MDR was the County, and MDR

21  contractually negotiated away that duty by agreeing to accept the Property "as-is"

22  with no covenant, representation, or warranty as to the condition of the Property.  For

23  that reason, MDR did not (and cannot) sue the County.  *See Galen v. Mobil Oil*

24  *Corp.*, 922 F. Supp. 318, 324 (C.D. Cal. 1996) ("The 'as is' language relieves [seller]

25  of liability for this defect of condition and therefore precludes recovery on the

26  nuisance and trespass claims."); *Shapiro v. Hu*, 188 Cal. App. 3d 324, 333 (1986)

27  ("[A]n 'as is" provision in any sale puts potential buyers on notice that the seller

28  makes no warranties about the quality or condition of the thing sold.  In practice, it

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
CHICAGO

13

DEFENDANTS' MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 2:20-cv-08008-DSF(JPRx)

1  serves as a kind of 'red flag' warning the buyer that the goods or property to be sold

2  may not be in perfect condition or of ideal quality.").

3      California law does not countenance MDR's attempt to stretch the concept of

4  duty beyond all reasonable bounds.  Because MDR cannot, as a matter of law, allege

5  that Marathon and Dow have any duty of care toward MDR as a successive lessee

6  over 60 years later, MDR fails to state a claim for negligence.

7            2.  MDR's Negligence Damages Are Barred by the Economic Loss Rule

8      It is black letter law in California that "economic loss alone, without physical

9  injury, does not amount to the type of damage that will cause a negligence . . . cause

10  of action to accrue."  *Cnty. of Santa Clara v. Atlantic Richfield Co.*, 137 Cal. App. 4th

11  292, 318 (2006) (citation omitted).  Courts in California have clarified that a

12  plaintiff's alleged injury must be to its *own* property, not that of another.  *See, e.g.*, *id.*

13  at 320 (holding "plaintiffs could properly maintain an action for damages based on

14  negligence or strict liability only if they had suffered *physical injury to their*

15  *buildings*.") (emphasis in original); *Sheahan v. State Farm Gen. Ins. Co.*, 394 F.

16  Supp. 3d 997, 1008 (N.D. Cal. 2019) (dismissing with prejudice products liability

17  claim where "plaintiffs are not claiming physical injuries to themselves or to *their*

18  *properties*, but rather are asserting economic loss.").  The California Supreme Court

19  recently reiterated the "need to limit liability for [purely] economic loss[es]."  *S.*

20  *California Gas Leak Cases*, 7 Cal. 5th 391, 402-03 (2019).

21      Here, MDR has not alleged *any* physical injury to its *own* property.  Instead,

22  MDR alleges that, as a result of Defendants' negligence,

23          MDR was damaged in that it incurred costs to remove

24          contaminated soil, institute temporary measures to protect

25          its property and the public from the uncontrolled release of

26          methane gases, and to clean up, remediate, and safely re-

27          abandon the well.  Additionally, . . . the delays associated

28          with the abandonment of the well caused increased

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
CHICAGO

14

DEFENDANTS' MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 2:20-cv-08008-DSF(JPRx)

1  construction expenses and loss of business.  In addition, the
2  dangerous conditions posed by the leaking well damaged
3  MDR by requiring it to retain the services of various
4  engineering and contracting firms to evaluate the existence
5  and cause of the soil contamination, methane leaks, and well
6  conditions, and employing firms to design and implement
7  remedial and reparative measures.

8  Compl. ¶¶ 18-19.  None of these alleged losses concern property damage; rather, they

9  are all purely economic losses.  *See Sacramento Regional Transit Dist. v. Grumman*

10 *Flxible*, 158 Cal. App. 3d 289, 294 (1984) ("The expenses of repair plaintiff has

11 incurred, and will incur in the future, are purely economic damages.").  And, even if

12 any of these alleged losses constituted "property damage," the Property is owned by

13 the County, *not* MDR.  MDR thus lacks standing to recover for physical damage to

14 its lessor's property.  *Verse Two Properties, LLC v. Medplast Fremont, Inc.*, No.

15 5:14-CV-03765-EJD, 2015 WL 7075969, at *5 (N.D. Cal. Nov. 13, 2015)

16 (dismissing negligence claim based on harm to property plaintiff "does not own.").

17     California courts recognize an exception to the economic loss rule where there

18 is a "special relationship" between a plaintiff and a defendant.  *See, e.g.*, *S. California*

19 *Gas Leak Cases*, 7 Cal. 5th at 398.  A special relationship exists if "the plaintiff was

20 an intended beneficiary of a particular transaction but was harmed by the defendant's

21 negligence in carrying it out."  *Id.* at 887.  Here, there is no question that MDR, a

22 2017 lessee of the Property, was not an intended beneficiary of Defendants' lease

23 agreements with third parties in the 1930's to 1950's, including the lease agreements

24 that governed Defendants' operations and conduct on the Property.  Accordingly,

25 there is no "special relationship" between MDR and Defendants such that MDR may

26 maintain a negligence claim for its purely economic losses.

27     MDR's failure to allege damage to property it actually owns or a special

28 relationship with Defendants necessitates dismissal of its negligence claim for this

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

15

DEFENDANTS' MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 2:20-cv-08008-DSF(JPRx)

1    independent basis.

2    ### C. **MDR Must Elect Between Continuing and Permanent Nuisance (Counts II, III, IV, V)**

3

4    "Two distinct classifications have emerged in nuisance law which determine

5    the remedies available to injured parties . . ."  *Baker v. Burbank-Glendale-Pasadena*

6    *Airport Auth.*, 39 Cal. 3d 862, 868 (1985).  "[P]ermanent nuisances are of a type

7    where 'by one act a permanent injury is done, [and] damages are assessed once for

8    all.'"  *Id.* (quoting *Williams v. Southern Pac. R.R. Co.*, 89 P. 599 (1907)).  A

9    "continuing nuisance" on the other hand, is "a nuisance . . . which may be

10   discontinued at any time."  *Baker*, 39 Cal. 3d at 868.

11   California law is clear: the same facts cannot result in both a permanent ***and***

12   continuing nuisance.  *See id.* at 871 ("plaintiff may elect whether to treat a particular

13   nuisance as permanent ***or*** continuing").  MDR cannot have it both ways.

14   MDR, however, pleads *both* a continuing and a permanent nuisance with

15   respect to the *same* alleged nuisance.  Counts IV and V are titled "permanent"

16   nuisance and Counts II and III are titled "continuing" nuisance.  The specifics of

17   MDR's allegations make clear that MDR impermissibly seeks to maintain both types

18   of nuisance claims.  On the one hand, MDR alleges that it re-abandoned Well No. 10

19   in order "to stop the imminent and substantial threat to public health and welfare[,]"

20   Compl. ¶ 16, and that it "incurred costs to remove contaminated soils[.]"  *Id.* ¶ 18.

21   MDR therefore pleads that the nuisance was abated and that there is no continuing

22   nuisance.  *See, e.g.*, *McCoy v. Gustafson*, 180 Cal. App. 4th 56, 84 (2009)

23   ("discussing a permanent nuisance and finding that 'abatable' means that the

24   nuisance can be remedied at a reasonable cost and by reasonable means").

25   On the other hand, MDR alleges that "the dangerous condition and lack of

26   integrity of the abandoned well substantially and unreasonably interferes with MDR's

27   use and enjoyment of its property, *presents an ongoing threat* to the safety and well-

28   being of the public, and constitutes a nuisance per se."  *Id.* ¶¶ 33, 40, 47, 54

LATHAM&WATKINS
ATTORNEYS AT LAW
CHICAGO

16

DEFENDANTS' MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 2:20-cv-08008-DSF(JPRx)

(emphasis added).  MDR further alleges that "[b]ecause of the manner in which the well was constructed, used, and abandoned, the *ongoing threat posed by the existence and condition of the well* constitutes a permanent nuisance." *Id.* ¶ 54 (emphasis added).  These allegations suggest that the purported nuisance cannot be abated, i.e., it cannot "be remedied at a reasonable cost and by reasonable means" and is "continuing." *McCoy*, 180 Cal. App. 4th at 84.

MDR cannot have it both ways.  There cannot be both a permanent and continuing nuisance at the Property under California law.  *See Baker*, 39 Cal. 3d at 871.  For this independent reason, all nuisance claims should be dismissed.[3]

## V.    MDR'S COMPLAINT IS INDEPENDENTLY DEFICIENT AS TO MARATHON (ALL COUNTS)

MDR's Complaint against Marathon is independently deficient because Marathon long ago extinguished its obligations to the Property and Well No. 10. Indeed, it did so three times.

Decades ago, Marathon's predecessor Ohio Oil relinquished its rights in and extinguished its obligations related to the Property and Well No. 10.  It did so three times, "voiding" its lease and any further obligations it may have had thereunder, and twice conveying it "as is" to the owner of the Property and Well No. 10, including the County.  MDR likewise took and leased the Property from the County "as is," with no covenant, representation, or warranty as to the condition of the Property or Well No. 10.  MDR cannot now sue Marathon for the alleged condition of the Property or Well No. 10 as a matter of law.

***First***, on July 10, 1941, Ohio Oil's lease of the Property was "***cancelled***, surrendered, ***annulled***, and held for naught," including specifically Well No. 10 and

---

[3] If MDR's nuisance claims are not otherwise dismissed for the reasons stated herein, the Court could allow MDR to re-plead one type of nuisance.  If MDR's alleged nuisance is continuing, however, its damages are limited to the three-year period before the complaint was filed, i.e., July 31, 2017 through July 31, 2020, and MDR cannot recover for future or prospective harm.  *Baker*, 39 Cal. 3d at 869; *see also Mangini v. Aerojet-General Corp.*, 12 Cal. 4th 1087, 1103 (1996).  The same limitations apply to MDR's continuing trespass claim.  *People v. Kinder Morgan Energy Partners, L.P.*, 159 F. Supp. 3d 1182, 1197-98 (S.D. Cal. 2016).

the land surrounding it.  RJN Ex. 5 (emphases added).

*Second*, also on July 10, 1941, Ohio Oil conveyed and deeded its interest in certain portions of the Property, including Well No. 10 and the surrounding land, via a recorded quitclaim deed to the Recreation Gun Club.  Ohio Oil's quitclaim conveyed the Property "as is" with no covenant, representation, or warranty as to the condition of the Property.  Recreation Gun Club took Ohio Oil's interest in the Property as so conveyed.

*Third*, on November 24, 1958, Ohio Oil conveyed and deeded to the County whatever remaining interest it may have had in the Property via a recorded quitclaim deed.  That quitclaim deed, like the earlier quitclaim deed, conveyed the Property "as is" with no covenant, representation, or warranty as to the condition of the Property. The County took Ohio Oil's interest in the Property as so conveyed.  RJN Ex. 10.

*Fourth*, Recreation Gun Club conveyed its ownership interest in the Property to the County by deed, dated December 1, 1958. RJN Ex. 11.

*Fifth*, MDR took the Property "as-is" from the County with all of its faults, including any faults related to the condition of Well No. 10.  RJN Ex. 14, §§ 1.2.1 and 15.4.1.

      1.   Ohio Oil's Voided Lease with Recreation Gun Club Has No Legal Effect

Under California law, a "void contract is without legal effect."  *Safarian v. Govgassian*, 47 Cal. App. 5th 1053, 1067 (2020).  "It binds no one and is a mere nullity.  Such a contract has no existence whatsoever.  It has no legal entity for any purpose and neither action nor inaction of a party can validate it."  *Id.*; *see also Little v. Cfs Serv. Corp.*, 188 Cal. App. 3d 1354, 1362 (1987) (same); *Progressive Collection Bureau v. Whealton*, 62 Cal. App. 2d 873, 876 (1944) ("A contract which is void cannot be given any effect whatever.").

By way of a "Partial Release" in the July 10, 1941 quitclaim deed, Ohio Oil "release[d], surrender[ed], quitclaim[ed] and relinquish[ed] unto the said Recreation

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

18

DEFENDANTS' MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 2:20-cv-08008-DSF(JPRx)

Gun Club all rights and titles whatsoever acquired or held by [it] under said lease" in Well No. 10 and the land surrounding it.  RJN Ex. 5.  The Partial Release also provided that the lease was thereby "***cancelled***, surrendered, ***annulled***, and held for naught" with respect to those portions of land so designated, including Well No. 10 and the land surrounding it.  *Id.* (emphases added).  In 1941, the definitions of the words "cancelled" and "annulled" both included "to make void."  *See Black's Law Dictionary* 115, 270 (3d. ed. 1933).  As such, the Partial Release "made void" the lease agreement as to Well No. 10 and the land surrounding it.  Because the lease agreement no longer had any legal effect as to Well No. 10 and the Property surrounding it, Ohio Oil had no duties and Recreation Gun Club had no rights thereunder.

2.     <u>The County Took the Property From Ohio Oil "As-Is"</u>

Under California law, quitclaim deeds do not contain any implied covenants. *See In re Marriage of Gioia*, 119 Cal. App. 4th 272, 280 (2004); *Veterans of Foreign Wars v. City of El Paso de Robles*, 62 Cal. App. 4th 1077, 1080 (1998) ("As a general rule, the grantee of a quitclaim deed takes [the property] subject to all equities that could have been asserted against the grantor."); Miller & Starr, Cal. Real Estate (4th ed. 2020) § 8:13 ("A quitclaim deed does not contain any implied covenant or warranty of title, freedom from encumbrances, or the grantor's right of possession.  It is often used to release all of the interest that the grantor may have or claim to have in the property described at the time of the deed.").  Indeed, it is well recognized in California that the doctrine of "caveat emptor" applies to transfers of interest in real property through quitclaim deeds.  *Miller & Lux v. Gray*, 136 Cal. 261, 263-64 (1902) ("His deed is in fact but a quitclaim deed, and so it is uniformly held, touching such sales, that the doctrine of caveat emptor applies."); *Mains v. City Title Ins. Co.*, 34 Cal. 2d 580, 583 (1949) (recognizing that doctrine of caveat emptor applies to a quitclaim deed); *Allison v. Thomas*, 72 Cal. 562, 565, 14 P. 309, 310 (1887) ("The grantee in such a [quitclaim] deed necessarily takes only what the grantor then had,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

19

DEFENDANTS' MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 2:20-cv-08008-DSF(JPRx)

1   and subject to all defects and equities which could then have been asserted against the

2   grantor.").  Under the doctrine of caveat emptor, "the liability of a person selling land

3   terminates when the buyer assumes control of the land."  *Galen*, 922 F. Supp. at 325;

4   *see also Black's Law Dictionary* 115, 270 (11th ed. 2019) (defining "caveat emptor"

5   as "[a] doctrine holding that a purchaser buys at his or her own risk").  In addition,

6   "[t]here are no warranties of quality or condition implied in the sale of real property."

7   *Shapiro*, 188 Cal. App. 3d at 332 ("[T]he law governing sales of real property has

8   long been that of caveat emptor, with the buyer assuming the risk on quality or

9   condition of the property, absent express warranty, fraud or misrepresentation.").

10       On July 10, 1941, Ohio Oil executed a quitclaim deed whereby it quitclaimed

11   its interest in certain portions of the Property, including Well No. 10 and the land

12   surrounding it, to Recreation Gun Club.  RJN Ex. 5 ("[A]ll right, title and interest in

13   said Well No. 10[.]").  The quitclaim states that Ohio Oil "do[es] hereby release,

14   surrender, quitclaim and relinquish unto the said Recreation Gun Club all rights and

15   titles whatsoever acquired or held by them under said lease in and to those portions of

16   the land" described therein.[4]  *Id.*  The 1941 quitclaim does not contain any express

17   covenants or warranties.  *Id.*  And none are implied.  *In re Marriage of Gioia*, 119

18   Cal. App. 4th at 280; *Veterans*, 62 Cal. App. 4th at 1080; Miller & Starr, Cal. Real

19   Estate (4th ed. 2020) § 8:13.

20       On November 24, 1958, Ohio Oil executed a second "Quitclaim Deed,"

21   pursuant to which it deeded and conveyed to the County the remainder of the

22   Property, including any easements and rights of way that were saved and excepted in

23   the 1941 Partial Release and quitclaim deed.  RJN Ex. 10.  The 1958 Quitclaim Deed

24   did not contain any express covenants or warranties.  *Id.*  None are implied.  *In re*

25   *Marriage of Gioia*, 119 Cal. App. 4th at 280; *Veterans*, 62 Cal. App. 4th at 1080;

26

---

27   [4] The ***only*** exception to Ohio Oil's quitclaim as to certain portions of the Property, including Well No. 10 and the land surrounding it, was an exception for "easements

28   for rights-of-way necessary or convenient for the operations of [Ohio Oil] on the remainder of said lands."  *Id*

LATHAM&WATKINS␣␣␣
ATTORNEYS AT LAW
CHICAGO

20

DEFENDANTS' MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 2:20-cv-08008-DSF(JPRx)

1   Miller & Starr, Cal. Real Estate (4th ed. 2020) § 8:13.

2       Neither of these quitclaim deeds contain any implied or express warranties as

3   to the condition of the Property.  Recreation Gun Club, to which Ohio Oil

4   quitclaimed Well No. 10 and the land surrounding it, and Los Angeles County, to

5   which Ohio Oil quitclaimed the remainder of its interest in the Property, each took

6   the Property conveyed to them "as is" with no covenants or warranties as to the

7   condition of the Property, including but not limited to the condition of Well No. 10

8   and the condition of the soil.  Accordingly, any obligations attaching to Marathon

9   related to the Property were extinguished by execution of the 1941 and 1958

10  quitclaim deeds.  *Mains*, 34 Cal. 2d at 583; *Shapiro*, 188 Cal. App. 3d at 332.  All of

11  MDR's claims—which relate solely to the Property—must be dismissed against

12  Marathon for these independent reasons.

13  **VI.   MDR'S COMPLAINT FAILS TO SATISFY REQUIRED PLEADING STANDARDS**

14

15      Even if MDR pled claims that survive as a matter of law (it has not), its claims

    would still fail to satisfy the well-established federal pleading standards.
16

17      **A.  <u>MDR Improperly Relies Upon Group Pleading and Fails to Specify Actionable Conduct by Marathon or Dow</u>**

18      Where, as here, there are multiple defendants, the plaintiff must articulate

19  "specific, non-conclusory allegations regarding what alleged actions were taken by

20  *each* defendant to inflict the alleged injury." *Thomas v. Dep't of Child Support*

21  *Servs.*, No. CV 18-3236-DSF-KK, 2019 WL 1371150, at *4 (C.D. Cal. Jan. 18, 2019)

22  (emphasis added); *Rines v. Riverside Cty. Jails*, No. 519CV00426PAMAA, 2019 WL

23  8806228, at *2 (C.D. Cal. May 7, 2019) ("Plaintiff must provide specific factual

24  detail regarding each Defendant's acts and omissions that allegedly violated

25  Plaintiff's . . . rights.").  Undifferentiated pleading against multiple defendants is

26  improper.  *Arutyunyan v. Chase Bank U.S.A., N.A.*, Case No. CV 12-8357, 2013 WL

27  12402582, at *3 (C.D. Cal. May 15, 2013); *see also Hukill v. Warren*, Case No.

28  EDCV 17-02448, 2018 WL 5880779, at *2 (C.D. Cal. May 16, 2018) ("Plaintiff's

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
CHICAGO

21

DEFENDANTS' MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 2:20-cv-08008-DSF(JPRx)

FAC consistently lumps all Defendants together, making it impossible to discern who did what to whom and when.").

Here, MDR fails to: (1) differentiate between the conduct of Marathon and Dow; (2) make specific, non-conclusory allegations concerning acts or omissions allegedly committed by each Defendant; and (3) articulate how such particular acts or omissions allegedly harmed MDR.  Instead, MDR repeatedly lumps Marathon and Dow together.  *See, e.g.*, Compl. ¶ 18 ("As a direct and proximate cause of ***Defendants'*** negligent construction, operation, and abandonment of the well . . . Plaintiff was damaged") (emphasis added); *id.* ¶ 27 ("***Defendants***" owed, and breached, a duty to Plaintiff by "failing to use due care in the construction, use, maintenance, and abandonment of the well") (emphasis added); *id.* ¶¶ 33-34, 40-41, 47-48, 54-55 ("***Defendants'*** improper construction, use, maintenance, and abandonment of the well" was an "interference" with Plaintiff's right to use and enjoy its property) (emphasis added); *id.* ¶¶ 60, 62 ("***Defendants***" committed a "continuing trespass" by "***Defendants'*** construction, use, maintenance, and abandonment of the well") (emphasis added); *id.* ¶¶ 29, 36, 43, 50, 57, 63 ("***Defendants***" acted "with conscious disregard of the probable injurious consequences of their conduct") (emphasis added).

Indeed—and tellingly—neither Marathon nor Dow is identified by name at *any* point in MDR's six causes of action.  *See id.* ¶¶ 25-63.  The Complaint thus fails to provide Marathon or Dow with the required "fair notice" of MDR's claims against each separate defendant and the grounds upon which they rest.  On this basis alone, the Complaint must be dismissed.

### B. <u>MDR Fails to Adequately Plead Tortious Conduct with Specificity</u>

To survive a motion to dismiss, a complaint must specify why or how a defendant's alleged conduct is actionable.  *See, e.g.*, *Hart v. Select Portfolio Servicing, Inc.*, Case No. CV 15-7953-R, 2015 WL 8374926, at *3 (C.D. Cal. Dec. 9, 2015) (dismissing claim where plaintiff "does nothing more than assert broad

conclusory allegations" without any "actual facts"); *Wendell v. Johnson & Johnson*, No. 09-CV-04124, 2010 WL 271423, at *4 (N.D. Cal. Jan. 20, 2010) (dismissing claims because plaintiff failed to "specify any tortious conduct").

MDR's allegations fail to adequately plead tortious conduct by either Marathon or Dow.  Even assuming Defendants had a duty to MDR (they do not), MDR's bare assertion that Defendants "fail[ed] to use due care" (Compl. ¶ 27) is far from adequate to support its negligence claim.  MDR likewise fails to plead its nuisance claims with specificity.  MDR summarily asserts that "Defendants' improper construction, use, maintenance, and abandonment of the well . . . substantially and unreasonably interfere with Plaintiff's use and enjoyment of its property."  *See, e.g.*, Compl. ¶ 33.  MDR does not, however, make any specific allegations that articulate *how* Marathon and Dow's construction, use, maintenance, or abandonment of the Well over 60 years ago purportedly resulted in the soil contamination and release of methane gas decades later that "interfere[d]" with MDR's use of the Property.  *See id.* ¶¶ 30-57.  Finally, MDR fails to plead any specific acts or omissions in support of its trespass claim.  Instead, MDR makes the conclusory allegation that "Defendants' construction, use, maintenance, and abandonment of the well caused the soils at the Property to be contaminated . . . without MDR's consent," causing MDR to suffer harm.  *See id.* ¶¶ 60-61.  Such threadbare pleading, however, is insufficient as a matter of law.  *See, e.g.*, *Hart*, 2015 WL 8374926, at *3 (dismissing claim where plaintiff only "assert[s] broad conclusory allegations" without any "actual facts.")

## C. MDR Fails to Adequately Plead Causation

The gravamen of each of MDR's claims is that Marathon and Dow allegedly caused MDR's damages.  Compl. ¶¶ 25-63.  Consequently, in order to survive dismissal, MDR must plausibly allege that specific acts or omissions by Defendants were the actual and proximate cause of MDR's claimed damages.  *See, e.g.*, *Iqbal*, 556 U.S. at 678-79; *Novak v. Continental Tire North America*, 22 Cal. App. 5th 189, 231 Cal. Rptr. 324, 328 (2018); *City of Modesto v. Dow Chem. Co.*, 19 Cal. App. 5th

1  130, 158 (2018), *as modified on denial of reh'g* (Feb. 6, 2018), *review denied* (Apr.

2  25, 2018) (plaintiff must "introduce evidence which affords a reasonable basis for the

3  conclusion that it is more likely than not that the conduct of the defendant was a

4  cause in fact of the result").  Stated differently, in order for an act or omission to

5  constitute a proximate cause, a plaintiff must allege a "sufficient connection" between

6  the risks created by the conduct and the injury.  *Novak*, 22 Cal. App. 5th at 196.  It is

7  well-settled, however, that generic, conclusory assertions of a causal link are

8  insufficient to adequately plead proximate cause.  *See, e.g.*, *Vavak v. Abbott Labs.,*

9  *Inc.*, SACV 10-1995 JVS, 2011 WL 13130493, at *2-3 (C.D. Cal. Mar. 7, 2011)

10  (dismissing negligence claim because plaintiff's allegation that her damages were "a

11  direct and proximate result of [defendant's] failure to exercise reasonable care" was

12  nothing more than "a legal conclusion couched as a factual allegation").  Especially

13  where, as here, MDR came to the Property more than 60 years after Dow and Ohio

14  Oil ceased having anything to do with the Well at issue—and given the intervening

15  re-abandonment of the Well by the County in 1959 and ownership of the Property

16  since then—specific factual allegations are required to demonstrate proximate cause

17  separately as to Marathon and Dow.  MDR fails to meet this standard.

18      MDR fails to articulate how any purported act or omission by Marathon or

19  Dow was reasonably foreseeable to cause harm to MDR.  Instead, MDR makes the

20  conclusory allegation that Defendants somehow caused MDR's injuries.  *See, e.g.*,

21  Compl. ¶ 29 (alleging Defendants "proximate[ly] cause[d]" its injuries); *id.* ¶ 42

22  ("The nuisance resulting from the contamination of the soils and blowouts in 2018

23  and 2019 was caused by Defendants and has specifically injured MDR."); *id.* ¶ 62

24  ("MDR has been injured and suffered damages as the result of Defendants continuing

25  trespass").  Such formulaic recitations, however, are insufficient as a matter of law to

26  plead causation.  *See, e.g.*, *Scotten v. First Horizon Home Loan Corp.*, No. CIV. 2:12-

27  1266 WBS DAD, 2012 WL 3277104 (E.D. Cal. Aug. 9, 2012) (granting motion to

28  dismiss where plaintiff relied on conclusory allegations of causation).

1    Finally, MDR's allegations on their face do not plausibly amount to the
2    "sufficient connection" required to plead proximate cause.  *See Novak*, 22 Cal. App.
3    5th at 196, 231 Cal. Rptr. 3d at 328.  MDR concedes that over 60 years have passed
4    since Defendants had any involvement with the Well.  Compl. ¶¶ 3-4.  MDR further
5    concedes that the County took over operations on the Well around 1959, and that
6    both the County and MDR conducted re-abandonment work after Defendant's
7    involvement with the Well ended.  *Id.* ¶¶ 4, 11, 18.  MDR thus cannot plausibly
8    allege that any act or omission by Dow or Marathon—as opposed to subsequent
9    intervening acts by the County or MDR's contractor—was a substantial factor in,
10   much less the actual or proximate cause of, MDR's claimed damages.  *See Lorenzo v.*
11   *Qualcomm Inc.*, No. 08cv2124 WQH (LSP), 2009 WL 2448375 (S.D. Cal. Aug. 10,
12   2009) (granting motion to dismiss where plaintiff's injuries were separated by at least
13   three intermediaries to alleged underlying misconduct).  MDR's "unadorned, the-
14   defendant-unlawfully-harmed-me accusation" falls woefully short of meeting its
15   pleading burden.  *See Iqbal*, 556 U.S. at 678.

16   ## VII.   CONCLUSION

17          For all of the aforementioned independent reasons, Defendants respectfully
18   request that the Court dismiss MDR's Complaint in its entirety with prejudice.

19   Dated:  November 2, 2020          **LATHAM & WATKINS LLP**

20                                     By */s/ Mary Rose Alexander*
21                                     Mary Rose Alexander (Bar No. 143899)
                                       *Attorneys for Defendant Marathon Oil*
22                                     *Company*

                                       **KING & SPALDING LLP**
23
                                       By */s/ Michael R. Leslie*
24                                     Michael R. Leslie (Bar No. 126820)
                                       *Attorneys for Defendant The Dow Chemical*
25                                     *Company*

26                                     **PHILLIPS LYTLE LLP**

27                                     By */s/ Joel A. Blanchet*
                                       Joel A. Blanchet (Bar No. 4603379)
28                                     *Attorneys for Defendant The Dow Chemical*
                                       *Company*

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

25

DEFENDANTS' MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 2:20-cv-08008-DSF(JPRx)

## **ATTESTATION**

Pursuant to Local Rule 5-4.3.4(a)(2)(I), I, Mary Rose Alexander, attest under penalty of perjury that I have obtained concurrence and authorization from the other signatories to affix their electronic signatures to this filing.

Dated:  November 2, 2020            **LATHAM & WATKINS LLP**

By */s/ Mary Rose Alexander*
Mary Rose Alexander