<pre>
 1                  UNITED STATES DISTRICT COURT
                    CENTRAL DISTRICT OF CALIFORNIA
 2                  WESTERN DIVISION - LOS ANGELES

 3

 4   MDR HOTELS, LLC,          )   Case No. CV 20-8008-FLA (JPRx)
                               )
 5        Plaintiff,           )   Los Angeles, California
                               )   Thursday, May 26, 2022
 6           v.                )   10:00 A.M. to 10:46 A.M.
                               )
 7   THE DOW CHEMICAL COMPANY, )   VIDEOCONFERENCE HEARING
     et al.,                   )
 8                             )
          Defendants.          )
 9   _____  )

10

11

12                    TRANSCRIPT OF PROCEEDINGS
13           BEFORE THE HONORABLE JEAN P. ROSENBLUTH
                 UNITED STATES MAGISTRATE JUDGE
14

15
     Appearances:                See Page 2
16
     Deputy Clerk:               Bea Martinez
17
     Court Reporter:             Recorded; CourtSmart
18
     Transcription Service:      JAMS Certified Transcription
19                               16000 Ventura Boulevard #1010
                                 Encino, California  91436
20                               (661) 609-4528

21

22

23

24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.
</pre>

```
 1    APPEARANCES:

 2

 3    For the Plaintiff:      Cox, Castle & Nicholson LLP
                              By:  PERRY S. HUGHES
 4                            2029 Century Park East, Suite 2100
                              Los Angeles, California  90067-3284
 5                            (310) 284-2100
                              phughes@coxcastle.com
 6

 7    For the Defendants:     Latham & Watkins LLP
                              By:  MICHAEL A. HALE
 8                            355 South Grand Avenue, Suite 100
                              Los Angeles, California  90071
 9                            (213) 485-1234
                              michael.hale@lw.com
10
                              Latham & Watkins LLP
11                            By:  MARY ROSE ALEXANDER
                              330 North Wabash Avenue, Suite 2800
12                            Chicago, Illinois  60611
                              (312) 876-7700
13                            mary.rose.alexander@lw.com

14                            Phillips Lytle LLP
                              By:  MYLES K. BARTLEY
15                            620 Eighth Avenue, 38th Floor
                              New York, New York  10018-1442
16                            (212) 759-4888
                              mbartley@phillipslytle.com
17

18    Also Appearing:         OLIVIA M. WEISS
                              PARJACK GHADERI
19                            (No contact information available.)

20

21

22

23

24

25
```

 1    LOS ANGELES, CALIFORNIA, THURSDAY, MAY 26, 2022, 10:00 A.M.

 2        (Call to Order of the Court.)

 3            THE CLERK:  Calling Case No. CV 20-8008-FLA (JPRx),

 4    *MDR Hotels, LLC v. The Dow Chemical Company, et al.*

 5            Counsel, please state your appearances for the

 6    record beginning with plaintiffs.

 7            PERRY S. HUGHES:  Perry Hughes of Cox, Castle &

 8    Nicholson on behalf of Plaintiff MDR Hotels.

 9            THE COURT:  Hello.

10            MICHAEL A. HALE:  This is Michael Hale with

11    Marathon Oil Company, defendant.

12            THE COURT:  Hello to you as well.

13            Hello to everybody.  I won't say -- keep saying

14    "hello."

15            MARY ROSE ALEXANDER:  Good morning, Judge.  I'm

16    also here with Michael Hale on behalf of Marathon Oil.

17            THE COURT:  All right.

18            MS. ALEXANDER:  This is Mary Rose Alexander.

19            MYLES K. BARTLEY:  Good morning, Your Honor.

20    Myles Bartley, Phillips Lytle, on behalf of The Dow Chemical

21    Company.

22            OLIVIA M. WEISS:  Good morning, Your Honor.

23    Olivia Weiss on behalf of nonparties County of Los Angeles

24    and Department of Beaches and Harbors.

25            THE COURT:  All right.

1              PARJACK GHADERI:  Good morning, Your Honor.
2  Parjack Ghaderi also here on behalf of the County of
3  Los Angeles, third-party witness.
4              THE COURT:  All right.  Thank you.
5              So, as you all know, we're here on the defendants'
6  motion to compel the County to produce certain documents.
7  Before we get to that, I had just a couple little preliminary
8  things.
9              I had hoped to be able to give you my thoughts
10  concerning my in camera review of the 25 emails that were
11  submitted in relation to a prior motion, but in going over it
12  -- I thought I had asked for this and I -- forgive me if I
13  didn't because I certainly meant to.  I need a key that tells
14  me who everybody is and, you know, particularly whether
15  they're a lawyer.  I gather that most of them, if not all,
16  are not but -- this is the Lockton stuff.  So if -- I guess
17  its defendants -- could -- or, no.  It would be plaintiffs --
18  could, you know, email to Ms. Martinez just a list of who
19  everyone is who either sent or received or was copied on one
20  of those 25 emails and what their title is and whether
21  they're a lawyer or not, then I will try to get to it as
22  quickly as possible.
23              MR. HUGHES:  I'll get that to you tomorrow,
24  Your Honor.  I'm in deposition the rest of today but --
25              THE COURT:  That's fine.

1           MR. HUGHES:  Yeah.

2           THE COURT:  That's fine.

3           All right.  So then moving on to -- and I am in

4    receipt of the emails that were exchanged at, like, 4:00 p.m.

5    -- whatever -- yesterday with documents attached.  I did

6    glance at them.  I gather that that's been resolved, but we

7    can get to that after we deal with the County.

8           Finally, I did agree to hear this on shortened time

9    but -- and I do like getting courtesy copies because I do

10   work better from hard copies.  I will just let the parties

11   know that, when I received the courtesy copies for this

12   motion that I agreed to hear on shortened time, it was so

13   voluminous that, when they put the box down on my conference

14   table, my glass shattered.  So I'm not telling you not to --

15   I think it is better to err on the side of giving me more in

16   terms of hard copies than less, but just, you know, when I

17   agree to hear something on shortened time, it might have been

18   nice to know that there were 3,000 pages of stuff coming.

19   But I have glanced at, at least pretty much everything and

20   certainly read a bunch of it more carefully.

21          So, as to the motion itself, there's the two

22   challenges.  One is to the attorney-client designations, and

23   one is to the deliberative -- deliberations -- whatever it's

24   called -- privilege.

25          I want to start with the attorney-client docs,

1   which is 62 documents.  I appreciate the County's arguments,

2   and I don't want to order production of attorney-client

3   documents if that's what they really, but it does seem to me

4   that defendants need some more information.

5          You know, there is always -- first -- the first

6   problem with what the information that the County has

7   provided is that, as defendants point out, it doesn't say who

8   the lawyer is whose advice is being forwarded or discussed,

9   and of course -- defendants, I think, implicitly say this --

10  or maybe they outright say it, but it's certainly true that,

11  when that lawyer is general counsel, there's, in particular,

12  a risk that the advice that's being given is business advice,

13  not legal advice, and I note the County has designated it as

14  legal advice, but that's the County's designation, and, you

15  know, especially if general counsel is involved and

16  especially given some of the subject matter titles, as

17  defendants point out -- you know, fiscal impact or appraisal

18  of some property -- those sound like they might be business

19  decisions or advice.

20         So what I'd like to do here, and then I can hear

21  from counsel -- I understand that we're -- you know,

22  deadlines are approaching and the like, but since it's only

23  62 documents, I'd like to give the County a chance to very

24  quickly revise the privilege log to state what lawyer's

25  advice is being discussed or forwarded.  To the extent these

1  are just circumstances where, you know, some -- a secretary

2  or assistant or something is forwarding something to somebody

3  else, I don't see why those couldn't be produced but with the

4  legal advice redacted, the attachments redacted, and then at

5  least defendants would be able to assess who the lawyer was

6  that was involved if you don't delete the "from" line that's

7  being forwarded.

8         And then I also think that County counsel should --

9  you know, again, this is just 62 documents -- carefully look

10 at these and think about whether this is really legal advice

11 or business advice to the extent something is coming from the

12 (indecipherable) of the general counsel because, again, you

13 know, if something is predominantly or even some -- I haven't

14 looked at the law lately -- but some significant portion just

15 business advice, even if it's coming from a lawyer -- general

16 counsel -- it's not going to be privileged.

17        So -- you know, and also, when you revise the

18 privilege log, if you could be a little more -- if it's truly

19 a legal -- legal advice being given, then maybe a little bit

20 more specifics as to, you know, the subject matter.  Instead

21 of, you know, "well blowout" or "regarding property," you

22 know, maybe "regarding whether to sue so-and-so about the

23 property" or regarding -- you know, what it is specifically

24 about the property or the well blowout or whatever it is.

25        So those would be my thoughts there, and I'm

1   certainly happy to hear from anyone about this.

2          MR. HALE:  Good morning, Your Honor.  This is

3   Michael Hale --

4          MS. ALEXANDER:  Your Honor, I just wanted to

5   introduce my associate Michael Hale, who's going to be

6   arguing for Marathon.

7          THE COURT:  Sure.

8          MR. HALE:  Good morning, Your Honor.  I wanted to

9   thank you for hearing this motion on short notice, and

10  apologies for the table and for the voluminous documents that

11  were sent.

12         Marathon agrees with what you just said in terms of

13  the attorney-client privilege documents, and we think it

14  makes sense for the County to come back on a, I guess, quick

15  basis with additional information that will allow us to

16  assess whether the privilege actually applies and whether

17  this is legal advice or business advice being provided.

18         THE COURT:  All right.  Thank you.

19         Let me ask -- I don't know if it's Ms. Weiss or

20  Ms. Ghaderi, but whoever wants to speak, a, what do you think

21  of that; and, b, how quickly do you think you can do that?

22         MS. WEISS:  Yes.  Good morning, Your Honor.

23         I think that's an excellent plan.  We're certainly

24  amenable to providing additional detail potentially producing

25  documents with redactions, and we think that's a great plan.

1           In terms of timing, I think we could have that

2 together, Your Honor, perhaps the middle of next week given

3 the holiday.

4           THE COURT:  So is the discovery cutoff here still

5 the 31st?  Is that what --

6           MR. HALE:  Correct.  It's on Tuesday.

7           THE COURT:  All right.  And I know Judge Aenlle-

8 Rocha is pretty strict about deadlines and the like.  So why

9 don't we do this -- let me -- hold on one second.  Let me

10 just look at my calendar.

11           (Pause.)

12           THE COURT:  All right.  Unfortunately, I have

13 criminal -- I was going to suggest that we set a status

14 conference for Wednesday, which is June 1st -- you know,

15 order you to, you know, provide the documents on Tuesday and

16 then set a status conference, but I have criminal duty on

17 Wednesday; so I'm really not available.

18           Although the district judge is, I know, quite

19 strict on deadlines, he's also eminently reasonable, and I

20 think if I tell him -- if I give you, Ms. Weiss, until the

21 end of the day Tuesday to make those -- that revised

22 privilege log and then also to produce any documents either

23 with redactions, as appropriate, or that you have come to the

24 conclusion was actually a business document -- business-

25 related document, by the end of the day Tuesday, and then

1  defendants can hopefully look it over pretty quickly, and

2  then if we set a status conference -- we can set a status

3  conference for Thursday, but then, if you don't need it, if

4  it's -- everything has been satisfied, then maybe we can take

5  it off calendar.

6          So maybe Thursday afternoon if counsel -- if

7  everyone's available.  Does Thursday afternoon work for

8  folks?

9          (Pause.)

10          THE COURT:  I'm seeing nodding heads.  Is there

11  anybody --

12          (Multiple speakers.)

13          MR. BARTLEY:  Fine for Dow, Your Honor.

14          UNIDENTIFIED SPEAKER:  I have a conflict, but

15  someone else from our team can join.

16          THE COURT:  All right.  So is there anybody who is

17  not available, let's say, at 2:30 on Thursday afternoon?

18  That would be June 2nd.

19          (No audible response.)

20          THE COURT:  All right.  So that's what we'll do.

21  We'll set a status conference for June 2nd at 2:30.

22          Ms. Martinez, that identity hearing that's on for

23  2:30 is going away; correct?

24          THE CLERK:  Correct.

25          THE COURT:  All right.

1          So for 2:30 p.m. on June 2nd, status conference and

2     again -- and the County will give the revised privilege log

3     and any production by the end of the day Tuesday.

4          And then, defendants, as soon as you can,

5     obviously, if you think that we don't need the status

6     conference, please alert Ms. Martinez, and we can take it off

7     calendar, but otherwise, she'll out a Zoom link, and we'll do

8     that.

9          All right.  So that's that issue.

10         Then as to the deliberative process.  So I do think

11    that the law that the County relies on -- the *Scalia* case is

12    -- it makes more sense to me, and some of the language and

13    some of the cases that defendants cite it seems to me is too

14    onerous, and I think the *Scalia* case convincingly explains

15    why some of that is no longer applicable.

16         But having said that, even the *Scalia* case requires

17    that the government entity seeking to invoke the privilege

18    identify a decision as to which these documents were

19    deliberative and pre-decision, and I don't think that the

20    County has done that except as to the lease because it does

21    seem to me that the final lease is the decision -- the terms

22    of the final lease is the decision, and then anything that

23    came before that -- although not after that -- I don't know

24    when the lease was entered into so when I was reviewing this

25    -- and I'm sorry if somebody told me and I just didn't pick

 1   up on it.  So it was a little hard to see what the date --

 2   you know, how the dates relate to when the lease was entered

 3   into.  Can anybody tell me when the lease was entered into?

 4             MR. HALE:  It was July 2017.

 5             THE COURT:  July of 2017.  All right.  So then it

 6   does seem like a lot of these things are after the lease but

 7   to the extent -- let me grab the declaration.

 8             I'm sorry.  I'm, like, so incompetent, I don't know

 9   how to turn off the sound for my emails when they pop.  So

10   that's what you keep hearing.  I apologize for that.

11             All right.  So I'm looking at Ms. Bordenave-

12   Priestley's declaration.  So, I mean, a lot of this is -- and

13   as defendants argue, you know, apparently this lease was

14   under negotiation for a decade.  So I'm not surprised that

15   some of these go back quite a ways, but there are a few that

16   are post -- well, there's really only one that's post when

17   the lease was entered into.  I don't really understand the

18   distinction between "lease interpretation" and "lease" -- the

19   negotiations.  I guess once -- you're saying that once it had

20   been entered into, there were questions about what some

21   language meant because most of these dates are after July of

22   2017.

23             So I guess I would say that as to all of the other

24   three categories beyond the lease negotiations, the County

25   has not identified a decision.  On a privilege log it'll say

1  things like "Decision" -- colon -- whether something --

2  whatever.  But that's not a decision.  A decision is what you

3  decided and -- you know, for instance, something with a well,

4  the decision would be, you know, not to re-reabandon it

5  because the prior reabandonment was fine -- or something like

6  that, but you have to tell me what the decision is, and you

7  haven't, except as to the lease ones, which we'll talk about

8  separately.

9          So I would be inclined as to those other three

10  categories -- you know, and even in *Scalia*, although *Scalia*

11  rejected the argument that you had to give a decision on

12  these very granular levels -- which I agree with, you don't

13  have to do that, but you have to identify some decision, and

14  in *Scalia* it was that there was probable cause to bring a

15  lawsuit against the union.  But here, as to those other three

16  categories, I just don't know what the decision is, and I

17  feel that the County has had several chances to try to

18  identify a decision, and so, as to those later three

19  categories, I would be inclined to order production of those

20  withheld documents.

21          I would note that with the last category, the ones

22  where the property or something is just mentioned but it

23  doesn't seem like they're relevant, if something's not

24  relevant, you don't have to produce it.  So, as to that

25  fourth category, if those documents are not relevant to this

1   lawsuit -- and, you know, not having seen them, I don't know,

2   but based on what the County has represented, it seems like

3   some of those might not be relevant and need not be produced.

4          But -- and then what I would be inclined to do is,

5   as to the documents that fall into the first category, I

6   think I need a better argument from defendants about why

7   you're entitled to them.  I -- it seems to me that the

8   arguments you've given are kind of general, and they're very

9   similar to the ones that the party gave in *Scalia* to try to

10  say that the privilege is waived because your need for the

11  documents is so great.  It does seem to me, as County counsel

12  points out, that a lot of the documents that fall into that

13  first category -- or information, at least, that fall in --

14  falls into the first category is going to be available from

15  plaintiff.

16         So that's where my thinking is as to the

17  deliberative privilege if anybody wants to be heard.

18         MR. HALE:  Your Honor, this is Michael Hale again

19  on behalf of Marathon.

20         So Marathon agrees with Your Honor with respect to

21  those three categories of documents and that those should be

22  produced because the County has had multiple opportunities to

23  correct those errors and identify a decision and it hasn't

24  done so.

25         And with respect to the documents pertaining to a

1    lease, it's our -- it's defendants' position that even if the

2    privilege does apply here, the need of defendants for these

3    documents outweigh the County's interest in nondisclosure.

4    And as your Court -- as Your Honor is aware, there's a

5    balancing test that goes on here, and as you just mentioned,

6    one of those factors is the relevance of the evidence, and

7    here, the County's knowledge is relevant to this lawsuit and

8    the claims at issue --

9           THE COURT:  Let me interrupt you there, as I'm

10   prone to do, because I do tend to agree with defendants that

11   the County has -- is not a small player here.  They're not

12   just the lessor.  The County would seemingly have a lot of

13   information that's relevant to the claims here, and, you

14   know, the fact that the County oversaw the most recent

15   reabandonment -- I don't know what it's called, but the thing

16   with the well -- you know, is pretty significant.

17          And so I would tend to think that the evidence is

18   relevant but -- or might be, at least, but these other

19   factors -- the availability of other evidence -- it seems to

20   me that, again, as the County pointed out, that -- a lot of

21   that information is going to be available from plaintiffs.

22   The government's role in the litigation -- again, I know

23   they're a third party, but I do think their role is

24   significant, and the extent to which disclosure would hinder

25   frank and independent discussion regarding contemplative

1   policies and decisions -- you know, I do think that that

2   probably weighs on the County's side because they do need to

3   be able to negotiate leases with people and discuss frankly

4   the pros and cons without having that come to light

5   necessarily.

6          So, if I were you, I would focus on the

7   availability of other similar evidence.

8          MR. HALE:  So, Your Honor, on that issue, in the

9   first place, there's no dispute that all of these

10  communications are internal to the County, and so these

11  specific documents are not available from any other source.

12  So that's not disputed.

13         With respect to the information contained in those

14  documents, based on the description provided, we don't

15  actually know what is in those documents apart from the

16  subjects regarding the leases.  So we don't know exactly what

17  is in there, but what we do know is that the County's

18  knowledge with respect to the property is relevant to the

19  issues and to defendants' defenses in the lawsuit.

20         And so that -- you know, and there's also the rent

21  offset negotiations between the County and plaintiff with

22  respect to potential contamination of soil and issues with

23  the well, and thus far in this case, through all our other

24  third-party discovery and with discovery with respect to the

25  plaintiff, we still don't have a clear picture of that issue,

1  in particular, and that's something that we believe the

2  County -- the County itself would have knowledge of and would

3  possess in these documents, in particular, that are, you

4  know, relevant to the lease and the lease negotiations.

5          THE COURT:  So when you say "rent offset" -- and,

6  again, I -- if somebody's given it to me, I don't know -- I

7  don't believe I've seen a copy of the actual lease, and so is

8  there some provision in the final lease about rent offset for

9  soil contamination or --

10          MR. HALE:  It doesn't appear there's a provision in

11  the final lease regarding this, but it was an element of the

12  negotiation process regarding whether plaintiff would assume

13  certain liabilities or whether the County would do so, and

14  it's not completely clear to us at this point how those

15  negotiations played out, especially with --

16          THE COURT:  So the final lease is that "you accept

17  the property as is"; correct?

18          MR. HALE:  Correct.

19          THE COURT:  All right.  And so -- but during the

20  negotiations you're saying that there's evidence -- which I

21  assume you got from plaintiffs -- that there was some

22  discussion about offsets?

23          MR. HALE:  Correct.  We have seen some evidence,

24  but, you know, the negotiations go back a number of years; so

25  we don't believe we have everything on those negotiations.

1   And given the date of some of these documents that the

2   County's withholding, we believe these are relevant to those.

3   And some of the subject lines mention rent offset

4   negotiations; so we know this issue was being discussed.

5               THE COURT:  What is "Woodfin Option"?

6               MR. HALE:  Woodfin Option is a affiliate/

7   predecessor in this entity with respect to plaintiff.

8               THE COURT:  Okay.  Let me just look a little more

9   closely at these categories.

10              (Pause.)

11              THE COURT:  Parcel 9 -- I know there's, like, a

12   Parcel 10.  There's a Parcel 9.  Is -- what -- can somebody

13   --

14              MR. HALE:  So the --

15              THE COURT:  -- to me?

16              MR. HALE:  The parcel -- the property issue is

17   Parcel 9U, but as with other properties in the area, the

18   parcels have been changed over time -- divided, subdivided --

19   and so Parcel 9U used to be a different parcel that was --

20   that contained other land as well, and it was eventually

21   subdivided into Parcel 9U.

22              THE COURT:  All right.

23              (Pause.)

24              THE COURT:  Just give me a moment, please.

25              (Pause.)

 1            THE COURT:  All right.  Let me hear from the

 2   County, please.

 3            MS. WEISS:  Yes, Your Honor.

 4            With respect to the first category, I would

 5   respectfully disagree with Mr. Hale.  If there are internal

 6   discussions regarding the lease, those are protected under

 7   the privilege and anything not internal -- of course

 8   negotiations would be with the lessee, and those are

 9   available from plaintiff.  So I think it really is as simple

10   as that.

11            THE COURT:  All right.  And then what about the

12   other three categories?

13            MS. WEISS:  Well, with respect to the other three

14   categories, I do believe that we've met our burden to

15   properly assert the privilege.  We have very detailed

16   descriptions in here and -- you know, for example, we

17   included in our papers some examples of the descriptions:

18   Internal County communications with recommendations for the

19   County's actions after the upper portion --

20            THE COURT:  Well, so -- I'm sorry.  I'm

21   interrupting again.

22            MS. WEISS:  Oh, no.  Please.

23            THE COURT:  I'm not so concerned with your

24   descriptions as I am with the fact that there is no decision

25   identified.  So -- it's a little unwieldy here, but let me

1  just get you an example of what I'm talking about.

2          So here -- for instance, in Exhibit U of

3  Ms. Lankenau's -- and I'm sorry if I'm mispronouncing that --

4  declaration -- so this is the privilege log where the items

5  that are highlighted are the deliberative process items.  So,

6  like, No. 780 you've got there "Decision: What information to

7  include on the next communication with DOGGR."  That's not a

8  decision.  The decision would be deciding to include on the

9  next communication with DOGGR information X, Y, and Z.  So --

10  and almost all of these like this -- "Decision" -- the one

11  above it -- 779 -- "Suggestions regarding response to DOGGR

12  lessee's efforts."  That's not a decision.

13          So I just don't think -- so I'm not as concerned

14  with your descriptions of what these things are -- you know,

15  draft document -- whatever.  It's that you didn't provide a

16  decision, and you did have several opportunities to do so.

17  and the law is clear -- I mean, even this case that you cite

18  and rely on heavily, which I think is a good case -- the

19  *Scalia* case -- you know -- let me find the part that I

20  underlined but -- "DOL responds" -- this is in *Scalia* at page

21  -- what page is this?  It's right under the heading that says

22  "Application of the Privilege" -- "Pre-Decisional Documents."

23  It says, "DOL responds that the law does not require the

24  identification of a decision at ILWU's proposed level of

25  specificity" -- and I agree with that -- "and that all

1  withheld documents relate to its decision," quote, "'that

2  there was probable cause to believe that violations of LM-'"

3  -- blah, blah, blah -- "'occurred in connection with'" the

4  "'election.'"

5         So that's a decision, that there was probable

6  cause.  You have not identified actual decisions, and that's

7  where the problem lies.

8         MS. WEISS:  Yes, Your Honor, I understand.  The

9  County had read that decision slightly differently to

10 understand that we did not need to identify each sort of

11 subset decision with respect to each and every document

12 because it would be entirely too burdensome to do so.  But I

13 understand Your Honor's position, and I would just ask that

14 rather than ordering a wholesale production of these

15 documents that we might be afforded one more opportunity to

16 correct these logs.  I know that timing is tight, but that is

17 what we would respectfully request.

18        THE COURT:  Well, I just think that the case law

19 that you cited is pretty clear that there needs to be a

20 decision, and I'm just -- I agree that, you know, the

21 decision can be at a higher level than perhaps defendants

22 were arguing for -- at a higher level of generality but you

23 just -- and *Scalia* is clear that there has to be some

24 decision, and other than as to the lease itself, these other

25 categories -- I think you were on notice that you had to do

1  that, and it's just a little late in the game.

2       So I am going to order that the other three

3  categories be produced, but again, to the extent any of the

4  documents, particularly in the last category, are not

5  relevant to the issues in this lawsuit, you know, I don't

6  think that production would be required, but that's something

7  you would have to make clear to counsel for defendants in --

8  you know, that you've looked at these and just because the

9  property's mentioned, it doesn't have anything to do with

10 this lawsuit.

11      Here's the issue: With the categories in the first

12 category -- the lease -- I don't -- is there somewhere in the

13 joint stip or somewhere else that specifically identifies

14 which items -- which numbers on the privilege log relate to

15 that -- to the lease?  Because I need to, I think, look at

16 each of those and look at the description that the County has

17 given, take into account the arguments that Mr. Hale made and

18 counsel made, and make a determination as to whether the

19 factors weigh as to each one for disclosure or not, and I'm

20 not sure that I have something that tells me which of the

21 deliberative process privilege entries on the log relate to

22 the lease.  I mean, I -- let me look again.

23      So -- let me see.  So I'm looking at Exhibit U

24 again.  It doesn't seem like there were 144 things -- oh, oh.

25 All right.  No.  Shouldn't there have been 144 items

1   highlighted here?  It didn't seem like there were that many,

2   but I didn't stop to count them but -- so I'm looking at --

3   just an example -- 737 of Exhibit U.  So "Communication with

4   client re: Internal County Call - Parcel 9 Legal

5   Description," "Discussion" on "how to proceed with legal

6   descriptions" -- the -- I don't see anything here that easily

7   lets me know that this is being claimed under the lease

8   category.  I mean, maybe.  I --

9          MR. HALE:  Your Honor, as far as we're aware, the

10  County never broke these down into four different categories

11  in terms of the document numbers.

12          THE COURT:  Right.

13          MR. HALE:  It just generally mentioned four

14  categories, and it did not separate those documents out into

15  those categories.  So our -- I guess our concern at this

16  point would be, if the County were now to identify those

17  documents, it would be incentivized to lump certain documents

18  in as lease documents.

19          THE COURT:  Right.

20          MR. HALE:  So that would be our concern.

21          THE COURT:  I understand that.

22          MS. WEISS:  Your Honor, just to that point, we

23  certainly would not have any sort of mal-incentive.  We

24  worked -- we have worked very hard to satisfy Marathon.  So

25  I'd just like to respond to that point that there is no

1  gamesmanship here.

2          THE COURT:  How many -- just since you've separated

3  these out into categories, how many of the allegedly 144 --

4  although I don't think that --

5          MS. WEISS:  (Indecipherable.)

6          THE COURT:  -- highlighted.  How many of the 144 do

7  you think relate to the lease?  I would imagine that's the

8  biggest category, but I don't know.

9          (Pause.)

10         THE COURT:  I'm asking Ms. Weiss.

11         MS. WEISS:  Oh.  Your Honor, I'm sorry.  I don't

12  have that number.

13         THE COURT:  Well -- let me think about this for a

14  minute.

15         MR. HALE:  Your Honor, we're also happy to go

16  through the privilege log and identify what we think are the

17  lease-related documents, send a copy over -- that to the

18  County, and then run it by --

19         THE COURT:  All right.  I appreciate that, and

20  that's a good idea.  Why don't you folks meet and confer

21  concerning which of the privilege log entries relate to the

22  lease, and then email Ms. Martinez -- once you've met and

23  conferred and agreed on this -- and I expect you to agree,

24  but if you really can't, you can call Ms. Martinez.  But once

25  you've given me a list of the items in Exhibit U to the

1  Lankenau declaration that are -- to which the category of

2  "lease" applies -- that was the first of the four categories

3  identified by the County -- just send Ms. Martinez a list of

4  those numbers, and I will then look at them, and I can issue

5  some kind of minute order saying which ones -- as to which

6  ones the County is ordered to produce and as to which ones I

7  find that the defendant has -- defendants have not made their

8  showing that they have a need for them.

9          And so I don't want any more argument or anything

10 like that.  I just want a list.  So by when do you folks

11 think you can do that?  By the end of the day tomorrow?

12         MR. HALE:  That would work for Marathon.

13         MS. WEISS:  Yes, Your Honor.

14         THE COURT:  All right.  All right.  So that's that.

15 And I'm going to -- and before we're done, I'm going to recap

16 everything.

17         Let me ask about -- and I know this doesn't

18 directly involve the County, but let me quickly ask: The

19 email that I was issued about -- I'm sorry -- the email --

20 the issue that I was emailed about yesterday -- has that been

21 resolved?  It seems like it has.

22         MR. HUGHES:  I believe so, Your Honor.  I can

23 explain what happened, but I do believe we've produced the

24 documents at issue, although at the deposition earlier, where

25 Mr. Bartley was not present, it was asked of me of whether or

1   not there were any other documents besides the example

2   documents that were -- or, whether or not those were examples

3   I -- the people at the deposition today did not know.  I told

4   counsel today at the deposition -- none of them are here --

5   that we would try and see if there were anything else that

6   may have been redacted, but as I indicated in my email, we

7   did not -- we did not add any redactions.  Those were

8   redactions that had been there previously, and all I did was

9   click them all to produce and did not realize they had been

10  redacted so --

11          THE COURT:  All right.  Well, you -- I mean, you

12  seem agreeable to producing in unredacted form anything that

13  is inadvertently redacted.  So I'm just going to assume that

14  issue is taken care of, and if not, you can always get in

15  touch with Ms. Martinez.

16          MR. HUGHES:  That was your order, and that was our

17  intent.

18          THE COURT:  All right.  Thank you.

19          MR. BARTLEY:  Your Honor --

20          THE COURT:  Oh.  Go ahead, Mr. Bartley.

21          MR. BARTLEY:  Sorry, Your Honor.

22          That issue is resolved, but if I could just track

23  back to the key and the list that you've asked for regarding

24  the Lockton document.

25          THE COURT:  Oh, yes.  Uh-huh.

1          MR. BARTLEY:  We would only ask that when the list

2  is prepared that it includes everyone who received or sent

3  those emails, not just the people at the top of the email

4  chain.  So, if lawyer provides advice to client in Email 1,

5  client then forwards that email to his golf buddy --

6          THE COURT:  Well, Mr. Bartley, that would be more

7  helpful to me.  So I would ask for that as well.

8          MR. BARTLEY:  Thank you, Your Honor.

9          MR. HUGHES:  I think that is possible.  There may

10  be some Lockton people who I will have to track down their

11  exact role and title, but I will effort that, yes.

12          THE COURT:  All right.

13          And then the cost shifting -- I haven't forgotten

14  about the cost shifting.  I certainly -- if the County wants

15  to make one, I would entertain a formal motion for cost

16  shifting.  I do, though, need to say that I agree with

17  defendants that there has to be showing that the costs were

18  significant, and "significant" is relative to who the party

19  is.  So, for instance, there are cases out there where

20  $15,000 is significant because it's a mom-and-pop, you know,

21  retail store that doesn't have a lot of money, and then I

22  know there's a case -- I forget the name of it -- where

23  $250,000 was not significant because the party was UPS.

24          So, if the County wants to make a motion, I

25  certainly understand, you know, that government agencies are

1   strapped and -- in some ways at least.  So you can certainly

2   make a separate motion for cost shifting that -- but you're

3   going to have to make a showing that the costs involved here

4   are significant to the County.  And that showing has to be

5   fairly detailed according to the case law so --

6           MS. WEISS:  Thank you.

7           THE COURT:  All right.  So let me go over my

8   rulings, and anyone can correct me if I'm wrong.

9           So Mr. Hughes is going to provide me, by the end of

10  the day tomorrow, with a key to the -- to all -- who all the

11  people are included on all the emails, including in the

12  entire email chain for the 25 emails that I was provided

13  previously for in camera review, and you can just simply

14  email that to Ms. Martinez, and it should have everyone and

15  their title and whether or not they're a lawyer and who they

16  work for if that's not apparent from the email address.

17          To the extent you can't do that, Mr. Hughes, by the

18  end of the day tomorrow -- I certainly hope you can, but if

19  you can't, just talk to defendants and copy them on some

20  email telling me by when you can do it and whether he

21  disagrees or agrees or objects or whatever.  I hope you can

22  work that out.

23          MR. HUGHES:  My only question there is there are

24  probably certain Lockton individuals that I can distinguish

25  from lawyer or non-lawyer but cannot say whether or not

1   they're -- what their exact title is --

2        THE COURT:  Well, I want to know who they are

3   because, you know, I think -- I'm going to have to do a

4   little research, but I think if you're copying people that

5   clearly -- the fact of who was copied on a particular email

6   may be relevant to whether it is intended as an attorney-

7   client privilege --

8        MR. HUGHES:  Okay.

9        THE COURT:  -- communication.  So I want that

10  information.

11       MR. HUGHES:  I just might have to get some of that

12  detail from Lockton, and that might be slightly out of my

13  control, but I will follow up with --

14       THE COURT:  Well, again --

15       MR. HUGHES:  -- defendants and "cc:" --

16       THE COURT:  Yeah.  Yeah.  If you can't do it by the

17  end of the day tomorrow, just talk to them.

18       Second, the attorney-client documents -- the

19  62 attorney-client documents -- I'm going to grant the motion

20  in part to the extent that I'm going to order the County to

21  produce a revised privilege log with greater detail along the

22  lines of what I stated by no later than the end of the day

23  Tuesday, which is -- is that what I said?  Yeah, the end of

24  the day Tuesday, which is May 31st, and they should produce

25  any documents that they now assess are more business related

1  than legal, they should produce with redactions any ones that

2  they can, and at the very least, the information that they

3  provide on this revised privilege log as to those 62 docs has

4  to identify who the lawyer is who's at issue whose legal

5  advice is being discussed or forwarded and then more

6  information about what exactly that legal advice goes to.

7      And then defendants will review that, and then

8  we'll set a status conference for June 2nd at 2:30, unless we

9  don't need it, in which case defendants are to let us know as

10 soon as possible.

11     As to the deliberative privilege issue, I'm going

12 to order the production of all relevant documents in the

13 latter three categories identified -- the well, the other

14 matters, and the lease interpretation -- to the extent

15 they're relevant, and then as to the first category, I need

16 -- no later than the end of the day tomorrow, I need a list,

17 after the parties meet and confer, of which entries on the

18 privilege log in Exhibit U relate to that category.  And then

19 I'll issue some kind of minutes once I've had a chance to

20 look those over.

21     So the defendants' motion is granted in part, and I

22 think that's it.

23     Is there anything further?

24     MR. HALE:  Nothing further from Marathon.  Thank

25 you, Your Honor.

 1            THE COURT:  You're welcome.

 2            MR. HUGHES:  Yeah, Your Honor.  Thank you for your

 3  time.

 4            MS. ALEXANDER:  Thank you, Your Honor.

 5            MS. WEISS:  -- further, Your Honor.  Thank you.

 6            THE CLERK:  Judge?  Judge?

 7            THE COURT:  Yes?

 8            THE CLERK:  I just -- now that everyone is there,

 9  I'm not going to be in tomorrow.  So James Munoz will be

10  covering me, and they can send the email to him.  His last

11  name is spelled M-u-n-o-z.  James Munoz will be covering.

12  So, if you can send that to him, because I'll be out

13  tomorrow.

14            THE COURT:  And if they emailed you, they would get

15  a message with his --

16            THE CLERK:  Correct.

17            THE COURT:  -- contact; correct?

18            THE CLERK:  Yes.  Correct.

19            THE COURT:  All right.  And, Ms. Martinez, if you

20  can just explain to Mr. Munoz to please get me that

21  information -- for any -- anything -- emails that come in for

22  this case tomorrow, you know, to get that information to me

23  as soon as possible.

24            THE CLERK:  Great.  Thank you.  And maybe the

25  parties can "cc:" me -- send him and then -- or, either way.

1          THE COURT:  Yeah, please "cc:" Ms. Martinez even if

2    you do email him directly.

3          THE CLERK:  Thank you.

4          THE COURT:  All right.  Thank you.  Have a nice

5    evening, everyone.

6          MR. HUGHES:  -- Your Honor.

7          MS. WEISS:  Thank you, Your Honor.

8          THE CLERK:  This court is now adjourned.

9       (Proceedings adjourned at 10:46 a.m.)

10   ///

11   ///

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                              CERTIFICATE

5        I certify that the foregoing is a correct transcript

6   from the electronic sound recording of the proceedings in the

7   above-entitled matter.

8   /s/ Julie Messa                June 21, 2022
    Julie Messa, CET**D-403        Date
9   Transcriber

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25