1
2
3
4

**LATHAM & WATKINS LLP**
Mary Rose Alexander (Bar No. 143899)
*mary.rose.alexander@lw.com*
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Tel: 312.876.7700
Fax: 312.993.9767

5
6
7
8

Shannon D. Lankenau (Bar No. 294263)
*shannon.lankenau@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: 415.391.0600
Fax: 415.395.8095

9
10
11

Michael A. Hale (Bar No. 319056)
*michael.hale@lw.com*
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Tel: 213.485.1234
Fax: 213.891.8763

12
13

*Attorneys for Defendant*
*Marathon Oil Company*

[Additional Counsel Listed on Next Page]

14

15        **UNITED STATES DISTRICT COURT**

16        **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

17

| | |
|---|---|
| MDR HOTELS, LLC, | CASE NO. 2:20-cv-08008-FLA (JPRx) |
| Plaintiff, | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| vs. | |
| MARATHON OIL COMPANY; THE DOW CHEMICAL COMPANY; and DOES 1 through 10, inclusive | Trial Date: TBD<br>Judge: Hon. Fernando L. Aenlle-Rocha |
| Defendants. | <u>Hearing</u><br>Date: March 24, 2023<br>Time: 1:30 p.m.<br>Location: Courtroom 6B |

18
19
20
21
22
23
24
25
26
27
28

1  Patrick J. Foley (Bar No. 180391)
   *Patrick.Foley@lewisbrisbois.com*
2  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
3  633 West Fifth Street
   Suite 4000
4  Los Angeles, CA 90071
   Telephone: (213) 580-7914
5  Facsimile: (213) 250-7900

6
   Joel Blanchet (*Pro Hac Vice*)
7  *jblanchet@phillipslytle.com*
   Tristan D. Hujer (*Pro Hac Vice*)
8  *thujer@phillipslytle.com*
   Myles K. Bartley (*Pro Hac Vice*)
9  *mbartley@phillipslytle.com*
10 **PHILLIPS LYTLE LLP**
   One Canalside
11 125 Main Street
   Buffalo, NY 14203-288
12 Telephone: (716) 847-7050
   Facsimile: (716) 852-6100
13

14 *Attorneys for Defendant The Dow Chemical Company*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................8

II.   FACTUAL AND PROCEDURAL BACKGROUND.................................10

    A.    Marathon, Dow, and the County Abandoned the Well Several Decades Ago, with the Regulator Witnessing and Approving All Relevant Activities ........................................10

    B.    Knowing All Potential Issues, MDR Nonetheless Leases the Property "As Is" and Thereafter Causes Two Blowouts ................................................................11

    C.    MDR Seeks to Hold Defendants Liable for Its Own Failings ................................................................14

III.  LEGAL STANDARD ................................................................14

IV.   ARGUMENT ................................................................15

    A.    The Well Is Not A Public Nuisance *Per Se* ................................15

        1.    MDR Misrepresents DOGGR'S Emergency Order and Raises An Issue of Fact ................................15

        2.    PRC Sections 3250, 3251, and 3251.5 Are Inapplicable By Their Express Terms ................................17

        3.    Principals of Statutory Construction Confirm PRC Sections 3250, 3251, and 3251.5 Are Inapplicable ................20

        4.    Sections 3250, 3251(d), and 3251.5(a) Do Not Apply Retroactively ................................21

    B.    MDR Is Not Entitled to Contribution ................................24

        1.    MDR Never Pled a Contribution Claim or Sought Recovery In the Form of Contribution ................24

        2.    Contribution Does Not Apply Because No Money Judgment Was Ever Rendered Against MDR And No Joint Obligation Exists Between MDR and Defendants ................................25

        3.    MDR Already Received "Contribution" for the Well's Reabandonment Via a $10M Rent Offset ................27

V.    CONCLUSION ................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adickes v. S. H. Kress & Co.*,
   398 U.S. 144 (1970) ............................................................................... 15, 17

*Aetna Cas. & Surety Co. v. Ind. Acc. Com.*,
   30 Cal.2d 388 (1947) ..................................................................................... 22

*Allergia, Inc. v. Bouboulis*,
   2017 WL 2547225 (S.D. Cal. June 13, 2017) .............................................. 25

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ............................................................................... 15, 17

*Beck Dev. Co. v. S. Pac. Transp. Co.*,
   44 Cal. App. 4th 1160 (1996) ....................................................................... 22

*Bolen v. Woo*,
   96 Cal. App. 3d 944 (1979) ........................................................................... 23

*Californians for Disability Rts. v. Mervyn's, LLC*,
   39 Cal. 4th 223 (2006) ................................................................................... 23

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ............................................................................... 14, 15

*Chu v. U.S. Commodity Futures Trading Comm'n*,
   823 F.3d 1245 (9th Cir. 2016) ....................................................................... 19

*Coca-Cola Bottling Co. v. Lucky Stores, Inc.*,
   11 Cal. App. 4th 1372 (1992) ....................................................................... 26

*Cole v. Fair Oaks Fire Prot. Dist.*,
   43 Cal.3d 148 (1987) ..................................................................................... 22

*Costello v. Collins Eng'rs, Inc.*,
   46 F.3d 1139, 1995 WL 29438 (9th Cir. Jan. 25, 1995) .......................... 15, 17

*DiGenova v. State Bd. of Educ.*,
   57 Cal.2d 167 (1962) ..................................................................................... 22

*Elsner v. Uveges*,
   34 Cal. 4th 915 (2004).........................................................................................23

*In re Hokulani Square, Inc.*,
   776 F.3d 1083 (9th Cir. 2015).............................................................................20

*Long Beach Unified Sch. Dist. v. Santa Catalina Island Co.*,
   No. CV 19-1139-JFW, 2021 WL 4706552 (C.D. Cal. Aug. 17, 2021) .............26

*McNeely v. Cnty. of Sacramento*,
   344 F. App'x 317 (9th Cir. 2009)........................................................................25

*Newhall Land & Farming Co. v. Super. Ct.*,
   19 Cal. App. 4th, 334, 344 (1993)......................................................................27

*People v. Woodhead*,
   43 Cal.3d 1002 (1987).........................................................................................19

*Radobenko v. Automated Equip. Corp.*,
   520 F.2d 540 (9th Cir. 1975)...............................................................................15

*Rosasco v. Comm'n on Jud. Performance*,
   82 Cal. App. 4th 315 (2000), *as modified* (Aug. 7, 2000) ...........................22, 23

*Shoemaker v. Myers*,
   52 Cal.3d 1 (1990)...............................................................................................20

*St. Paul Mercury Ins. v. CorVel Corp.*,
   No. SA CV17-01311 JAK, 2018 WL 8131218 (C.D. Cal. Sept. 28, 2018)
   ..........................................................................................................................24, 27

*Sullins v. Exxon/Mobil Corp.*,
   729 F. Supp. 2d 1129 (N.D. Cal. 2010) ..................................................24, 26, 27

*Tenaya Assocs. Ltd. P'ship v. U.S. Forest Serv.*,
   No. CV-F-92-5375 REC., 1993 WL 13719146 (E.D. Cal., May 18, 1993),
   *modified on recons. sub nom. Tenaya Assocs. v. U.S. Forest Serv.*, CV-F-92-
   5375 REC., 1993 WL 786871 (E.D. Cal. July 13, 1993)..................................27

*Tulelake Irrigation Dist. v. U.S. Fish & Wildlife Serv.*,
   40 F.4th 930 (9th Cir. 2022)...............................................................................20

*U.S. v. Diebold, Inc.*,
   369 U.S. 654 (1962) ...........................................................................................15

*U.S. v. Lopez*,
   998 F.3d 431 (9th Cir. 2021) .................................................................. 20

*U.S. v. Sec. Indus. Bank*,
   459 U.S. 70 (1982) ............................................................................... 22

*Underwriters at Lloyd's Subscribing to Cover Note B1526MACAR1800089 v.*
   *Abaxis, Inc.*,
   491 F. Supp. 3d 506 (N.D. Cal. 2020) ............................................... 26

*Wells Fargo Bank v. Goldzband*,
   53 Cal. App. 4th 596 (1997) ........................................................... 25, 28

## STATUTES

Cal. Civ. Code
   § 875 ..................................................................................................... 26
   § 875(a) ................................................................................................. 24
   § 1432 ................................................................................................ 24, 26

Cal. Pub. Res. Code
   § 3106(a) ............................................................................................... 16
   § 3208.1(a) ............................................................................................ 21
   § 3208.1(b) ............................................................................................ 21
   § 3215.5(a) ........................................................................ 18, 19, 20, 23
   § 3224 ................................................................................................... 17
   § 3226 ................................................................................................... 17
   § 3250 .................................................................................... 18, 21, 23
   § 3251(d) ............................................................................... 18, 23
   § 3251.5(b) ............................................................................................ 20
   § 3255(a)(3) .......................................................................................... 17

## RULES

Fed. R. Civ. P. 56(a) .................................................................................. 14

## OTHER AUTHORITIES

5 B.E. Witkin, Summ. of Law Torts (11th ed. 2017 & Supp. 2022) ...................... 24

*An Act to amend Sections 3203, 3205.2, 3206, 3208.1, 3226, 3236.5, 3237, 3352,*
   *and 3744 of, and to add Section 3219.5 to, the Public Resources Code, relating*
   *to oil and gas conservation, and making an appropriation therefor*, Stats. 2000,
   c. 737 (A.B. 2581) ............................................................................. 21

2017 Cal. Legis. Serv. Ch. 652 (S.B. 724) ............................................................... 22

Stats. 1976, c. 1090, p. 4932, § ............................................................................... 21

Stats. 1976, c. 1090, p. 4933, § 1 ............................................................................ 22

Stats. 1987, c. 1322, § 2 ........................................................................................... 21

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 2:20-cv-08008-FLA (JPRx)

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW

## I.    INTRODUCTION

MDR's motion is as remarkable for what it *does not* seek to adjudicate, as it is for what it does.   MDR, a sophisticated property developer, alleges that a 90-year-old, abandoned oil well (the "Well") that blew out[1] in January 2019 during MDR's operations is a public nuisance.   Critically, however, MDR does not seek adjudication of whether the alleged public nuisance is continuing or permanent. Instead, MDR ignores that this Court has already barred MDR's permanent nuisance claims as untimely.   Similarly, MDR does not seek adjudication of *who* caused or created the alleged public nuisance.   Nor does MDR seek a determination that Defendants, former lessees who last operated the oil well in the Eisenhower Administration, lacked consent to undertake their Well-related activities.

These omissions are fatal because, as will be set forth in Defendants' forthcoming motion for summary judgment, the undisputed material facts demonstrate that any alleged public nuisance (if one exists) is permanent and arose (if at all) when MDR re-entered the Well to bring it up to code and caused a blowout during its attempted "reabandonment."   Moreover, MDR cannot prove that Defendants lacked consent to undertake their Well-related activities, all of which were approved expressly by the California regulator responsible for enforcing then-applicable oil and gas regulations.   If the Court grants Defendants' forthcoming motion for summary judgment on any of these bases, it will moot the non-dispositive issue of whether the Well is a nuisance *per se* under Public Resources Code ("PRC") sections 3250, 3251, and 3251.5.

MDR is also fundamentally wrong.   California's oil and gas regulator never found the oil well "hazardous" or a public nuisance.   Indeed, when the regulator issued its January 2019 Emergency Order following MDR's January 2019 blowout (and later, in 2020, when it issued an Amended Emergency Order), it cited none of

---

[1] A "blowout" is the uncontrolled flow of fluids from a well, and may consist of gas, water, oil, sand, or a mixture of these.

1   these PRC sections.  Instead, the regulator ordered MDR—pursuant to an entirely
2   distinct Article of the PRC—to take immediate action to prevent another blowout.
3   In the absence of a regulatory determination that the Well is "hazardous" or a public
4   nuisance pursuant to PRC sections 3250, 3251, and 3251.5, the Court cannot, on
5   summary judgment, resolve that disputed issue of material fact.

6        At any rate, the express terms of sections 3250, 3251, and 3251.5 make them
7   inapplicable to this case.  Section 3251 applies only if "no operator [has been]
8   determined . . . to be responsible for its plugging and abandonment."  But *MDR* was
9   the *operator* determined to be responsible for its "plugging and abandonment," so
10  PRC section 3251 is inapposite.  Similarly, section 3215.5 does not apply because it
11  requires that a previous abandonment (and there were abandonments in 1941, 1956,
12  and 1959) complied with then-applicable requirements, a fact MDR expressly
13  denies.  MDR's efforts to ignore this statutory element should be rejected.  Further,
14  long accepted principles of statutory construction confirm these statutes are
15  inapplicable.  And California law does not support applying these statutes, which
16  were enacted decades after Defendants' actions, retroactively.

17       Finally, MDR's belated argument (raised for the first time in this motion) that
18  it is entitled to contribution from Defendants is meritless.  First, MDR neither pled
19  a contribution claim nor sought recovery in contribution.  Second, MDR satisfies
20  none of the basic statutory requirements for a contribution claim (*i.e.*, the existence
21  of a money judgment or a shared joint obligation with Defendants).  Third, even if
22  MDR pled and could satisfy the statutory requirements for contribution (it has not
23  and cannot), it has already recovered its claimed costs to "reabandon" the Well in
24  the form of a $10 million rent offset from the County and it is not entitled to any
25  further recovery.

26       Defendants respectfully submit that MDR's motion is without merit, and the
27  Court should deny it.

28

## II.  FACTUAL AND PROCEDURAL BACKGROUND

MDR's motion is premised on a selective, incomplete, and misleading recitation of facts.  The comprehensive material facts, as set forth below, demonstrate that MDR is wrong as a matter of law: there has been no "hazardous" determination or a public nuisance finding under PRC sections 3250, 3251, and/or 3251.5.  Because no such conclusion was ever made, the Court cannot decide the disputed issue of material fact as to whether the Well is "hazardous" under PRC sections 3251 or 3251.5.  Indeed, *MDR* disputes the facts required to make such a determination.

### A.  Marathon, Dow, and the County Abandoned the Well Several Decades Ago, with the Regulator Witnessing and Approving All Relevant Activities

In 1940, at the conclusion of its Well operations, the Ohio Oil Company[2] notified and received approval from California Department of Natural Resources Division of Oil and Gas ("DOGGR")[3] to abandon the Well.  Separate Statement of Genuine Disputes ("SSGD") 1.  On January 3, 1941, Marathon confirmed it had partially abandoned[4] the Well by plugging[5] the oil-producing zone at approximately 3,400 feet below ground surface, "as witnessed by R.S.M.B," and advised that The Dow Chemical Company ("Dow") would take control of the Well to develop saltwater production.  SSGD 2-3.  On January 9, 1941, DOGGR confirmed its approval of Marathon's abandonment of the Well's oil-producing zone .  SSGD 4.

---

[2] The Ohio Oil Company changed its corporate name to Marathon Oil Company ("Marathon") in 1962.  This brief will refer only to "Marathon" to avoid confusion.

[3] The California Department of Natural Resources Division of Oil and Gas, which later became DOGGR, which then became the California Geologic Energy Management Division, regulates oil and gas wells in California.  The entities are one and the same and are referred to as "DOGGR" throughout.

[4] A well that has been plugged and is out of service is considered "abandoned."

[5] A well is "plugged" by setting mechanical or cement barriers in the wellbore at specific intervals to prevent fluid flow.  During the 1940s, a well was plugged by pumping cement into the wellbore above the oil-producing zone.

1   In July 1941, Dow acquired the rights to the Well to produce iodine from
2   saltwater.  SSGD 5.  Dow then modified the Well by perforating the Well's casing
3   above the plugged oil-producing zone, thereby making accessible the area that
4   contained saltwater.  SSGD 6-7.  Dow notified DOGGR of its plan to perforate the
5   Well, DOGGR approved the plan, and Dow subsequently completed the
6   perforations.  *Id.*  In 1956, Dow plugged and abandoned the Well following
7   DOGGR's approval and witnessing of Dow's abandonment.  SSGD 8.

8   In 1958, the County acquired real property, including what is now 4360 Via
9   Marina in Marina Del Rey (the "Property") and the Well.  SSGD 9.  Thereafter, the
10  County notified DOGGR it intended to abandon the Well, which was approved on
11  January 2, 1959.  SSGD 10.  In April 1959, the County reabandoned and re-plugged
12  the Well as part of its construction of the marina and harbor.  SSGD 11.  DOGGR
13  witnessed and approved the County's reabandonment.  SSGD 12.

14  The publicly available Well file fully describes its history.  SSGD 13.  The
15  Well file details Marathon's, Dow's, and the County's Well-related actions,
16  DOGGR's approvals and observations of those actions, and the Well's condition and
17  status from its inception until its final reabandonment in 1959.  SSGD 14.  Notably,
18  the Well did not blow out or evidence any structural integrity issues after the County
19  reabandoned the Well in 1959 and before MDR began its operations in 2017.  SSGD
20  15.

21  **B.   Knowing All Potential Issues, MDR Nonetheless Leases the**
22  **Property "As Is" and Thereafter Causes Two Blowouts**

23  Nearly half a century later, MDR won a bid to develop the Property.  SSGD
24  16.  In October 2013, MDR submitted a Development Plan to the County that
25  explicitly acknowledged an abandoned oil well's presence and the need to address
26  methane gas on the Property.  SSGD 17.  Around this time, multiple Phase I and
27
28

Phase II reports[6] were prepared reflecting the Property's—indeed the region's—widespread historical use as an oil production site. SSGD 18. From these environmental reports and correspondence from its contractors, MDR knew that the Well would need to be reabandoned and brought into compliance with current statutes and regulations before it could develop the Property. SSGD 19. Indeed, MDR admitted it needed to reabandon the well in its own environmental impact reports and in its own project manager's development schedule. SSGD 20. MDR also learned that methane and hydrocarbon impacted soil were present on the Property. SSGD 21. In an email to MDR, its project manager characterized the Property as a "known dirty site." SSGD 23.

Despite these recognized conditions, MDR leased the Property from the County "*as-is*." SSGD 24 (emphasis added). In exchange for MDR accepting sole responsibility for all necessary site remediation, MDR extracted multiple concessions from the County, including a $10 million credit on its rent to cover "extras," such as any costs MDR incurred related to the problems the Property posed. SSGD 25-26.

Despite knowing that the Well would have to be reabandoned to current standards, MDR failed to budget or plan properly for the Well's reabandonment. Before budgeting and planning for the Well's reabandonment, MDR never consulted a well abandonment specialist or a contractor with the requisite knowledge to reabandon a nearly 90-year-old well. SSGD 30. Instead, MDR hired a contractor with no familiarity or experience with California's oil well abandonment standards, and who was therefore ill-suited to provide any correct advice on reabandoning the Well. SSGD 31. Indeed, only *after* construction commenced on the Property did

---

[6] A Phase I Environmental Site Assessment is an investigation of a property's current and historical use. Phase I assessment views and investigates a property in regard to former use in order to determine if there is a potential for hazardous conditions that might be present on the property. A Phase II report is a scientific test whereby geologists drill and sample soil, soil-vapor, and groundwater to test for pollution.

1   MDR submit a proposal to reabandon the Well to the County and DOGGR.  SSGD

2   27-28.  After starting the Well's reabandonment, MDR's ill-prepared contractor

3   proceeded with the project despite numerous signs that a blowout was probable.

4   SSGD 32.  During the Well's reabandonment, it sustained multiple gas kicks and

5   surface breaches—all indications of potential well integrity issues—before blowing

6   out on December 25, 2018, and again, on January 11, 2019.  SSGD 33.

7        On January 18, 2019, one week after the second blowout, DOGGR issued an

8   Emergency Order due to its concern with MDR's handling of the blowout.  SSGD

9   37.  In the order, DOGGR concluded that MDR's "proposals for maintaining well

10  control and proceeding with re-abandonment were . . . insufficient to protect life,

11  health, property, and natural resources."  *Id.*  Specifically stating that MDR's actions

12  "have not been consistent with the actions required to properly control the well,"

13  DOGGR ordered MDR to take measures to complete the reabandonment and

14  imposed specified conditions regarding MDR's operations.  SSGD 38, 41.  Because

15  MDR's actions during the blowout caused a major blockage in the Well, MDR failed

16  to reabandon the Well in accordance with its permit and DOGGR's requirements.

17  SSGD 50-51.

18       Almost two years after DOGGR issued its Emergency Order, nearly 20

19  months after MDR completed its non-compliant abandonment, and months after

20  MDR filed suit against Defendants, DOGGR issued an Amended Emergency Order.

21  SSGD 58.  That Amended Emergency Order states that DOGGR "may determine

22  that an emergency exists in connection with oilfield operations" and found such an

23  emergency existed as to MDR's operations.  SSGD 53-54.

24       While MDR now moves for summary judgment pursuant to PRC sections

25  3250, 3251, and 3251.5, DOGGR did not rely on any of those statutes for its original

26  or its amended orders.  Instead, DOGGR—faulting MDR's operations and not the

27  Well itself—cited only PRC provisions that govern "Definitions and General

28

1    Provisions," "Administration," and "Regulation of Operations" when it issued its

2    orders.  SSGD 45, 54.

3           **C.     MDR Seeks to Hold Defendants Liable for Its Own Failings**

4           Having waived any claims against the County by leasing the Property "as is,"

5    MDR sued remote, former lessees, Marathon and Dow, for the problems it created

6    at the Property and on the Well.  MDR alleged claims for negligence, continuing

7    public nuisance, continuing private nuisance, permanent public nuisance, permanent

8    private nuisance, and trespass.  SSGD 34.  This Court dismissed MDR's negligence

9    and permanent nuisance claims as untimely (SSGD 35), finding that "the County []

10   knew or had reason to suspect Plaintiff's claims regarding the alleged 'improper

11   construction, use, maintenance and abandonment of the well' at least as of 1959."

12   SSGD 36.  Only MDR's trespass and continuing public and private nuisance claims

13   remain.  Although this Court granted it leave to do so, MDR chose not to amend its

14   Complaint.  As set forth in Defendants' forthcoming motion for summary judgment,

15   these remaining claims fail as a matter of law because any alleged nuisance (if one

16   exists) is permanent and was caused by MDR, and because MDR cannot prove that

17   Defendants lacked consent to engage in their Well-related activities.

18          MDR nevertheless filed a motion for partial summary judgment, asserting that

19   the Well is a public nuisance *per se* and MDR is entitled to contribution from

20   Defendants.  ECF No. 124-1.  For the reasons set forth below, the Court should deny

21   the motion.

22   **III.   LEGAL STANDARD**

23          "[S]ummary judgment is proper if the pleadings, depositions, answers to

24   interrogatories, and admissions on file, together with the affidavits, if any, show that

25   there is no genuine issue as to any material fact and that the moving party is entitled

26   to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)

27   (internal citation omitted); *see also* Fed. R. Civ. P. 56(a).

28

1    "On a motion for summary judgment, 'the trial court does not try issues of

2  fact; rather, examining the entire record, it first decides the limited question of

3  whether any factual issue exists.'" *Costello v. Collins Eng'rs, Inc.*, 46 F.3d 1139,

4  1995 WL 29438, at *3 (9th Cir. Jan. 25, 1995) (quoting *Radobenko v. Automated

5  Equip. Corp.*, 520 F.2d 540, 543 (9th Cir. 1975)); *Anderson v. Liberty Lobby, Inc.*,

6  477 U.S. 242, 249 (1986) ("at the summary judgment stage the judge's function is

7  not himself to weigh the evidence and determine the truth of the matter but to

8  determine whether there is a genuine issue for trial").  Where a genuine dispute exists

9  with respect to a material fact, "all other facts [are] immaterial" and the moving

10  party's motion should be denied.[7]  *Celotex*, 477 U.S. at 322-23.

11    If a moving party fails to carry its burden of showing the absence of any

12  genuine issue of material fact, the nonmoving party has no obligation to produce

13  anything, even if the nonmoving party would have the burden of persuasion at trial.

14  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 160 (1970).  When considering whether

15  the moving party for a summary judgment motion has met its initial burden, the

16  Court must view the evidence in the light most favorable to the non-moving party.

17  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

18    Accordingly, the Court must answer two basic questions: "First, is there any

19  genuine issue as to any material fact?  Second, if there is no genuine issue of fact,

20  then, viewing the evidence and the inferences which may be drawn therefrom in the

21  light most favorable to the adverse party, is the movant entitled to prevail as a matter

22  of law?"  *Radobenko*, 520 F.2d at 543.

23  **IV.    ARGUMENT**

24        **A.    The Well Is Not A Public Nuisance *Per Se***

25              **1.    MDR Misrepresents DOGGR'S Emergency Order and**

26

27

28  ---

[7] Remarkably, MDR's own motion is premised on facts it actually disputes—namely, that the prior abandonments in 1941, 1956, and 1958 complied with then-applicable requirements.

15

**Raises An Issue of Fact**

MDR premises its motion on DOGGR's Emergency Order, but contrary to MDR's assertion, DOGGR never found the Well to be "hazardous" pursuant to PRC sections 3251 or 3251.5, which are part of Article 4.2, "Hazardous Wells and Facilities." DOGGR's Emergency Order never mentions *any* of Article 4.2's sections. SSGD 46, 53. Nor does DOGGR's Emergency Order use the term "hazardous," much less characterize the Well as such. SSGD 44, 55. Instead, relying on different PRC Articles, DOGGR determined that "[MDR's] subsequent actions to the uncontrolled release of January 11, 2019, have not been consistent with the actions required to properly control the well and protect life, health, property, and natural resources." SSGD 38. DOGGR further found that "[MDR's] proposals for maintaining well control and proceeding with re-abandonment were determined to be insufficient to protect life, health, property, and natural resources." SSGD 37.

In other words, concerned with MDR's operations, DOGGR ordered MDR to take immediate action to prevent another uncontrolled release *to protect* and *to prevent damage* to life, health, property, and natural resources.[8] SSGD 42-43 (emphasis added). In doing so, DOGGR expressly relied on PRC sections 3013, 3106, 3224, and 3226, which are contained in Article 1 (Definitions and General Provisions), Article 2 (Administration), and Article 4 (Regulation of Operations), and authorize DOGGR to "issue an order that directs the Operator [MDR] to take any actions that the Supervisor deems necessary *to protect* life, health, property, or natural resources." SSGD 47-51 (emphasis added).[9]

---

[8] The testimony of Daniel Dudak, the DOGGR Southern District Deputy at the time, confirms that DOGGR issued its Emergency Order because DOGGR was "concerned that the operator wasn't taking the situation seriously . . . ." SSGD 40. The Well itself was not the issue, but rather MDR's insufficient attempts to reabandon it were the concern that prompted DOGGR's Emergency Order.

[9] Specifically, §3106(a) authorizes the Supervisor to "supervise . . . the abandonment of wells . . . so as *to prevent, as far as possible, damage* to life, health, property, and natural resources[.]" Cal. Pub. Res. Code § 3106(a); SSGD 49 (emphasis added).

1    Fatal to MDR's argument, DOGGR did not act under Article 4.2 and

2    determine the Well was "hazardous."  DOGGR certainly knew it had the authority,

3    pursuant to Article 4.2, section 3255, to order the Well's reabandonment if it found

4    it to be "hazardous."  *See* Cal. Pub. Res. Code § 3255(a)(3) (granting supervisor

5    authority to order a hazardous well's reabandonment).  Yet, DOGGR did not do so.

6    Instead, it expressly ordered the Well's reabandonment pursuant to Articles 1, 2, and

7    4, *not* Article 4.2.  These facts demonstrate that MDR has not met its burden and its

8    motion should be denied.  *See Adickes*, 398 U.S. at 160 (where moving party fails to

9    carry its burden to show the absence of any genuine issue of material fact, summary

10   judgment should be denied).

11        MDR is also wrong that DOGGR found the Well "hazardous,"[10] and therefore

12   a public nuisance *per se*, pursuant to Article 4.2.  Lacking evidence that DOGGR

13   made such a determination, whether the Well was "hazardous" is a question of fact

14   not to be decided by a court on a summary judgment motion.  *Costello*, 46 F.3d 1139,

15   1995 WL 29438, at *3; *Anderson*, 477 U.S. at 249.  Therefore, MDR's motion

16   should be denied.

17        **2.     PRC Sections 3250, 3251, and 3251.5 Are Inapplicable By**

18             **Their Express Terms**

19

---

20   Similarly, §3224 requires the Supervisor to "order such . . . remedial work as . . . are
     necessary *to prevent damage* to life, health, property, and natural resources[.]"  Cal.
21   Pub. Res. Code § 3224; SSGD 50 (emphasis added).  Finally, § 3226 provides that
     "if the Supervisor determines that an emergency exists, the Supervisor may order or
22   undertake the actions he or she deems necessary *to protect* life, health, property, or
     natural resources."  Cal. Pub. Res. Code § 3226; SSGD 51 (emphasis added).
23

24   [10] MDR cites to a statement in the Amended Emergency Order regarding "issues
     related to the original abandonment."  Mot. at 9.  This statement was not a DOGGR
25   finding—instead, it was an excerpt from a section of the Amended Emergency Order
     titled "Alleged Acts/Omissions," which includes a number of statements made
     "Upon information and belief."  ECF No. 125, Ex. 28, at 3.  In addition to conflicting
26   with the original Emergency Order, Defendants were not party to the administrative
     proceedings that culminated in the Amended Emergency Order.  Indeed, the
27   Amended Emergency Order is dated approximately five months after MDR filed this
     lawsuit and followed MDR's appeal of the original Emergency Order.  The clear
28   inference to be drawn is that MDR obtained the self-serving statement contained in
     the Amended Emergency Order's allegation section for litigation purposes.

If the Court considers whether the Well is "hazardous" and therefore a public nuisance (it should not), the result is the same—MDR's motion should be denied. MDR incorrectly argues that the Well is a "hazardous well" and thus a *per se* public nuisance under PRC section 3250 because it purportedly qualifies as a "hazardous well" under sections 3251 and 3251.5.  Because Sections 3250, 3251, and 3251.1 are inapplicable by their terms, MDR cannot demonstrate that the Well is "hazardous."

PRC section 3251 finds an oil and gas well "hazardous" only if two conditions are met, neither of which are satisfied here.  Cal. Pub. Res. Code, § 3251(d).  First, it must be an oil and gas well "determined by the supervisor to be a *potential* danger to life, health, or natural resources."  *Id.*  Second, it must be an oil and gas well "for which there is *no operator* determined by the supervisor to be responsible for its plugging and abandonment under Section 3237."  *Id.* (emphasis added).  Section 3251 is inapplicable for the obvious reason that DOGGR identified *MDR* as the *operator* responsible for the Well's plugging and abandonment, a fact MDR does not (and cannot) deny.  *See* SSGD 59, 74.  And while the supervisor determined MDR's *operations* to be a danger, it never determined that the *Well* itself represented a danger to life, health, or natural resources.  *See* SSGD 38.

Similarly, MDR cannot satisfy section 3251.5's conditions to deem the Well hazardous.  For section 3251.5 to apply, the supervisor must determine that the well poses "a *present* danger to life, health, or natural resources[.]"  Cal. Pub. Res. Code § 3215.5(a).  And, the well had to have "been abandoned in accordance with the requirements of the division in effect at the time of the abandonment 15 or more years before the date of the supervisor's determination that it poses such a danger."  *Id.*  MDR offers no evidence to support compliance with the first condition, and MDR expressly denies the second condition is satisfied.  Indeed, MDR asserts that "it is MDR's position that the well was not abandoned in compliance with the then-applicable standards."  Mot. at 13.

1    But MDR cannot have it both ways in its motion.  MDR cannot *simultaneously*

2    (1) argue that section 3251.5 applies, and (2) dispute that Marathon and Dow

3    complied with DOGGR requirements at the time of their respective abandonments.

4    If section 3251.5 applies, MDR necessarily must concede that Marathon and Dow

5    abandoned the well "in accordance with the requirements of the division in effect at

6    the time of the abandonment 15 or more years before the date of the supervisor's

7    determination that it poses such a danger."  Cal. Pub. Res. Code, § 3215.5(a).  By

8    affirmatively arguing that the Well was not abandoned in accordance with DOGGR

9    requirements, MDR has necessarily defeated its motion for partial summary

10   judgment.

11        To maintain its untenable position that the Well was not previously abandoned

12   in compliance with then-applicable standards (Mot. at 13), MDR disregards the

13   requirement that a prior abandonment be done in accordance with DOGGR's

14   requirements in effect at the time.  *See* Mot. at 12 (arguing that "[i]t would make

15   little sense, and unduly limit CalGEM's ability to order an abandonment of a

16   hazardous well under Article 4[.2], if the definition of 'hazardous wells' under

17   Section 3215.5 only included old wells abandoned in 'compliance' with old

18   standards").  But MDR cannot ignore the legislature's unmistakable intent, as set

19   forth in the statute's clear and unambiguous terms ("has been abandoned in

20   accordance with the requirements of the division in effect at the time of the

21   abandonment").  *See People v. Woodhead*, 43 Cal.3d 1002, 1007-08 (1987) ("Our

22   analysis starts from the fundamental premise that the objective of statutory

23   interpretation is to ascertain and effectuate legislative intent. . . .  When the language

24   is clear and unambiguous, there is no need for construction."); *see also Chu v. U.S.

25   Commodity Futures Trading Comm'n*, 823 F.3d 1245, 1250 (9th Cir. 2016) (stating

26   that courts "have no license to disregard the plain text of the statute").  When

27   attempting to glean legislative intent "[w]e do not presume that the Legislature

28   performs idle acts, nor do we construe statutory provisions so as to render them

1   superfluous." *Shoemaker v. Myers*, 52 Cal.3d 1, 22 (1990); *see also Tulelake*

2   *Irrigation Dist. v. U.S. Fish & Wildlife Serv.*, 40 F.4th 930, 936 (9th Cir. 2022).

3   Because MDR fails to offer evidence that DOGGR found the Well poses a "present

4   danger," and it maintains that "the [W]ell was not abandoned in compliance with the

5   then-applicable standards" (Mot. at 13), section 3251.5 is necessarily inapplicable.

### 3.   Principals of Statutory Construction Confirm PRC Sections 3250, 3251, and 3251.5 Are Inapplicable

8   Nonetheless, MDR urges the Court to take no notice of § 3251.5(a)'s plain

9   text and to disregard the phrase "has been abandoned in accordance with the

10   requirements of the division in effect at the time of the abandonment."  Cal. Pub.

11   Res. Code § 3215.5(a).[11]  Specifically, MDR argues "that this phrase is meant only

12   to indicate that the original abandonment took place more than fifteen years ago,

13   when the abandonment process may have been controlled by different standards and

14   does not require some sort of prior 'compliance' with the older standards."  Mot. at

15   12.   MDR is wrong.   It appears to invoke the absurdity canon of statutory

16   construction, arguing that it would somehow be absurd to include in this statute only

17   those wells that were abandoned in accordance with DOGGR requirements.   But

18   "the absurdity canon is 'confined to situations where it is *quite impossible* that [the

19   legislature] could have intended the result . . . and where the alleged absurdity is so

20   clear as to be obvious to most anyone.'"  *U.S. v. Lopez*, 998 F.3d 431, 438 (9th Cir.

21   2021) (quoting *In re Hokulani Square, Inc.*, 776 F.3d 1083, 1088 (9th Cir. 2015)).

22   The absurdity canon has no application here because § 3251.5(a) is part of a rational

23   statutory scheme.

24   The statute cited by MDR was enacted as part of *An act to amend Section*

25   *3208.1 of, to add Section 3251.5 to, and to add Chapter 7 (commencing with Section*

---

27   [11] MDR's assertion that a plain text reading of the statute could somehow hamper
DOGGR's authority to address hazardous wells is incorrect.  The statute states that
28   "[r]eabandonment initiated by the supervisor shall not be affected by the timeline
established in this section."  Cal. Pub. Res. Code § 3251.5(b).

3850) to Division 3 of, the Public Resources Code, relating to oil and gas. SSGD 60; Stats. 1987, c. 1322, § 2. That Act included distinct provisions for two types of abandoned wells: those abandoned in accordance with DOGGR requirements at the time, and those that were not. Section 3251.5(a) only covers the former. Wells that were not abandoned in accordance with DOGGR requirements at the time were included in a separate section which imposes cost responsibility directly on operators who failed to act in accordance with DOGGR requirements. *See* Cal. Pub. Res. Code § 3208.1(a) (1987).[12] Under that separate provision, "if the well was not abandoned in accordance with the requirements of the division in effect at the time of the abandonment and the last operator having an economic interest in or receiving any benefit from the well is still in business in this state, that operator shall be responsible." *Id.* Thus, the Act rationally distinguished between wells that were abandoned in accordance with existing regulation and those that were not, with different provisions applying to each well type. The absurdity canon therefore does not apply, and the Court should adopt the statute's plain meaning.

### 4.    Sections 3250, 3251(d), and 3251.5(a) Do Not Apply Retroactively

Even if MDR could show that Sections 3250, 3251(d), and 3251.5(a) govern the Well as a general matter (it cannot), these statutes cannot be applied retroactively to Defendants' conduct in the 1930s, '40s, and '50s. Section 3251.5(a) was enacted in 1987. SSGD 61; *see* Stats. 1987, c. 1322, § 2. Section 3250, which states that "hazardous wells" are a nuisance, was enacted in 1976. SSGD 62; Stats. 1976, c.

---

[12] This section was subsequently amended further. *See An Act to amend Sections 3203, 3205.2, 3206, 3208.1, 3226, 3236.5, 3237, 3352, and 3744 of, and to add Section 3219.5 to, the Public Resources Code, relating to oil and gas conservation, and making an appropriation therefor*, Stats. 2000, c. 737 (A.B. 2581). The statute now states that the operator is responsible for reabandonment unless "[t]he supervisor finds that the operator plugged and abandoned the well in conformity with the requirements of this division in effect at the time of the plugging and abandonment" and various other conditions are satisfied. Cal. Pub. Res. Code § 3208.1(b).

1090, p. 4932, § 1.  Section 3251 was added in 2017.  SSGD 63; 2017 Cal. Legis. Serv. Ch. 652 (S.B. 724).[13]  Retroactively imposing these statutes on conduct that occurred decades before their enactment is impermissible.

*Beck Development Company v. Southern Pacific Transportation Company*, 44 Cal. App. 4th 1160 (1996), is instructive, directly on point, and controlling law here.   Beck, a developer, brought an action based on subsurface contamination that occurred prior to 1945.  *Id.* at 1171-72.  The trial court held that this contamination constituted a nuisance *per se* under the Porter-Cologne Water Quality Control Act. *Id.* at 1206.  The court of appeal reversed, explaining that "[t]he Water Act was not operative until 1970, which was 25 years after Southern Pacific ceased using its reservoir and sold the property."  *Id.* at 1207.   The court of appeal held that "legislation that makes certain conduct unlawful cannot be applied to conduct that was lawful and completed before its enactment" and therefore the trial court's "reliance upon the Water Act was misplaced."  *Id.* at 1207-08.

Here, Defendants relinquished control of the Property and the Well by 1958. SSGD 64-65.  As *Beck* explains, statutes passed decades after lawful historical activities were conducted do not ordinarily impose retroactive liability.  As a matter of statutory construction, "statutes are not to be given a retrospective operation unless it is clearly made to appear that such was the legislative intent."  *Cole v. Fair Oaks Fire Prot. Dist.*, 43 Cal.3d 148, 153 (1987) (quoting *Aetna Cas. & Surety Co. v. Ind. Acc. Com.*, 30 Cal.2d 388, 393 (1947)).  Laws apply prospectively unless "the unequivocal and inflexible import of the terms, and the manifest intention of the legislature" is otherwise.  *Rosasco v. Comm'n on Jud. Performance*, 82 Cal. App. 4th 315, 320 (2000), *as modified* (Aug. 7, 2000) (quoting *U.S. v. Security Indus. Bank*, 459 U.S. 70, 79 (1982)); *see also DiGenova v. State Bd. of Educ.*, 57 Cal.2d 167, 173 (1962) ("The rule to be applied is the same with respect to all statutes, and

---

[13] A similar definition was included in Stats.1976, c. 1090, p. 4933, § 1.

1    none of them is retroactive unless the Legislature has expressly so declared."). Even

2    a law enacted as an "urgency statute" is not retroactive absent an express indication.

3    *See Bolen v. Woo*, 96 Cal. App. 3d 944, 958-59 (1979).

4           Nothing in Article 4.2 expressly indicates that the Legislature intended any of

5    its sections to apply retroactively.  And for MDR to prevail on its motion for partial

6    summary judgment, sections 3250 and 3251 or 3251(a) would need to have

7    retroactive effect (section 3251 or 3251.5(a) for the Well to qualify as hazardous and

8    section 3250 for the Well to be deemed a public nuisance).  There is no indication

9    whatsoever that any of those sections have retroactive effect.  Section 3251.5(a)

10   specifically requires a determination by DOGGR of a "present danger."  Cal. Pub.

11   Res. Code, § 3215.5(a).   Section 3251(d) is phrased in the present tense.  *Id.*

12   (requiring "there is no operator").  And although it references abandonments that

13   occurred  before  such  a  determination,  it  does  not  refer  to  any  conduct  that

14   necessarily occurred prior to enactment of the statute.  Because the statute can apply

15   prospectively to abandonments that occur after enactment, retroactivity is not "the

16   unequivocal and inflexible import of the terms."  *Rosasco*, 82 Cal. App. 4th at 320.

17   Section 3250 is phrased in the present tense and establishes that the expenditure of

18   funds for abating certain wells serves a public purpose.  *See* Cal. Pub. Res. Code, §

19   3250.  It lacks any indication that the Legislature intended it to apply retroactively.

20          Nor would retroactive application comport with due process.  A statute is

21   impermissibly retroactive when "application of the new law to pending cases would

22   improperly have changed the legal consequences of past conduct by imposing new

23   or different liabilities based upon such conduct."  *Californians for Disability Rts. v.*

24   *Mervyn's, LLC*, 39 Cal. 4th 223, 231 (2006).  MDR argues these statutes do precisely

25   that—impose public nuisance liability on Defendants even if no such liability would

26   have attached when Defendants controlled the Well.  But California does not permit

27   plaintiffs "to apply the new law of today to the conduct of yesterday."  *Elsner v.*

28   *Uveges*, 34 Cal. 4th 915, 938 (2004) (citation and quotations omitted).  Because

Sections 3250, 3251(d), and 3251.5(a) were passed long after Defendants ceased any involvement with the Well, MDR now cannot weaponize these statutes to impose retroactive liability.

### B.     MDR Is Not Entitled to Contribution

MDR's contribution claim fails for three independent reasons: (1) MDR never pled a contribution claim, (2) no money judgment has been rendered against MDR and MDR does not otherwise share a joint obligation with Defendants, and (3) MDR has already recovered from the County for its alleged Well abandonment costs.

#### 1.     MDR Never Pled a Contribution Claim or Sought Recovery In the Form of Contribution

For the very first time in its motion, MDR contends that it may "seek[] contribution from . . . Marathon and Dow." Mot. at 15.  MDR is wrong as a matter of law.

"Under California common law, there is no right to contribution with respect to joint, concurrent or successive tortfeasors." *St. Paul Mercury Ins. v. CorVel Corp.*, No. SA CV17-01311 JAK, 2018 WL 8131218, at *6 (C.D. Cal. Sept. 28, 2018); 5 B.E. Witkin, Summ. of Law Torts, § 213, at 371 (11th ed. 2017 & Supp. 2022).  Contribution is "a right created by statute that provides for the distribution of a loss equally among all tortfeasors." *Sullins v. Exxon/Mobil Corp.*, 729 F. Supp. 2d 1129, 1138 (N.D. Cal. 2010).  California Code of Civil Procedure section 875(a) provides that, "[w]here a *money judgment* has been rendered jointly against two or more defendants in a tort action there shall be a right of contribution among them as hereinafter provided."  Cal. Civ. Code § 875(a) (emphasis added).  Separately, California law allows "a party to a *joint, or joint and several obligation*, who satisfies more than his share of the claim against all, [to] require a proportionate contribution from all the parties joined with him."  Cal. Civ. Code § 1432 (emphasis added).

Prior to filing its motion, MDR has never pled, or even mentioned, a contribution claim.  SSGD 66,70.  MDR's Complaint does not assert facts to support

1   a contribution claim.  SSGD 66-68.  And at no point during this litigation has MDR

2   ever sought to recover damages in the form of contribution or to amend its Complaint

3   to add a cause of action for contribution.  SSGD 70.

4         Instead, after introducing this new theory of recovery, MDR spills ink

5   discussing dicta in *Wells Fargo Bank v. Goldzband*, 53 Cal. App. 4th 596, 632-33

6   (1997), while still failing to state any legal basis for or provide any evidence of its

7   newfound contribution right.  ECF No. 124-1, at 14-15.  And not once in MDR's

8   motion does MDR reference California Code of Civil Procedure sections 875(a) or

9   1432, or any other California statutes for that matter, that would entitle MDR to

10   contribution in this case.  SSGD 69.  Thus, contrary to MDR's contentions that it is

11   "not preclude[d] . . . from seeking contribution," (ECF No. 124-1 at 15), MDR

12   cannot preview for the first time in its motion a new claim or basis for recovery.[14]

13   *See, e.g.*, *McNeely v. Cnty. of Sacramento*, 344 F. App'x 317, 319 (9th Cir. 2009)

14   (affirming summary judgment where plaintiff presented the claim "for the first time"

15   in summary judgment briefing and the claim was "not mentioned in the complaint,

16   nor did [the plaintiff] seek to amend his complaint"); *Allergia, Inc. v. Bouboulis*,

17   2017 WL 2547225, at *4 (S.D. Cal. June 13, 2017) (denying summary judgment

18   where plaintiff raised claim for the first time in its motion for summary judgment).

19   Accordingly, MDR's claim, request, and argument that it is entitled to contribution

20   must be denied.

21         **2.**     **Contribution Does Not Apply Because No Money Judgment**

22               **Was Ever Rendered Against MDR And No Joint Obligation**

23               **Exists Between MDR and Defendants**

24         Even if MDR adequately pled a statutory right to contribution, contribution

25   here is not permitted under California Code of Civil Procedure sections 875(a) or

26

27

28

---

[14] Importantly, by claiming that MDR may "seek[] contribution" from Defendants (ECF No. 124-1, at 15), MDR necessarily admits that it is a tortfeasor with respect to its own nuisance and trespass claims.

1432 because no money judgment has been rendered against MDR and no joint
obligations exist between MDR and Defendants.

First, for contribution under section 875(a), "[a] right of contribution can
come into existence *only after* rendition of a judgment declaring more than one
defendant jointly liable to the plaintiff." *Coca-Cola Bottling Co. v. Lucky Stores,
Inc.*, 11 Cal. App. 4th 1372, 1378 (1992) (emphasis added). Put differently, "[t]he
right of contribution thus does not come into existence until the issuance of a
judgment." *Underwriters at Lloyd's Subscribing to Cover Note
B1526MACAR1800089 v. Abaxis, Inc.*, 491 F. Supp. 3d 506, 519 (N.D. Cal. 2020).

Because MDR cannot satisfy the statutory requirement that a money judgment
has been rendered against it or anyone else, MDR fails to meet § 875(a)'s minimum
requirements. SSGD 71-72. To date, no judgment, monetary or otherwise, has been
rendered against MDR or Defendants. To the extent that MDR implies that the
Emergency Order is a judgment, California courts have repeatedly rejected
arguments that similar regulatory orders are "judgments" under California Code of
Civil Procedure section 875. *See Sullins v. Exxon/Mobil Corp.*, 729 F. Supp. 2d
1129, 1138 (N.D. Cal. 2010) (granting summary judgment in former property
owner's favor on the current owners' claim for contribution under California Code
of Civil Procedure § 875 where regulatory agency's final cleanup order relating to
leaking underground gasoline storage tanks was not functional equivalent of a
money judgment); *Long Beach Unified Sch. Dist. v. Santa Catalina Island Co.*, No.
CV 19-1139-JFW, 2021 WL 4706552, at *13 (C.D. Cal. Aug. 17, 2021) (affirming
summary judgment that regulatory agency's order to clean up contaminated soil did
not support a claim for contribution).

Second, because there is no joint obligation between MDR and Defendants to
remediate the Well, California Code of Civil Procedure § 1432 does not apply.
Defendants have had no obligations related to the Well for over half a century.
SSGD 75-78. DOGGR never determined that Defendants were "Operators," under

1   PRC Code section 3009.  Instead, DOGGR found that MDR was the Operator.

2   SSGD 59.  Since the Emergency Order is not "addressed to both [MDR] and

3   Defendant[s]," and only MDR was responsible for the Well's reabandonment per

4   the Emergency Order (*id.*), no joint obligation exists.  *Sullins*, 729 F. Supp. 2d at

5   1139.  Since "a necessary element of [the] contribution claim" is not met,

6   contribution is impermissible here on this ground alone.  *St. Paul Mercury Ins.*, 2018

7   WL 8131218, at *6.

8               **3.      MDR Already Received "Contribution" for the Well's**

9                         **Reabandonment Via a $10M Rent Offset**

10          MDR already has recovered for the cost to reabandon the Well when it

11   received a rent offset of $10 million from the County and is entitled to no more.

12          Under California law, where a "plaintiff knew of the existence of the

13   contamination before acquiring the property," the purported "damage to the property

14   caused by the defendant's [actions] could be factored into the terms of the purchase,"

15   and the nuisance claims avoided.  *Newhall Land & Farming Co. v. Super. Ct.*, 19

16   Cal. App. 4th, 334, 344 (1993); *see also Tenaya Assocs. Ltd. P'ship v. U.S. Forest

17   Serv.*, No. CV-F-92-5375 REC., 1993 WL 13719146, at *6 (E.D. Cal., May 18,

18   1993), *modified on recons. sub nom. Tenaya Assocs. v. U.S. Forest Serv.*, CV–F–

19   92–5375 REC., 1993 WL 786871 (E.D. Cal. July 13, 1993) ("[T]he buyer of the

20   single parcel who has been informed of the harm has already been compensated for

21   that harm and is precluded from further compensation.").

22          The undisputed facts dictate that the same principal applies here to ensure that

23   MDR does not recover a windfall.  After becoming the Well's "legal operator,"

24   (SSGD 74), MDR asserts it "incurred . . . $10 Million [in costs] to completely re-

25   abandon the [W]ell," and specifically, $8.2 million following the issuance of the

26   Emergency Order.  Compl. ¶¶ 14, 16.  Since the County "knew or had reason to

27   suspect [MDR's] claims regarding 'the alleged 'improper construction, use,

28   maintenance and abandonment of the [W]ell' at least as of 1959" (SSGD 36), the

1  County leased MDR the Property with a $10 million rent offset to cover "extras,"

2  such as any costs MDR incurred related to the Property and the Well.  SSGD 26.

3  Notwithstanding that MDR, as the "legal operator," (SSGD 74; *see also id.* at 59),

4  was "subject to the duty to comply with the order" to plug and abandon the Well,

5  and bore "the financial burden [to do] so," the $10 million rent offset more than

6  satisfies MDR's claimed abandonment costs.  *See Wells Fargo Bank*, 53 Cal. App.

7  4th at 632.  It is entitled to no more.

8  **V.     CONCLUSION**

9      For the reasons set forth above, MDR's motion for partial summary judgment

10  on the non-dispositive issue of whether the Well is a nuisance *per se* under PRC

11  sections 3250, 3251, and 3251.5 and whether MDR is entitled to contribution should

12  be denied.

13

14  Dated: March 3, 2023                    **LATHAM & WATKINS LLP**

15                                    By: *s/ Mary Rose Alexander*
                                          Mary Rose Alexander
16                                        Shannon D. Lankenau
                                          Michael A. Hale
17                                        Attorneys for Defendant
                                          *Marathon Oil Company*

18

19

20

21

22

23

24

25

26

27

28

1

2 **LEWIS BRISBOIS BISGAARD**
**& SMITH LLP**

3
By: */s/ Patrick J. Foley*
4   Patrick J. Foley
  Attorneys for Defendant
5   *The Dow Chemical Company*

6

7 **PHILLIPS LYTLE LLP**

8
By: */s/ Joel A. Blanchet*
  Joel A. Blanchet (*Pro Hac Vice*)
9   Tristan D. Hujer (*Pro Hac Vice*)
  Myles K. Bartley (*Pro Hac Vice*)
10   Attorneys for Defendant
  *The Dow Chemical Company*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

   DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 2:20-cv-08008-FLA (JPRx)

1

## **ATTESTATION**

2      Pursuant to Local Rule 5-4.3.4(a)(2)(I), I, Mary Rose Alexander, attest under

3  penalty of perjury that I have obtained concurrence and authorization from the

4  other signatories to affix their electronic signatures to this filing.

5

6  Dated:  March 3,2023          **LATHAM & WATKINS LLP**

7                               By */s/ Mary Rose Alexander*
                                 Mary Rose Alexander

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF COMPLIANCE**

2  The undersigned, counsel of record for Defendant Marathon Oil Company,

3 certifies that this brief contains 6,989 words, which complies with the 7,000 word

4 limit of L.R. 11-6-1.

5

6 Dated:  March 3, 2023    **LATHAM & WATKINS LLP**

7           By */s/ Mary Rose Alexander*
            Mary Rose Alexander

8            *Attorneys for Defendant Marathon Oil*
            *Company*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28