COX, CASTLE & NICHOLSON LLP
Perry S. Hughes (State Bar No. 167784)
Alicia N. Vaz (State Bar No. 215081)
Kevin M. Hannifan (State Bar No. 288135)
2029 Century Park East, Suite 2100
Los Angeles, California 90067-3284
Telephone: (310) 284-2200
Facsimile: (310) 284-2100
Email: phughes@coxcastle.com;
avaz@coxcastle.com;
khannifan@coxcastle.com

Attorneys for Plaintiff MDR Hotels, LLC

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| MDR HOTELS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>MARATHON OIL COMPANY; THE DOW CHEMICAL COMPANY; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:20-cv-08008-FLA (JPRx)<br><br>Assigned to the<br>Hon. Fernando L. Aenlle-Rocha<br><br>**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:    March 24, 2023<br>Time:    1:30 p.m.<br>Place:   Courtroom 6B<br><br>(Concurrently filed with the Supplemental Declaration of Perry S. Hughes; Evidentiary Objections; and Response to Defendants' Statement of Genuine Disputes) |
|---|---|

LAW OFFICES OF
**COX, CASTLE & NICHOLSON LLP**
LOS ANGELES, CA

081006\16542410v3

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 2:20-CV-08008-FLA (JPRX)

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................1

II. MDR IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON ITS CONTINUING PUBLIC NUISANCE CAUSE OF ACTION ................2

    A. CalGEM's Failure To Describe The Well As "Hazardous" In The Emergency Order Is Irrelevant. ..................................................2

    B. CalGEM Did Not Determine MDR To Be An "Operator" Under Public Resource Code Section 3237. ...............................................3

    C. Deciding The Intent Of Section 3251.5 Is Not Necessary To Conclude That RGC 10 Well Was A Hazardous Well, And Therefore A Nuisance Per Se. .........................................................4

    D. Public Resources Code Sections 3250, 3251 And 3251.5 Plainly Apply To Historic Wells. ...............................................................6

    E. MDR Properly Responded To The Blowout And The Emergency Order. ........................................................................8

    F. MDR Is Pursuing Reimbursement For Its Costs And Expenses Related To Re-Abandoning The Dangerous Well Through Its Causes Of Actions For Public And Private Nuisance, As Well As Trespass. ...................................................................................9

    G. Defendants Mislead The Court Regarding A $10 Million Rent Credit. ..........................................................................................9

III. CONCLUSION ..................................................................................................10

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
LOS ANGELES, CA

081006\16542410v3   -2-

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION FOR SUMMARY ADJUDICATION
CASE NO. 2:20-CV-08008-FLA (JPRX)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beck Development Co. v. Southern Pacific Transportation Co.*,
  44 Cal. App. 4th 1160 (1996) ................................................................. 7, 8

*Wells Fargo Bank v. Goldzband*,
  53 Cal App. 4th 596 (1997) ........................................................................ 7

**Statutes**

Pub. Resources Code § 3208.1 ....................................................................... 5, 6

Pub. Resources Code § 3209 ........................................................................... 3, 4

Pub. Resources Code § 3237 ....................................................................... 3, 4, 10

Pub. Resources Code § 3250 ......................................................................... passim

Pub. Resources Code § 3251 ......................................................................... 2, 3, 4

Pub. Resources Code § 3251.5 ...................................................................... passim

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
LOS ANGELES, CA

081006\16542410v3

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 2:20-CV-08008-FLA (JPRX)

Plaintiff MDR Hotels, LLC ("**MDR**") respectfully submits this Reply to Defendants Marathon Oil Company's and The Dow Company's Opposition ("**Opposition**") to MDR's Motion for Partial Summary Judgment ("**Motion**") concerning the Complaint's Second Cause of Action for continuing public nuisance on the grounds that the subject oil well constitutes a per se nuisance under Public Resources Code Section 3250. ECF No. 54 ("**Complaint**").

## I. INTRODUCTION

MDR's Motion was singularly focused on the issue of whether the hazardous RGC 10 well was a nuisance per se under Public Resources Code section 3250, which expressly declares "hazardous" wells as a nuisance.  Public Resources Code sections 3251 and 3251.5 further clarify that "hazardous" wells are those deemed by the California Department of Conservation Geologic Energy Management Division ("**CalGEM**") to be a threat to life, health, property or natural resources. As established in the Motion, CalGEM issued the Emergency Order (Declaration of Perry Hughes ("**Hughes Decl.**"), Exhibit 28) declaring the well to be just such a threat.  Despite the narrow focus of the Motion, Defendants have tried to muddy the waters by raising numerous irrelevant issues involving MDR's response to the blow out and the Emergency Order (CalGEM's Rule 30(b)(6) witness could not cite any concerns and spoke only positively), whether MDR seeks contribution (other than the existing claims, it does not) and whether MDR received a rent credit to pay for the necessary abandonment (it did not).  These issues are merely a distraction.  The Court need only consider the actual issue presented by the Motion—whether the well was a public nuisance per se.  MDR submits that the California Legislature had wells like the RGC 10 well in mind when it crafted Article 4.2 of the Public Resources Code given that the dangerous well, improperly installed and abandoned years ago by Defendants, presented a threat to all of the things the Legislature crafted Article 4.2 to protect—life, health, property or natural resources.

LAW OFFICES OF
**COX, CASTLE & NICHOLSON LLP**
LOS ANGELES, CA

081006\16542410v3      -1-      PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 2:20-CV-08008-FLA (JPRX)

## II. MDR IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON ITS CONTINUING PUBLIC NUISANCE CAUSE OF ACTION

### A. CalGEM's Failure To Describe The Well As "Hazardous" In The Emergency Order Is Irrelevant.

Defendants contend that the RGC 10 oil well should not be considered a nuisance per se because CalGEM failed to include the word "hazardous" in the Emergency Order. This argument belies common sense. "Hazardous" is not a magic word that must be used by CalGEM before there can be a finding by this Court of a public nuisance per se; a per se nuisance in this sense is merely the presence of a dangerous well. CalGEM's findings irrefutably support that conclusion here.

CalGEM specifically stated that the well, or a release from the well, "threatens damage to life, health, property and natural resources." The language of this finding is of great significance. It is used throughout the Public Resource Code. It is also the basis for CalGEM's authority to take action to respond to a hazardous or dangerous situation like the one at issue here. The Emergency Order cites to no less than four sections of the Public Resources Code—Sections 3106, 3208, 3224, and 3226—containing some reference to protecting "life, health, property or natural resources." Specifically, the Emergency Order cites Section 3226 to provide the underlying basis of the Order, stating that "if the Supervisor determines that an emergency exists, the Supervisor may order or undertake the actions he or she deems necessary to protect life, health, property or natural resources." Nothing in the Public Resource Code requires—or even suggests—that CalGEM must make a separate and distinct finding that the well is also "hazardous." Instead, a determination that the well is also "hazardous" is presumed if the Supervisor finds that there is a threat to life, health, property or natural resources. *See* Pub. Resources Code §§ 3251 & 3251.5.

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
LOS ANGELES, CA

081006\16542410v3

-2-

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION FOR SUMMARY ADJUDICATION
CASE NO. 2:20-CV-08008-FLA (JPRX)

However, because the Legislature has declared that hazardous oil wells are a public nuisance as a matter of law as codified in Public Resources Code Section 3250, if the well is "hazardous" is relevant for the Court's determination of whether there is a public nuisance per se. Public Resources Code Section 3251, subdivision (d) defines a "hazardous well" to be "an oil and gas well <u>determined by the supervisor to be a potential danger to life, health, or natural resources</u> and for which there is no operator determined by the supervisor to be responsible for its plugging and abandonment under Section 3237." (Emphasis added.) There is no question that in both the Emergency Order and Amended Order, the Supervisor concluded that the well was a danger to life, property, health, and natural resources. Accordingly, the first prong of the definition of what constitutes a "hazardous" well for purposes of Public Resources Code Sections 3251 and 3251.5 is satisfied.

### B. CalGEM Did Not Determine MDR To Be An "Operator" Under Public Resource Code Section 3237.

The second prong of the definition of a "hazardous" well under Section 3251 is that no "operator" has been determined by the Supervisor under Section 3237 to be responsible for the well's plugging and abandonment. CalGEM never claimed or determined that MDR was an "operator" under Section 3237.[1] Section 3237 speaks specifically of "operators" of **deserted** wells and defines which "operators" may be subject to an order from the Supervisor to abandon the deserted well. Further it requires that the Supervisor make a finding that the well has been deserted using "credible evidence." Pub. Resources Code § 3237(a)(1). CalGEM made no such finding with respect to the RGC 10 well. Section 3237 was not applicable in this matter and was not cited by CalGEM as the basis for either considering MDR an "operator" or ordering the abandonment of the well.

---

[1] CalGEM considered MDR to be an "operator" under a different code section, Section 3209, because it had entered into a ground lease with the County of Los Angeles and undertook the abandonment of the well as part of its development. But that is irrelevant to the analysis of whether the well itself was hazardous and, therefore, a public nuisance, based on the definition in Section 3251.

LAW OFFICES OF
COX, CASTLE & NICHOLSON LLP
LOS ANGELES, CA

081006\16542410v3                    -3-

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION FOR SUMMARY ADJUDICATION
CASE NO. 2:20-CV-08008-FLA (JPRX)

When defining a "hazardous" well, Public Resources Code Section 3251 speaks only to operators under Section 3237, a narrow class of operators. If the legislature intended for Section 3251 to include any and all "operators", it would have referenced the broader definition of "operator" found in Section 3209. It does not. Accordingly, both prongs of the definition for a "hazardous well" found in Section 3251 are met for purposes of determining that the RGC 10 well is a nuisance per se under Section 3250.

### C. Deciding The Intent Of Section 3251.5 Is Not Necessary To Conclude That RGC 10 Well Was A Hazardous Well, And Therefore A Nuisance Per Se.

As discussed above, the RGC 10 well meets the definition of a "hazardous well" under Section 3251 as CalGEM determined the well was a danger to life, health, property and natural resources and CalGEM did not identify a responsible "operator" under Section 3237. Additionally, MDR submits that the RGC 10 well qualifies as a "hazardous well" under Section 3251.5.

As noted in the Motion, Section 3251.5 supplements Section 3251 to state that

> "Notwithstanding Section 3251, a well shall be deemed a hazardous well if it has been determined by the supervisor to pose a present danger to life, health, or natural resources and has been abandoned in accordance with the requirements of the division in effect at the time of the abandonment 15 or more years before the date of the supervisor's determination that it poses such a danger."

Pub. Resources Code, § 3251.5, subd. (a).

MDR contends that that the phrase "in accordance" means only that the prior abandonment was potentially governed by an older set of statutes and regulations

LAW OFFICES OF COX, CASTLE & NICHOLSON LLP
LOS ANGELES, CA

081006\16542410v3    -4-    PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY ADJUDICATION
CASE NO. 2:20-CV-08008-FLA (JPRX)

and does not require a showing of "compliance" or "conformity" to the controlling standards.[2] Certainly, it makes no sense to <u>exclude</u> those wells that did not comply with statutes in regulations when defining a "hazardous" well. Nor would it make sense to require CalGEM to make a showing that a prior abandonment was done in "compliance" with prior requirements before being allowed to deem a well "hazardous" and to act accordingly.

Defendants have offered no logical explanation for non-complying wells to be excluded from the definition of "hazardous" other than to note the interplay of Sections 3208.1 and 3250. But Defendants' reference to Section 3208.1 only highlights the vagueness of the language in Section 3251. While Section 3208.1 was originally crafted with the word "accordance," as noted by Defendants in Footnote 12 of their Opposition, it was amended and changed to replace "in accordance" with the phrase "in conformity." As such, the concept of an abandonment done in "accordance" with statutory requirements is no longer present in Section 3208.1. Section 3208.1 now specifies that the abandonment must be done in "conformity." *See* Pub. Resources Code § 3208.1. If the Legislature believed that "accordance" and "conformity" were equal in meaning, there would have been no reason for an amendment to change the language.

Moreover, Section 3208.1(d) specifically excludes those instances where the well is abandoned in "conformity" with older requirements (Section 3208.1(b)(1-3)) from the application of Article 4.2, specifically identifying Section 3250. This further exemplifies the distinction between abandonments done in "conformity" with requirements, as opposed to merely in "accordance" with requirements. If the

---

[2] As noted in both the Motion and in Defendants' Opposition, MDR contends that the installation, operation and maintenance of the RGC 10 well was ***not*** done in conformance with the standards set forth in the Public Resources Code at the applicable time. *See* the Executive Summary of the expert opinion of Jeff Jordan, attached as Ex. 22 to the Declaration of Michael Hale, and Ex. 32 of the Supplemental Declaration of Perry Hughes ("**Suppl. Hughes Decl.**").

LAW OFFICES OF COX, CASTLE & NICHOLSON LLP LOS ANGELES, CA

081006\16542410v3                    -5-                    PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY ADJUDICATION CASE NO. 2:20-CV-08008-FLA (JPRX)

Legislature meant for the terms to be equal, it would have amended Section 3251.5 at the same time it revised Section 3208.1 to include "conformity."

If the Court concludes that Section 3251.5 does not require a showing of conformity with prior statutes to determine that a well is hazardous under Section 3250, MDR submits that the RGC 10 well also meets the definition of a "hazardous" well under Section 3251.5 as it was abandoned over fifteen years ago.

### D. Public Resources Code Sections 3250, 3251 And 3251.5 Plainly Apply To Historic Wells.

Defendants claim that finding that a "hazardous" well is a nuisance per se is improper, asserting that the controlling sections of the Public Resources Code were not meant to be applied retroactively. However, it is obvious from the reading of the applicable code sections that the Legislature intended to afford CalGEM the power and responsibility to order the abandonment of hazardous wells under Articles 4 and 4.2 in order to eliminate the risk of hazardous wells and promote public safety. Section 3208.1 provides CalGEM with the authority to order an operator to abandon or re-abandon a well if "the supervisor or the district deputy has reason to question the integrity of the previous abandonment" in order to prevent "damage to life, health and property." The only logical reading of this statute is that it applies to all oil and gas wells irrespective of when they were installed or abandoned.

As discussed above, Section 3251.5 specifically discusses wells that have been abandoned more than fifteen years in the past. If it was not applicable to wells abandoned prior to the enactment of Section 3251.5, the statute essentially would have been moot for the fifteen years following its enactment. Further, the language in Section 3251.5 recognizes that the prior abandonment may have been done in "accordance" with past requirements. Putting aside the issue of the meaning of "in accordance," implicit in this language is the intent to identify "hazardous" wells as a "nuisance"—irrespective of timing or quality of the past abandonment efforts.

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
LOS ANGELES, CA

081006\16542410v3                 -6-                 PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION FOR SUMMARY ADJUDICATION
CASE NO. 2:20-CV-08008-FLA (JPRX)

In *Wells Fargo Bank v. Goldzband*, 53 Cal App. 4th 596 (1997), which was discussed in the Motion, the Court of Appeal confirmed CalGEM's right to order a party to re-abandon a well installed in 1946 and left idle in 1967. *Id.* at 602. Other wells at issue in *Wells Fargo* were left idle after the implementation of Article 4.2 in 1976. The Court of Appeal did not make any distinction between the wells or limit the enforcement to only those wells taken out of service after 1976. Notably, the court in *Wells Fargo* also opined that the entity that used the well and profited from the well's operations should be responsible for the cost of properly abandoning the well, stating, "[T]he entire statutory scheme of [A]rticles 4 and 4.2 indicates an intent on the part of the Legislature to hold those who benefit from the operation of a well responsible for abating any nuisance it creates." *Id.* at 623.

Defendants lean on the holding in *Beck Development Co. v. Southern Pacific Transportation Co.*, 44 Cal. App. 4th 1160 (1996). However, the holding in *Beck* is not controlling in this matter because it focuses on an analysis of historic actions that is not required in this matter. In *Beck*, the court distinguished a situation where the mere existence of a condition is a nuisance—as is present in this matter—with a situation where the analysis of a nuisance per se requires an "additional factual inquiry." *Id.* at 1208. In the matter before the court in *Beck*, the court concluded that under the Porter-Cologne Water Quality Control Act ("**Water Act**"), the determination of a nuisance per se required an analysis of whether the contamination occurred as a "result of the treatment or disposal of wastes." *Id.* Accordingly, it determined that it was not appropriate to examine past actions in comparison to requirements that came after the activity.

MDR does not make such a request on this Court. MDR seeks only a finding on the limited issue that the existence of the hazardous well is a nuisance per se. As set forth in the Motion, MDR acknowledges that a determination of liability, based on the Defendants' historic actions and inactions, will be made at trial. At trial,

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
LOS ANGELES, CA

081006\16542410v3 -7-

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION FOR SUMMARY ADJUDICATION
CASE NO. 2:20-CV-08008-FLA (JPRX)

MDR intends to show that the Defendants' actions did not satisfy the legal requirements of the Public Resource Code in place at the time of the installation, operation, and abandonment of the RGC 10 well. But that is not before the Court in this Motion; only the issue of whether the well was a nuisance per se at the time MDR performed the abandonment is before the Court.

Unlike the definition of a "nuisance" in the Water Act that was at issue in *Beck*, a nuisance under Article 4.2 is defined simply by a determination that it is a threat to life, property and natural resources. As set forth above, that criteria has been met, and the RGC 10 well should be considered a public nuisance per se under Section 3250.

### E. MDR Properly Responded To The Blowout And The Emergency Order.

While <u>not relevant</u> to the issue of whether the RGC 10 well was a nuisance per se, Defendants assert that the Emergency Order was in response to actions or inactions of MDR. In fact, the person most knowledgeable from CalGEM on the topics of the well blow out and the Emergency Order, Chris Phillips, could not cite a single concern about the manner in which MDR responded to the well or the blow out. *See* Deposition of Chris Phillips, at 285:11-288:11, attached to the Suppl. Hughes Declaration as Exhibit 30. When asked about the level of communication between MDR and CalGEM during the well abandonment, Mr. Phillips stated that MDR and its consultant "did a really good job" and that MDR's consultant, Interact, "was in good communication" with CalGEM's project manager, Callie Calum. *Id.* at 287:11-15. When asked about MDR's efforts regarding controlling the well, and establishing "24/7" well control, he testified, "they got right on it, immediately initiated 24/7 well control operations." *Id.* at 320:9-17. Mr. Phillips' testimony regarding MDR's handling of the well-abandonment is consistent with the findings and statements in the Amended Emergency Order signed by the State Oil and Gas Supervisor. But, again, this Court does not need to determine whether

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
LOS ANGELES, CA

081006\16542410v3

-8-

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION FOR SUMMARY ADJUDICATION
CASE NO. 2:20-CV-08008-FLA (JPRX)

1  MDR acted responsibly or appropriately in response to the dangerous conditions
2  surrounding the RGC 10 well (although it did). The Court only need to consider
3  whether the well was "hazardous" according to Section 3250 and, therefore, a
4  nuisance per se.

      **F.    MDR Is Pursuing Reimbursement For Its Costs And Expenses Related To Re-Abandoning The Dangerous Well Through Its Causes Of Actions For Public And Private Nuisance, As Well As Trespass.**

8        Defendants imply that MDR now seeks to amend its complaint to add a
9  formal cause of action for "contribution." MDR has made no such request, nor
10  does it intend to. Instead, MDR has properly set forth its claims for damages in its
11  claims for nuisance, both public and private, and trespass. The existing claims
12  afford MDR the right to recover damages related to the well if the Court ultimately
13  concludes that the Defendants are liable for the alleged nuisance and trespass.
14  However, that determination of liability is not the subject of MDR's Motion. The
15  sole issue is whether the well was a nuisance per se.

      **G.    Defendants Mislead The Court Regarding A $10 Million Rent Credit.**

18        In what seems to be an effort to mislead or prejudice the Court, the
19  Defendants made an unfounded assertion in their Opposition that MDR received a
20  $10 million credit related to the oil well and its abandonment. Notably, Defendants
21  cite no evidence in making the statement. Nor is it relevant to the Court's decision
22  here. More troubling is that Defendants are well aware that whatever rent credit
23  MDR received from the County was unrelated to the oil well.
24        In 2008, when MDR was awarded the project of developing the hotel
25  property in Marina Del Rey, the proposed project was for a high-rise project on a
26  larger tract of land. In the years that followed, the amount of land to be developed
27  into the hotel project was reduced significantly, and the land previously dedicated
28

LAW OFFICES OF COX, CASTLE & NICHOLSON LLP LOS ANGELES, CA

081006\16542410v3 -9- PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR SUMMARY ADJUDICATION CASE NO. 2:20-CV-08008-FLA (JPRX)

for the above ground parking garage was dedicated as wetlands. Not surprisingly, the parties negotiated a rent reduction to occur over ten years to account for a smaller development on the smaller tract of land and the additional costs associated with MDR's need to completely change the proposed development to include a smaller subterranean parking garage, and the civil engineering challenges associated with constructing such a garage below sea level immediately adjacent to the sea. MDR sought over $13 million in rent reduction. In that calculation, MDR did include $120,000 for potential oil well abandonment. *See* Deposition of William Pangelinan, at 112:1-113:16 and 158:3-160:21, attached as Exhibit 31 to the Suppl. Hughes Decl. However, the County refused to provide any credit or rent reduction related to the oil well or any potential environmental condition related to the property. Mr. Pangelinan testified that the County specifically excluded any reimbursements related to the oil well or impacted soil from the rent credits, and did not reimburse MDR for such items. *Id.* at 158:3-160:21. Accordingly, there is no basis for the Defendants' claim that MDR has already received "contribution" from the County of Los Angeles for the oil well abandonment.

Much like other issues raised by the Defendants, this issue is a red herring, designed to distract the Court from the matter raised by MDR's Motion, which focuses only on whether the well is a nuisance per se.

## III. CONCLUSION

Though Defendants make various attempts to broaden the issues presented by MDR's Motion, the focus of the Motion is singular and simple–was the dangerous oil well known as RGC 10 a nuisance per se? Applying the definitions contained in Public Resources Code Sections 3250, 3251, and 3251.5, the RGC 10 well meets the definition of a "hazardous" well given that CalGEM concluded that it posed a danger to life, health or natural resources. Further, CalGEM did not identify any responsible "operator" under Section 3237. MDR also submits that the well

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
LOS ANGELES, CA

081006\16542410v3

-10-

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION FOR SUMMARY ADJUDICATION
CASE NO. 2:20-CV-08008-FLA (JPRX)

qualifies as a "hazardous" well under Section 3251.5 as it was abandoned more than fifteen years ago. But the Court does not need to decide the issue of the meaning of "in accordance with" as the well also qualifies as "hazardous" under Section 3251. Lastly, there should be little question that the California Legislature drafted Articles 4 and 4.2 with the intent to authorize CalGEM to address the risk associated with old and dangerous wells, irrespective of age. But in this matter, the Court is not required to apply the statutes retroactively. It merely is a question as to whether, at the time of MDR's re-abandonment in 2018 and 2019, the RGC 10 well was a nuisance per se. There is no need to analyze the past actions of the Defendants or to apply newer requirements to their historic actions. An analysis of Defendants' liability for the nuisance remains for trial. The question presently before the Court is simply whether the RGC 10 well was a nuisance per se given its risk to life, health and natural resources. It was.

DATED: March 10, 2023

COX, CASTLE & NICHOLSON LLP

By: _____
Perry S. Hughes
Alicia N. Vaz
Kevin M. Hannifan
Attorneys for Plaintiff
MDR Hotels, LLC

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
LOS ANGELES, CA

081006\16542410v3

-11-

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION FOR SUMMARY ADJUDICATION
CASE NO. 2:20-CV-08008-FLA (JPRX)