1

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
Patrick J. Foley (Bar No. 180391)
  E-Mail:  Patrick.Foley@lewisbrisbois.com
633 West Fifth Street, Suite 4000
Los Angeles, CA  90071
Tel:  213.250.1800  // Fax:  213.250.7900

2

3

4

**PHILLIPS LYTLE LLP**
Joel Blanchet (*Pro Hac Vice*)
  E-Mail:  jblanchet@phillipslytle.com
Tristan D. Hujer (*Pro Hac Vice*)
  E-Mail:  thujer@phillipslytle.com
Myles K. Bartley (*Pro Hac Vice*)
  E-Mail:  mbartley@phillipslytle.com
One Canalside
125 Main Street
Buffalo, NY  14203-288
Tel:  716.847-7050 // Fax:  (716) 852-6100

5

6

7

8

9

10

Attorneys for Defendant The Dow Chemical Company

11

[Additional Counsel Listed on Next Page]

12

13

## UNITED STATES DISTRICT COURT

14

## CENTRAL DISTRICT OF CALIFORNIA

15

## WESTERN DIVISION

16

17

MDR HOTELS, LLC, a Delaware limited liability company,

18

Plaintiff,

19

vs.

20

MARATHON OIL COMPANY, an Ohio corporation; THE DOW CHEMICAL COMPANY, a Delaware corporation, and DOES 1 through 50, inclusive,

21

22

23

Defendants.

24

25

26

27

28

Case No. 2:20-CV-08008-FLA-JPR

Honorable Fernando L. Aenlle-Rocha

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

[*Filed Concurrently with Notice of Motion; Statement of Uncontroverted Facts and Conclusions of Law; Declaration of Tristan D. Hujer with Exhibits; Appendix of Evidence; and* [*Proposed*] *Order*]

Hearing:
Date:       April 14, 2023
Time:       1:30 p.m.
Location:   Courtroom 6B

Trial Date:   None Set

/ / /

1   LATHAM & WATKINS LLP
    Mary Rose Alexander (Bar No. 143899)
2   *mary.rose.alexander@lw.com*
    330 North Wabash Avenue, Suite 2800
3   Chicago, IL 60611
    Tel:  312.876.7700
4   Fax:  312.993.9767

5   Shannon D. Lankenau (Bar No. 294263)
    *shannon.lankenau@lw.com*
6   505 Montgomery Street, Suite 2000
    San Francisco, CA 94111
7   Tel:  415.391.0600
    Fax:  415.395.8095
8
    Michael A. Hale (Bar No. 319056)
9   *michael.hale@lw.com*
    355 South Grand Avenue, Suite 100
10  Los Angeles, CA 90071
    Tel:  213.485.1234
11  Fax:  213.891.8763

12  *Attorneys for Defendant Marathon Oil Company*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION.................................................................................1

II.    FACTUAL BACKGROUND ...........................................................3

    A.    Marathon's, Dow's, and the County's Actions Complied
        with the Law .................................................................................3

        1.    Marathon Drilled, Operated, and Partially Abandoned
             the Well.............................................................................3

        2.    Dow Modified, Operated, and Abandoned the Well ................4

        3.    LA County Reabandoned the Well With DOGGR
             Approval ...........................................................................5

        4.    The Historical Facts Are Fully Set Forth in Public
             Records .............................................................................5

    B.    MDR's Knowledge of the Property and the Well, and Its
        Failure to Adequately Address The Well During
        Construction, Caused MDR's Supposed Harm .................................6

        1.    MDR Leased the Property "As Is" Despite Known
             Conditions, And Received a $10 Million Rent Credit
             to Address Any Problems There........................................6

        2.    MDR Ignored the Property's Known Conditions And
             Proceeded With Its Development Plans .............................7

             a.    MDR Failed to Properly Plan to Reabandon
                 The Well ..................................................................7

             b.    MDR's Incomplete Reabandonment Did Not
                 Comply with Applicable Regulations, and the
                 Well Remains Unsafe and at an Elevated Risk
                 for Future Gas Releases...........................................8

    C.    MDR Filed This Action Against Marathon and Dow..........................9

    D.    The Court Dismissed MDR's Negligence and Permanent
        Nuisance Claims..........................................................................10

III.    LEGAL STANDARD .......................................................................10

IV.    DISCUSSION ..................................................................................11

    A.    MDR's Remaining Nuisance and Trespass Claims Are
        Untimely.....................................................................................11

        1.    The Statute of Repose Precludes MDR's Claims...................11

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

2.  MDR's Well Claims Are Barred By The Statute of Limitation Because The Alleged Nuisance Is Permanent ....................................................................... 14

a.  MDR Must Provide *Evidence* Demonstrating Its Well Claims Are A Continuing Nuisance or Trespass ................................................................ 14

b.  The Undisputed Facts Demonstrate That, If the Well Is a Nuisance or Trespass, It Could Not and Cannot Be Abated At Reasonable Cost By Reasonable Means ........................................ 16

c.  The Well is a Permanent Structure That Cannot Be Removed from the Property or Abated; Any Nuisance and Trespass Claims Are Permanent and Untimely ...................................................... 17

B.  Defendants Are Entitled To Judgment As A Matter of Law on MDR's  Claims Because They Had Consent To Construct, Operate, and Abandon the Well ............................ 19

1.  MDR Cannot Prove Defendants Lacked Consent ................... 19

2.  Defendants' Alleged Actions Were Authorized By Their Leases ........................................................... 20

a.  Marathon's Activities Were Authorized By Its Lease ........................................................... 20

b.  Dow's Activities Were Authorized By Its Lease .......... 21

3.  Defendants' Conduct Was Lawful ..................................... 22

C.  MDR's Nuisance Claims Fail as a Matter of Law .......................... 23

1.  Civil Code Section 3482 Dictates The Well Is Not a Nuisance ........................................................... 23

2.  MDR Caused Any Nuisance .......................................... 25

D.  MDR's Remaining Trespass Claim Fails Because Neither Defendant Caused Any Detrimental Substance to Enter the Property ........................................................... 26

E.  Defendants' Quitclaim Deeds Extinguished MDR's Remaining Claims ........................................................... 27

V.  CONCLUSION ........................................................... 28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

91668728.1                                    ii                    Case No. 2:20-CV-08008-FLA-JPR
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Agendia, Inc. v. Azar,*
420 F. Supp. 3d 985.............................................................10, 11

*Alamitos Land Co. v. Shell Oil Co.,*
3 Cal. 2d 396 (1935)...................................................................22

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)....................................................................11

*Ash v. Bank of Am. N.A.,*
No. 2:10-cv-02821, 2014 WL 301027 (E.D. Cal. Jan. 28, 2014) .....................20

*Barnhouse v. City of Pinole,*
133 Cal. App. 3d 171 (1982), *modified on other grounds by Geernaert v. Mitchell,*
31 Cal. App. 4th 601 (1995) ...............................................................12

*Bd. of Tr. of Leland Stanford Junior Univ. v. Agilent Techs., Inc.,*
573 F. Supp. 3d 1371 (N.D. Cal. 2021)...............................................19

*Beck Dev. Co. v. S. Pac. Transp. Co.,*
44 Cal. App. 4th 1160 (1996)...............................14, 15, 20, 25, 26

*Bookout v. State ex rel. Dep't of Transp.,*
186 Cal. App. 4th 1478 (2010), *as modified* (July 28, 2010)...........................18

*Capogeannis v. Superior Ct.,*
12 Cal. App. 4th 668 (1993) ...............................................18, 26, 27

*Carson Harbor Vill., Ltd. v. Unocal Corp.,*
270 F.3d 863 (9th Cir. 2001) ............................................................24

*Castaic Lake Water Agency v. Whittaker Corp.,*
272 F. Supp. 2d 1053 (C.D. Cal. 2003).......................................15, 16

*Castelletto v. Bendon,*
193 Cal. App. 2d 64 (1961) ..............................................................18

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)), *rev'd sub nom. Agendia, Inc. v. Becerra*, 4 F.4th 896 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 898 (2022) ...........................................10, 11

*Chevron U.S.A. Inc. v. Superior Ct.*,
44 Cal. App. 4th 1009 (1994) ...................................................................12, 14

*Cnty. of Santa Clara v. Atl. Richfield Co.*,
137 Cal. App. 4th 292 (2006) ...................................................................19, 20

*Emeryville Redevelopment Agency v. Eltex Inv. Corp.*,
No. C 04-02737, 2004 WL 2359862 (N.D. Cal. Oct. 19, 2004) .......................20

*Farmers Ins. Exch. v. State*,
175 Cal. App. 3d 494 (1985) ...........................................................................25

*Field-Escandon v. Demann*,
204 Cal. App. 3d 228 (1988), *modified* (Sept. 27, 1988), *modified* (Sept. 29, 1988)
.....................................................................................................................18

*Gaggero v. Cnty. of San Diego*,
124 Cal. App. 4th 609 (2004) ...................................................................12, 13

*Gehr v. Baker Hughes Oil Field Operations, Inc.*,
165 Cal. App. 4th 660 (2008) ..........................................................................15

*Gitlin v. Howard*,
Nos. A138033, A138034, 2014 WL 6488216 (Cal. Ct. App. Nov. 20, 2014)...13

*Grange Debris Box & Wrecking Co. v. Superior Ct.*,
16 Cal. App. 4th 1349 (1993) ..........................................................................13

*Gucci Shops, Inc. v. Conrad*,
Nos. CIV.A. 86-20558SW, C 86-20560SW, 1987 WL 47298 (N.D. Cal. Dec. 17, 1987) ..............................................................................................................19

*Hinds Invs., L.P. v. Angioli*,
445 F. App'x 917 (9th Cir. 2011)......................................................................19

*Inco Dev. Corp. v. Superior Ct.*,
131 Cal. App. 4th 1014 (2005) .........................................................................11

*Keegan v. Viviani*,
No. G048609, 2015 WL 3633602 (Cal. Ct. App. June 11, 2015).....................15

*Lantzy v. Centex Homes*,
  31 Cal. 4th 363 (2003), *as modified* (Aug. 27, 2003)...........................11, 12, 13

*Liptak v. Diane Apartments, Inc.*,
  109 Cal. App. 3d 762 (1980) ..................................................................12

*Lyles v. State*,
  153 Cal. App. 4th 281 (2007) ................................................................16

*Mangini v. Aerojet-Gen. Corp. (Mangini I)*,
  230 Cal. App. 3d 1125 (1991) .......................................................*passim*

*Mangini v. Aerojet-Gen. Corp. (Mangini II)*,
  12 Cal. 4th 1087 (1996)...............................................................15, 16, 17

*Mattingly v. Anthony Indus., Inc.*,
  109 Cal. App. 3d 506 (1980) ..................................................................12

*McCoy v. Gustafson*,
  180 Cal. App. 4th 56 (2009) ..................................................................15

*MDR Hotels, LLC v. Dow Chem. Co.*,
  No. 2:20-cv-08008, 2021 WL 3519861 (C.D. Cal. Apr. 20, 2021) ..................26

*Ream Holdings, LLC v. 3R Int'l Grp., Inc.*,
  No. 5:17-cv-00825, 2017 WL 8223645 (C.D. Cal. Aug. 17, 2017)..................19

*Renown, Inc. v. Hensel Phelps Constr. Co.*,
  154 Cal. App. 3d 413 (1984) ..................................................................14

*Rev 973 LLC v. Mouren-Laurens*,
  No. CV 98-10690, 2009 WL 1096278 (C.D. Cal. Apr. 22, 2009)..............19, 20

*San Diego Unified Sch. Dist. v. Cnty. of San Diego*,
  170 Cal. App. 4th 288 (2009) ................................................................12

*Schwetz v. Minnerly*,
  220 Cal. App. 3d 296 (1990) ..................................................................12

*Spar v. Pac. Bell*,
  235 Cal. App. 3d 1480 (1991) ................................................................16

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT

*Today's IV, Inc. v. Los Angeles Cnty. Metro. Transp. Auth.*,
   83 Cal. App. 5th 1137 (2022), *reh'g denied* (Oct. 25, 2022), *review denied* (Jan.
   18, 2023) ............................................................................................................23, 24

*Tomko Woll Grp. Architects, Inc. v. Superior Ct.*,
   46 Cal. App. 4th 1326 (1996) ...........................................................................12

*Est. of Tucker ex rel. Tucker v. Interscope Recs., Inc.*,
   515 F.3d 1019 (9th Cir. 2008) ...........................................................................11

*Tzung v. State Farm Fire & Cas. Co.*,
   873 F.2d 1338 (9th Cir. 1989) ...........................................................................14

*Wagner v. State*,
   86 Cal. App. 3d 922 (1978) ...............................................................................12

*Wells Fargo Bank, N.A. v. Renz*,
   795 F. Supp. 2d 898 (N.D. Cal. 2011) ..............................................................19

*Wheeler v. Gregg*,
   90 Cal. App. 2d 348 (1949) ...............................................................................24

*Wicker v. Walmart, Inc.*,
   533 F. Supp. 3d 944 (C.D. Cal. 2021) ...............................................................19

*Williams v. Moulton Niguel Water Dist.*,
   22 Cal. App. 5th 1198 (2018), *as modified* (May 18, 2018) .............................24

## STATUTES

Cal. Civ. Code
   § 3482 (Westlaw through Ch. 1 2023 Reg. Sess.)....................................2, 23, 24
   § 8050(a)(1) (Westlaw through Ch. 1 2023 Reg. Sess.)....................................12

Cal. Civ. Prac. Enviro. Lit. § 2:7 (Westlaw updated Oct. 2022)............................26

Cal. Civ. Proc. Code
   § 337.1(a) (Westlaw through Ch. 1 2023 Reg. Sess.) ................................11, 14
   § 337.15(a) (Westlaw through Ch. 1 2023 Reg. Sess.) ................................1, 11
   § 337.15(b) (Westlaw through Ch. 1 2023 Reg. Sess.)....................................14
   § 337.15(g)(4) (Westlaw through Ch. 1 2023 Reg. Sess.) ..............................13
   § 338(b) (Westlaw through Ch. 1 2023 Reg. Sess.)..........................................14

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

91668728.1                                           vi                    Case No. 2:20-CV-08008-FLA-JPR
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT

Cal. Pub. Res. Code
§ 3 (1929)................................................................................22
§ 16 (1929)..............................................................................22
§ 42 (1929)..............................................................................24
§ 53 (1915)..............................................................................24
§ 3004 (Westlaw through Ch. 1 2023 Reg. Sess.)....................22
§ 3013 (Westlaw through Ch. 1 2023 Reg. Sess.)....................24
§ 3106(b) (Westlaw through Ch. 1 2023 Reg. Sess.)................22
§ 3208 ......................................................................................8
§ 3220 (1939)...........................................................................22
§ 3228 ......................................................................................8
§ 3228 (1939)...........................................................................22
§ 3300 ......................................................................................22

## RULES

Fed. R. Civ. P. 56(a) ....................................................................10

## TREATISES

11 Miller Starr Regalia, Miller & Starr California Real Estate, Trespass § 39.70 (4th
ed. Westlaw through Dec. 2022 update) ...........................................26

Restatement (Second) of Torts § 158 Comment i (1965) (Westlaw through Mar. 2023
update) .............................................................................26

## REGULATIONS

California Code of Regulations, Title 14
§ 1723(a)..................................................................................8
§ 1723.1(b)...........................................................................8, 10

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT

## I.    INTRODUCTION

Plaintiff MDR Hotels, LLC ("MDR") undertook a hotel-construction project on a site in Marina Del Rey, California (the "Property") with a known 1930's oil well (the "Well").   MDR *itself* caused uncontrolled methane gas releases from the Well after failing to take proper safety and planning measures.  Now, MDR hopes to use this Court to shift its costs onto Defendants Marathon Oil Company ("Marathon") and The Dow Chemical Company ("Dow")—which have not had any ownership, control, or involvement with the Well or the Property for at least 60 years.

This Court previously dismissed as untimely MDR's claims of negligence and permanent nuisance.  The undisputed facts demonstrate Defendants are entitled to summary judgment on the remainder of MDR's continuing nuisance and trespass claims for multiple independently sufficient reasons.

*First*, California's statute of repose bars MDR from recovering damages because (i) its nuisance and trespass claims arise out of alleged defects in the construction and abandonment of the Well, and (ii) the time to assert claims is long past.  *See* Cal. Civ. Proc. Code § 337.15(a) (Westlaw through Ch. 1 2023 Reg. Sess.).

*Second*, MDR's Well-related claims can be characterized only as *permanent*— not *continuing*—nuisance and trespass.  Because the Well cannot be abated through reasonable means, the Court must dismiss these claims as untimely pursuant to its Order on Defendants' motion to dismiss.  *See* ECF No. 54 at 8-9.

*Third*, MDR's nuisance and trespass claims fail because MDR cannot establish Defendants lacked consent to engage in their activities, which is a prima facie element of both claims.  It is indisputable Defendants' actions were authorized expressly by their lease agreements for the Property.  Moreover, the regulator responsible for enforcing California's oil and gas statutes witnessed and approved Defendants' activities.  MDR therefore cannot carry its burden to prove Defendants acted without consent, and Defendants are entitled to judgment as a matter of law on all claims.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

91668728.1                                          1                          Case No. 2:20-CV-08008-FLA-JPR
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT

1   **Fourth**, MDR's nuisance claims also fail because "[n]othing which is done or
2   maintained under the express authority of a statute can be deemed a nuisance."  Cal.
3   Civ. Code § 3482. (Westlaw through Ch. 1 2023 Reg. Sess.)  California courts broadly
4   interpret the term "statute" to include express government approvals issued pursuant to
5   statutory authority.  Defendants' actions in constructing, operating, and abandoning the
6   Well were taken with the relevant agency's express authorization and approval.
7   Because Defendants' conduct was expressly authorized by the statutes in effect at the
8   time, as interpreted and applied by the regulator, Defendants are entitled to judgment as
9   a matter of law on MDR's nuisance claims.

10   **Fifth**, if the Well is a nuisance (which Defendants deny), MDR created that
11   nuisance.  The Well posed no danger to the public or MDR until MDR's faulty work
12   caused problems at the site.  Indeed, MDR admits there is no record of methane leakage
13   from the Well between 1959 and 2017 when its construction began.

14   **Sixth**, MDR's trespass claim fails because neither Defendant caused any
15   detrimental substance to enter the Property.  Any purported trespassing oil and gas
16   already existed on the Property at the time of Defendants' possession.  And MDR offers
17   no support for its proposition that allowing oil and gas to migrate within a single
18   property constitutes a trespass.

19   **Finally**, MDR's nuisance and trespass claims cannot proceed because
20   Defendants transferred the Property via quitclaim deeds, thereby extinguishing their
21   obligations related to the Property and the Well.  The unrebutted facts confirm a lessee's
22   surrender of an oil and gas lease by quitclaim deed releases the executing lessee from
23   any further involvement in or responsibility for the condition of a property.  MDR, itself
24   a lessee, inherited no rights under the oil and gas leases Defendants previously
25   surrendered.

26   Defendants respectfully request the Court grant summary judgment in their favor.
27   / / /
28   / / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

## II.    FACTUAL BACKGROUND

The undisputed facts material to this motion—dating back to the 1920s—are as follows:

### A.    Marathon's, Dow's, and the County's Actions Complied with the Law

#### 1.    Marathon Drilled, Operated, and Partially Abandoned the Well

In 1929, Recreation Gun Club ("RGC") executed a lease with A.A. Curtice authorizing "the sole and exclusive right to the [l]essee to explore, mine and operate, take, store, remove and dispose of oil, gas, . . . and other hydrocarbon substances" on the Property. SSUF 1. The following year, A.A. Curtice assigned the lease, including all rights, title, and interest of the original lessee, to Marathon's predecessor, Ohio Oil Company.[1] SSUF 2. In 1931, Marathon notified the California Department of Natural Resources Division of Oil and Gas ("DOGGR"),[2] the state regulator that oversees and enforces California oil and gas statutes and activities, of its intention to drill the Well. SSUF 5, 7. DOGGR approved Marathon's proposal and Marathon drilled the Well accordingly. SSUF 9, 10.

On November 12, 1940, Marathon notified and received approval from DOGGR to abandon the Well. SSUF 15. On January 3, 1941, Marathon confirmed it had plugged[3] the oil-producing zone[4] at approximately 3,400 feet below ground surface ("bgs") and partially abandoned[5] the Well, as "witnessed by R.S.M.B." SSUF 16. Marathon also advised that Dow would take control of the Well to develop saltwater production. SSUF 17. On January 9, 1941, DOGGR approved Marathon's plugging of the Well's oil-producing zone. SSUF 18.

---

[1] The Ohio Oil Company later changed its corporate name to Marathon Oil Company. SSUF 3. This brief will refer only to "Marathon" to avoid confusion.
[2] The California Department of Natural Resources Division of Oil and Gas later became DOGGR, which then became the California Geologic Energy Management Division. The entities are one and the same and will be referred to as DOGGR. SSUF 6.
[3] A well is "plugged" by setting mechanical or cement barriers in the wellbore at specific intervals to prevent fluid flow. During the 1940s, a well was plugged by pumping cement into the wellbore above the oil producing zone.
[4] An "oil-producing zone" is typically the depth of the well where oil is found and is commercially extracted.
[5] A well that has been plugged and is out of service is considered "abandoned."

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Marathon then conveyed, deeded, and terminated its interests in and obligations to the Property by three conveyances. First, on July 10, 1941, Marathon executed a "Partial Release" to A.A. Curtice that "cancelled, surrendered, annulled, and held for naught" its lease assignment for the Property, including the Well and the surrounding land. SSUF 22. Second, on the same day, Marathon conveyed and deeded back to RGC its interest in certain portions of the Property, including the Well and the land surrounding it via a recorded quitclaim deed. SSUF 23. Marathon's quitclaim deed conveyed the Property to RGC "as is" with no covenant, representation, or warranty as to the Property's condition SSUF 24. RGC took Marathon's interest in the Property as so conveyed. SSUF 25. Third, on November 24, 1958, Marathon conveyed and deeded to the County of Los Angeles ("County") whatever remaining interest it had in the Property via a recorded quitclaim deed. SSUF 26. That quitclaim deed, like the 1941 quitclaim deed, conveyed the Property "as is" with no covenant, representation, or warranty as to the condition of the Property. SSUF 27. The County took Marathon's interest in the Property as so conveyed. SSUF 28.

### 2. Dow Modified, Operated, and Abandoned the Well

On or about July 15, 1941, Dow entered into a lease with RGC and acquired the rights to the Well to produce iodine from saltwater. SSUF 29. On November 24, 1941, Marathon transferred its Well rights to Dow so Dow could modify the Well for brine extraction and iodine production—a process that included perforating the Well's casing above the plugged oil-producing zone to make accessible the area with saltwater. SSUF 33. Dow notified DOGGR of its plan to perforate the Well, DOGGR approved the plan, and Dow subsequently completed the perforations. SSUF 34.

In 1956, Dow plugged and abandoned the Well, again following DOGGR's approval. SSUF 35. During the Well's abandonment, on March 12, 1956, the Well blew out, resulting in gas, saltwater, and sand blowing-out to the surface. SSUF 36. The blowout eventually "bridged off" (*i.e.*, stopped-up or plugged-up the wellbore), and the abandonment operations continued. SSUF 37. Dow notified DOGGR of the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

91668728.1                                    4                     Case No. 2:20-CV-08008-FLA-JPR
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT

blowout, and DOGGR observed and approved of Dow's actions to address it. SSUF 38. Upon Dow's completion of the Well reabandonment, DOGGR concluded Dow's actions "fulfilled" the "requirements of this Division." SSUF 39. In 1961, Dow quitclaimed its interest in the Well and the Property to the County, the then-owner. SSUF 44. Dow's lease provided it may quitclaim the lease in its entirety and, once quitclaimed, Dow "shall be released from all further obligations[.]" SSUF 32. By filing its quitclaim deed, Dow availed itself of this right granted to it under its lease. SSUF 45, 46, 47.

### 3. LA County Reabandoned the Well With DOGGR Approval

On December 1, 1958, RGC conveyed the Property to the County such that the County owned the Property and all related rights, title, and interest therein, including the Well. SSUF 52. On December 4, 1958, Dow transferred ownership of the Well to the County. SSUF 53. The County filed a Notice of Intention to Abandon Well with DOGGR, which the agency approved on January 2, 1959. SSUF 54. On April 7, 1959, the County reabandoned the Well. SSUF 55. DOGGR witnessed and approved the County's reabandonment, finding the County fulfilled DOGGR's requirements at that time. SSUF 56. The County has owned the Property since 1958. SSUF 58.

### 4. The Historical Facts Are Fully Set Forth in Public Records

The publicly available Well file fully describes the Well's history. SSUF 59. The file details Marathon's, Dow's, and the County's Well-related actions, DOGGR's approvals and observations of those actions, and the Well's condition and status from its inception until its final reabandonment by the County in 1959. SSUF 60. Notably, the Well did not blow out and there were no reports of issues of structural integrity after the County reabandoned it in 1959 and before MDR began its work more than 50 years later. SSUF 61.

/ / /

/ / /

/ / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

91668728.1                                    5                    Case No. 2:20-CV-08008-FLA-JPR
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**B.    MDR's Knowledge of the Property and the Well, and Its Failure to Adequately Address The Well During Construction Caused MDR's Supposed Harm**

**1.    MDR Leased the Property "As Is" Despite Known Conditions, And Received a $10 Million Rent Credit to Address Any Problems There**

Nearly half a century later, the County issued a request for proposal to develop the Property, one of the last undeveloped parcels in the Marina Del Rey area, and MDR won the bid.  SSUF 62, 63.  In October 2013, MDR submitted a Development Plan explicitly acknowledging an abandoned oil well's presence and the need to address methane gas on the Property.  SSUF 64; *see also* Hujer Decl. Ex. 11 (Lease Agreement) at § 5.1, Exhibit B to the Lease at B3 ("There is one known abandoned oil well on the site that will have to be re-abandoned in accordance with [DOGGR].  Furthermore, the building structure will have to be designed for the mitigation of methane gas.").

Around this time, various Phase I and Phase II reports[6] were prepared in support of the development efforts and reflected the Property's historical use as an oil production site.  These reports repeatedly cautioned MDR that the Well would need to be "reabandoned," or brought into compliance with current statutes and regulations, before MDR developed the Property.  SSUF 65.  These reports also warned of soil contamination on the Property due to the County's prior dredging of the marina and use of contaminated hydraulic fill to create Marina Del Rey.  SSUF 66.  MDR also commissioned multiple surveys of the Property to assess for potential methane issues.  These reports confirmed the presence of methane gas and hydrocarbon impacted soil on the Property.  SSUF 67.  Further, MDR's own project manager characterized the Property as a "known dirty site."  SSUF 68, 69.

Despite knowledge of these numerous reports unmistakably referencing the presence of oil-saturated soil with a petroleum odor on the Property, the Property's

---

[6] A Phase I Environmental Site Assessment (Phase 1 ESA) is an investigation of a property's current and historical use.  Phase I assessment views and investigates a property in regard to former use to determine if there is a potential for hazardous conditions to be present on the property.  A Phase II report is a scientific test whereby geologists drill and sample soil, soil-vapor, and groundwater to test for pollution.

LEWIS BRISBOIS BISGAARD & SMITH LLP
ATTORNEYS AT LAW

91668728.1                                            6                          Case No. 2:20-CV-08008-FLA-JPR
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

historical use as an oil field, and the County's placement of contaminated hydraulic fill from the neighboring lagoon on the Property, MDR nonetheless leased the Property "as-is." SSUF 70, 71.  In exchange for accepting sole responsibility for all necessary site remediation, MDR obtained a $10 million rent credit to cover "extras," such as any costs it incurred to address problems the Property posed.  SSUF 72, 73.

### 2. MDR Ignored the Property's Known Conditions And Proceeded With Its Development Plans

#### a. MDR Failed to Properly Plan to Reabandon The Well

In fall 2017, after MDR began construction on the Property, MDR claims it "discovered" the Well was within the footprint of MDR's planned building and assessed that it was leaking methane. SSUF 74, 75.  MDR then submitted proposals to reabandon the Well to the County and DOGGR. SSUF 76.  On April 27, 2018, DOGGR approved MDR's notice of intention to reabandon—provided certain conditions were met.  SSUF 77.  DOGGR required MDR to "isolate the following zones:" (a) "The Base of Freshwater at 700'±"; (b) "The USDW [Underground Source of Drinking Water] at 1512'±"; (c) "Top of the upper most hydrocarbon zone at 2200'±; and (d) "Top of the Upper zone at 3300'±".  SSUF 78.  DOGGR cautioned MDR that "[f]ailure to achieve zonal isolation may have a negative impact on current and future operations."  SSUF 79.

However, MDR, which itself had no experience with such a well, SSUF 80, failed to consult a well-abandonment specialist or a contractor with the requisite knowledge to reabandon a nearly 90-year-old well during the planning phases of its project.  SSUF 81.  Instead, MDR hired a well reabandonment contractor with no familiarity or experience with California's oil well abandonment standards, and who was therefore ill-suited to provide any advice on reabandoning the Well during the planning phase.  SSUF 82.  After starting reabandonment, MDR's inexperienced contractor proceeded with the project despite numerous signs of a potential blowout.  SSUF 83.  During MDR's reabandonment, the Well sustained multiple gas kicks and surface breaches—

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1   all indications of potential well integrity issues—before blowing out on December 25,

2   2018, and again, on January 11, 2019.  SSUF 84.[7]

3        Following the January 2019 blowout, MDR represented that "fish" (i.e.,

4   discarded pipe and other equipment from MDR's operations) became stuck in the Well

5   at approximately 1,450 to 1,550 feet.  SSUF 87.  MDR claimed this prevented its

6   contractors from reaching the top of the upper-most hydrocarbon zone at approximately

7   2,200 feet in compliance with DOGGR requirements.  SSUF 88.  MDR, its contractors,

8   and experts testified it would have been impossible or too risky to isolate the upper

9   hydrocarbon gas zone by drilling the Well beyond the stuck "fish."  SSUF 89.

10       MDR left "fish" in the Well and abandoned it to a depth of approximately 2,027

11   feet bgs, leaving it without "the ability to isolate anything below" and "allow[ing] gas

12   to migrate up wherever the gas was coming in."  SSUF 90, 91.

13                  **b.**     **MDR's Incomplete Reabandonment Did Not Comply
14                       with Applicable Regulations, and the Well Remains
Unsafe and at an Elevated Risk for Future Gas Releases**

15       DOGGR concluded that MDR's Well plugging and reabandonment failed to

16   comply with numerous regulations, including California Public Resources Code

17   ("PRC") §§ 3208 and 3228, and California Code of Regulations, Title 14 §§ 1723(a)

18   and 1723.1(b), because MDR failed to place cement plugs across the following zones

19   of the Well as required by the June 5, 2018 permit: upper hydrocarbon (gas) zone at

20   2200'±, saltwater zone located between 3076' and 3341', and "upper zone" (oil) located

21   at 3330'±.  SSUF 92.  In addition, DOGGR found that "MDR left junk (drill bit and drill

22   collars) in the well from 1302' to 1577'± preventing proper plugging and abandonment

23   of hydrocarbon zones."  SSUF 93.

24       DOGGR concluded "the [W]ell is not plugged and abandoned to usual current

25   standards . . . and *remains an elevated risk for future gas releases*."  SSUF 94.  DOGGR

26   confirmed in 2022 that it "continues to be DOGGR's position that the [W]ell remains

27   ───────────────

28   [7] Because of MDR's cavalier approach to dealing with these incidents, DOGGR
issued an Emergency Order requiring MDR to take certain measures to complete the
reabandonment.  SSUF 86.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

        8        

1   at an elevated risk for future gas releases" and the still-unsealed gas pathways present a

2   "future risk" the Well could "begin leaking gas or other liquid in the future." SSUF 95.

3   Likewise, the Los Angeles County Department of Public Health agreed MDR's well

4   abandonment was "non-compliant with state standards" and "*gas migration pathways*

5   *at depth were not sealed*[.]" SSUF 96.

6          Based on MDR's non-compliance, DOGGR "strongly recommend[ed]" no

7   structures be built atop or in proximity of the Well, noting "[t]his is especially true with

8   respect to well 'Dow R.G.C.' 10, considering the gas blowout history of the [W]ell, the

9   failure to seal the [W]ell at the upper hydrocarbon gas zone, and the [W]ell's proximity

10  to sensitive receptors, including the public." SSUF 97.  DOGGR "perceive[d] a future

11  risk that the [W]ell could begin leaking gas or other liquid in the future." SSUF 98.

12         Despite these recommendations, MDR proceeded with its plan to build a parking

13  structure on top of the Well.  SSUF 99.  As a result, DOGGR required MDR to "install[]

14  a casing riser on the [W]ell to allow access to the [W]ell in the event remedial operations

15  become necessary in the future" and "develop a monitoring program for the [W]ell to

16  detect future leakage." SSUF 100, 102.  DOGGR instructed MDR the casing riser was

17  necessary "to remedy a *currently perceived future problem*" because "the [Well] is not

18  plugged and abandoned to usual current standards, has a history of uncontrolled gas

19  releases . . . and remains an elevated risk for future gas releases." SSUF 101.  MDR's

20  principal, Samuel Hardage, stated, "the [W]ell is going to be monitored forever" to

21  detect leakage of methane gas from the Well.  SSUF 103.  The Los Angeles County

22  Department of Public Health agreed a post-abandonment methane gas monitoring plan

23  was "critical" because gas migration pathways were not sealed.  SSUF 104.

24         **C.    MDR Filed This Action Against Marathon and Dow**

25         MDR's Complaint asserts causes of action for negligence, continuing public

26  nuisance, continuing private nuisance, permanent public nuisance, permanent private

27  nuisance, and trespass.  SSUF 107.  It alleges Defendants negligently "[i]nstall[ed] a

28  stove pipe casing," "[f]ail[ed] to install concrete around the surface casing to ground

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

level" and "around the production casing throughout and above the hydrocarbon production zone," "[f]ail[ed] to cement the well above the salt water zone," "[f]ail[ed] to install cement into the annulus of the casing at and above the 2,200 foot level, which provided further paths for gas to migrate," and "fail[ed] to account for the porous nature of the riveted stovepipe . . . which caused and/or contributed to surface migration of gasses and blowouts." SSUF 108.

**D.    The Court Dismissed MDR's Negligence and Permanent Nuisance Claims**

On November 2, 2020, Defendants moved to dismiss MDR's Complaint on several grounds. SSUF 114. The Court found "the County [] knew or had reason to suspect Plaintiff's claims regarding the alleged 'improper construction, use, maintenance and abandonment of the [W]ell" at least as of 1959." SSUF 115. The Court then dismissed MDR's negligence and permanent nuisance claims because they are barred by the statute of limitations. *Id.*

MDR elected not to amend its Complaint following that ruling. Accordingly, only MDR's trespass and continuing public and private nuisance claims remain.

## III.   LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case." *Agendia, Inc. v. Azar*, 420 F. Supp. 3d 985, 990 (C.D. Cal. 2019 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)), *rev'd sub nom. Agendia, Inc. v. Becerra*, 4 F.4th 896 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 898 (2022).[8]

"Once the moving party meets its burden, the burden shifts to the opposing party

---

[8] Unless otherwise noted, all emphasis has been added and all internal citations and quotation marks have been omitted from cited materials and other authorities.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  to set out specific material facts showing a genuine issue for trial." *Agendia*, *Inc.*, 420

2  F. Supp. 3d at 990 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49

3  (1986)).  The opposing party cannot "rest upon the mere allegations or denials of [the

4  [moving] party's] pleading but must instead produce evidence that set[s] forth specific

5  facts showing that there is a genuine issue for trial." *Est. of Tucker ex rel. Tucker v.*

6  *Interscope Recs., Inc.*, 515 F.3d 1019, 1030 (9th Cir. 2008) (second alteration in

7  original) (quoting *Anderson,* 477 U.S. at 248).  Summary judgment is appropriate if the

8  opposing party "fails to make a showing sufficient to establish the existence of an

9  element essential to that party's cause, and on which that party will bear the burden of

10  proof at trial." *Celotex Corp.*, 477 U.S. at 322.

11  **IV.    DISCUSSION**

12      **A.    MDR's Remaining Nuisance and Trespass Claims Are Untimely**

13          **1.    The Statute of Repose Precludes MDR's Claims**

14      The statute of repose bars all of MDR's sixty- to eighty-year-old faulty

15  construction and abandonment claims.  Under California law:

16      No action may be brought to recover damages from any person . . . who
    develops real property or performs . . . construction of an improvement to

17      real property more than 10 years after the substantial completion of the
    development or improvement for . . . [a]ny latent deficiency in the design,

18      specification, surveying, planning, supervision, or observation of
    construction or construction of an improvement . . . .

19

20  Cal. Civ. Proc. Code § 337.15(a) (Westlaw through Ch. 1 2023 Reg. Sess.).  A nearly

21  identical statute imposes a four-year repose period for patent deficiencies.  Cal. Civ.

22  Proc. Code § 337.1(a) (Westlaw through Ch. 1 2023 Reg. Sess.).

23      Section 337.15, designed to address the "'long tail' liability for alleged defects in

24  projects completed many years in the past," creates "an absolute requirement that a

25  suit… to recover damages for [latent] construction defect be brought within 10 years of

26  the date of substantial completion of construction," whether or not the defect was or

27  even could have been discovered within that period." *Lantzy v. Centex Homes*, 31 Cal.

28  4th 363, 369, 378 (2003) (alteration in original), *as modified* (Aug. 27, 2003); *Inco Dev.*

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

91668728.1                                      11                    Case No. 2:20-CV-08008-FLA-JPR
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT

*Corp. v. Superior Ct.*, 131 Cal. App. 4th 1014, 1020 (2005) (quoting *Lantzy*, 31 Cal. 4th at 369). Section 337.1 serves a similar purpose. *See Tomko Woll Grp. Architects, Inc. v. Superior Ct.*, 46 Cal. App. 4th 1326, 1333 (1996).

These statutes of repose control all nuisance and trespass claims. *See Chevron U.S.A. Inc. v. Superior Ct.*, 44 Cal. App. 4th 1009, 1017-18 (1994); *see also San Diego Unified Sch. Dist. v. Cnty. of San Diego*, 170 Cal. App. 4th 288, 303 (2009); *Gaggero v. Cnty. of San Diego*, 124 Cal. App. 4th 609, 618 (2004); *Mattingly v. Anthony Indus., Inc.*, 109 Cal. App. 3d 506, 509 (1980). This rule has been upheld even when it "effectuate[s] the bar of a plaintiff's remedy before the plaintiff has discovered the latent defect in the property," including claims "arising out of construction completed prior to the effective date of section 337.15." *Barnhouse v. City of Pinole*, 133 Cal. App. 3d 171, 186 (1982), *modified on other grounds by Geernaert v. Mitchell*, 31 Cal. App. 4th 601 (1995); *see also Wagner v. State*, 86 Cal. App. 3d 922, 928 (1978) (holding that, regardless of retroactivity, claims filed more than four years after enactment of section 337.1 in 1967 are barred).

Under these statutes, "[t]he term 'improvement' has been given a very broad interpretation." *Gaggero*, 124 Cal. App. 4th at 615. An "improvement" is any "change or addition to land, property, etc., to make it more valuable" and it "refers separately to each of the individual changes or additions to real property." *Id.* at 616-17 (quoting *Liptak v. Diane Apartments, Inc.,* 109 Cal. App. 3d 762, 771 (1980)). Courts also look to statutory definitions to inform the meaning of "improvement" as used in the statutes of repose. *See id.*; *Schwetz v. Minnerly*, 220 Cal. App. 3d 296, 307 (1990). The Legislature has defined "work of improvement" to include "the construction, alteration, repair, demolition, or removal, in whole or in part, of [any] . . . well." Cal. Civ. Code § 8050(a)(1) (Westlaw through Ch. 1 2023 Reg. Sess.).[9]

---

[9] The Legislature explained that claims "relative to the construction of improvements on real property may be barred after 10 years following substantial completion of the particular development or *work of improvement*." *Schwetz*, 220 Cal. App. 3d at 306-07. *Schwetz* cites to the statutory definition of "work of improvement" contained in the Civil Code prior to recodification in 2010. *Id.*

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

91668728.1                                        12                    Case No. 2:20-CV-08008-FLA-JPR
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Here, the statute of repose bars MDR's claims.  MDR alleges its damages were caused by defects in the Well's construction, and in subsequent construction work to abandon the Well, specifically by perforating the production casing, failing to isolate oil- and gas-bearing zones and saltwater zones, fracturing and breaching the casing, and failing to place cement in the casing's annulus.  SSUF 112.  Courts have routinely applied the statute of repose to similar improvements.  *See, e.g.*, *Grange Debris Box & Wrecking Co. v. Superior Ct.*, 16 Cal. App. 4th 1349, 1353 (1993), *disapproved of on other grounds by Lantzy*, 31 Cal. 4th at 363 (applying statute to work that "demolish[ed] the existing structures on the site, remove[d] underground tanks, remove[d] and dispose[d] of debris, cap sewer laterals and undert[ook] minor grading" that allegedly caused contamination); *Gaggero*, 124 Cal. App. 4th at 613, 617-18 (holding that "construction and operation of [a] landfill" by "filling it, covering it and selling it" was "an improvement within the meaning of section 337.15" where the plaintiff brought the property "as-is" and the defendant "engaged in making the real property suitable for further use by others"); *Gitlin v. Howard*, Nos. A138033, A138034, 2014 WL 6488216, at *6 (Cal. Ct. App. Nov. 20, 2014) (statute barred claims against contractor who removed an underground storage tank and backfilled the property, "regardless of allegations that [defendant] 'covered up' contaminated soil in the pit or used backfill that was, itself, 'contaminated'").  As such, Defendants' construction and abandonment fall squarely within the definition of "improvement."

More than 10 years have elapsed between substantial completion of the improvement and the Complaint's filing.  MDR offers no evidence either Marathon or Dow took any action with respect to the Property or the Well since 1956.  Accordingly, the final completion date was no later than 1957, and MDR's claims are untimely by over half a century.  *See* Cal. Civ. Proc. Code § 337.15(g)(4) (Westlaw through Ch. 1 2023 Reg. Sess.) (absent official certification of substantial completion, date is "[o]ne year after termination or cessation of work on the improvement").

/ / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

91668728.1                                     13                          Case No. 2:20-CV-08008-FLA-JPR
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1   Given the decades that have passed, MDR's claims are barred notwithstanding

2   whether the claimed deficiencies are deemed latent or patent.  The alleged problems in

3   the Well's construction properly qualify as a "latent deficiency," *i.e.*, "a deficiency

4   which is not apparent by reasonable inspection."  Cal. Civ. Proc. Code § 337.15(b)

5   (Westlaw through Ch. 1 2023 Reg. Sess.); *see, e.g.*, *Renown, Inc. v. Hensel Phelps

6   Constr. Co.*, 154 Cal. App. 3d 413, 420 (1984) (holding latent deficiencies include those

7   "which [are] submerged and not clearly apparent or certainly present to any but a most

8   searching examination, but whose significance and effect may later emerge or

9   develop"); *Tzung v. State Farm Fire & Cas. Co.*, 873 F.2d 1338, 1342 (9th Cir. 1989)

10  (design defects "imbedded in the ground" qualified as "latent"); *Chevron*, 44 Cal. App.

11  4th at 1013 (same for underground storage tanks).  But even if the claimed defects are

12  considered patent, MDR's claims still would be barred by the four-year period

13  contained in California Code of Civil Procedure § 337.1(a).  In either event, MDR's

14  claims are untimely.

15  ## 2.  MDR's Well Claims Are Barred By The Statute of Limitation Because The Alleged Nuisance Is Permanent

16

17  MDR's Well claims independently are barred by the statute of limitations

18  because, if the Well is a nuisance or trespass at all (which Defendants dispute), it is not

19  abatable and therefore is permanent.  Under the law of this case, all permanent nuisance

20  and trespass claims accrued at least as of 1959 and are therefore barred by the statute of

21  limitations.  SSUF 115; *see also* Cal. Civ. Proc. Code § 338(b) (Westlaw through Ch. 1

22  2023 Reg. Sess.).

23  ### a.  MDR Must Provide *Evidence* Demonstrating Its Well Claims Are A Continuing Nuisance or Trespass

24

25  "A plaintiff cannot simply allege that a nuisance is continuing in order to avoid

26  the bar of the statute of limitations, but must present *evidence* that under the

27  circumstances the nuisance may properly be considered continuing rather than

28  permanent." *Beck Dev. Co. v. S. Pac. Transp. Co.*, 44 Cal. App. 4th 1160, 1217 (1996);

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

91668728.1                                    14                    Case No. 2:20-CV-08008-FLA-JPR
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT

*see also id.* at 1222 (finding "the circumstances of Beck's property cannot properly be considered a continuing nuisance under the abatability test" in light of evidence in case); *Mangini v. Aerojet-Gen. Corp., (Mangini II)*, 12 Cal. 4th 1087, 1103-04 (1996) (affirming reversal of damages award where plaintiffs failed to present substantial evidence of a continuing nuisance or trespass and statute of limitations barred the action).

The California Supreme Court has explained "the crucial distinction between a permanent and [a] continuing nuisance is whether the nuisance may be discontinued or abated[.]" *Mangini II*, 12 Cal. 4th at 1093 (quoting *Mangini v. Aerojet-Gen. Corp., (Mangini I)*, 230 Cal. App. 3d 1125, 1146 (1991)). The same standard applies to trespass claims. *Id.* at 1103. "A nuisance is regarded as continuing if 'the nuisance can be remedied at a reasonable cost and by reasonable means.'" *McCoy v. Gustafson*, 180 Cal. App. 4th 56, 63 (2009) (quoting *Mangini II*, 12 Cal. 4th at 1103). Since "virtually everything can be said to be abatable if all other considerations are disregarded," the "reasonable abatement" inquiry considers "such things as the feasible means of, and alternatives to, abatement, the time and expense involved, legitimate competing interests, and the benefits and detriments to be gained by abatement or suffered if abatement is denied." *Beck Dev. Co.*, 44 Cal. App. 4th at 1220. "[M]ere technological feasibility" does not prove abatability. *Mangini II*, 12 Cal. 4th at 1099; *see also Castaic Lake Water Agency v. Whittaker Corp.*, 272 F. Supp. 2d 1053, 1072 (C.D. Cal. 2003).

The plaintiff bears the burden to "present substantial evidence that the . . . condition is one that is both subject to [abatement] . . . and that the cost of [abatement] is 'reasonable.'" *Keegan v. Viviani*, No. G048609, 2015 WL 3633602, at *13 (Cal. Ct. App. June 11, 2015) (quoting *Mangini II*, 12 Cal. 4th at 1090). The question whether a nuisance is permanent or continuing must be resolved as a matter of law where there is no genuine dispute of material fact. *See, e.g.*, *Gehr v. Baker Hughes Oil Field Operations, Inc.*, 165 Cal. App. 4th 660, 663, 671 (2008) (affirming summary judgment for defendants where plaintiff's permanent nuisance damages were barred by statute of

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

91668728.1                                    15                        Case No. 2:20-CV-08008-FLA-JPR
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1  limitations); *Lyles v. State*, 153 Cal. App. 4th 281, 291-92 (2007) (affirming trial court's

2  determination that undisputed facts demonstrated the nuisance was permanent); *Spar v.*

3  *Pac. Bell*, 235 Cal. App. 3d 1480, 1483-86, 1488 (1991) (same).

4       *Mangini II* is controlling.  The court found "there [wa]s no substantial evidence

5  that the nuisance [wa]s abatable" where there was "uncertainty regarding the extent of

6  contamination," "how much land or water ha[d] to be decontaminated," and "how deep

7  the decontamination" was, and the court had "no idea how much it would cost but

8  kn[ew] only that it would cost unascertainable millions of dollars" to remediate the

9  purported nuisance and trespass.  *Mangini II*, 12 Cal. 4th at 1103; *see also Castaic Lake*

10  *Water Agency*, 272 F. Supp. 2d at 1072-73 (potential $36 million water treatment

11  program and abatement's technological feasibility did not transform a permanent

12  nuisance into a continuing one).  The similar undisputed material facts here, as detailed

13  below, warrant the same result.

14           **b.    The Undisputed Facts Demonstrate That, If the Well Is a**
            **Nuisance or Trespass, It Could Not and Cannot Be**
15           **Abated At Reasonable Cost By Reasonable Means**

16       Assuming the Well is a nuisance or trespass at all (which Defendants dispute),

17  the undisputed material facts demonstrate that it can be characterized only as a

18  permanent one as a matter of law—MDR admits the Well *could not be abated at a*

19  *reasonable cost by reasonable means*.  MDR could not reabandon the Well pursuant to

20  current DOGGR regulations, which required MDR to isolate the upper hydrocarbon gas

21  zone to prevent the migration of gas to the surface, among other things.  SSUF 92, 93,

22  94, 95.  MDR admits that due to the "fish" stuck in the wellbore from its abandonment

23  operations, SSUF 87, 88, reabandonment of the Well to a depth of approximately 3,300

24  feet—to enable the isolation of the upper hydrocarbon gas zone—was impracticable,

25  unsafe, risky, and cost prohibitive.  SSUF 89.

26       Rejecting MDR's plugging and reabandonment of the Well, DOGGR stated

27  unequivocally the "[W]ell is not plugged and abandoned to usual current standards, has

28  a history of uncontrolled gas releases including the most recent plugging and

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

abandonment attempt, and *remains an elevated risk for future gas releases*." SSUF 94. This is exactly the permanent nuisance MDR alleged in its Complaint. *See* ECF No 1-2 ¶¶ 12, 17, 33, 40, 47, 54. Further, due to MDR's non-compliance and the "future risk that the [W]ell could begin leaking gas or other liquid in the future," SSUF 95, DOGGR "strongly recommend[ed]" no structures be built atop or in proximity of the Well, "considering the gas blowout history of the [W]ell, the failure to seal the [W]ell at the upper hydrocarbon gas zone, and the [W]ell's proximity to sensitive receptors, including the public." SSUF 97.[10] Yet, over this recommendation, MDR continued with its development plan and built its parking garage atop the Well. SSUF 99.

Recognizing the Well presented a heightened risk for future gas release, SSUF 109, MDR agreed to DOGGR's request to install a casing riser to allow "access to the [W]ell to remedy a *currently perceived future problem*." SSUF 101, 102. To address the ongoing risk of methane gas leakage from the Well, MDR agreed to develop a *permanent* monitoring program. SSUF 102, 103. MDR could not and did not abandon the Well pursuant to DOGGR requirements, including by failing to isolate the upper hydrocarbon gas zone and prevent further gas migration. As a result, the Well remains at a heightened risk for future gas releases. SSUF 101, 109. If the Well is a nuisance or a trespass (which Defendants dispute), MDR's own actions demonstrate it is permanent because it cannot be "remedied at a reasonable cost by reasonable means." *Mangini II*, 12 Cal. 4th at 1103.

   c.   **The Well is a Permanent Structure That Cannot Be Removed from the Property or Abated; Any Nuisance and Trespass Claims Are Permanent and Untimely**

MDR's Well claims should be dismissed for failure to comply with the statute of limitations given the Well is a permanent structure that was not and cannot be

---

[10] "Wells not approved to the State's current standards pose a higher risk of leaking and potential damage to life, health, property, and natural resources than those abandoned to current standards," and "[w]ells in which access is impeded, and are not abandoned to current standards, pose an even higher risk to life, health, property, and natural resources, due to their immediate proximity to structures and the time, cost, and complexity of tearing down impediments to the wells and rigging up well servicing equipment to remediate the wells should they begin leaking." SSUF 105, 106.



1    reabandoned to address MDR's allegations of continued gas migration. California

2    courts have held "solid structures" that cannot be reasonably abated, such as the Well,

3    present claims for permanent rather than continuing nuisance and trespass. *See, e.g.*,

4    *Castelletto v. Bendon*, 193 Cal. App. 2d 64, 67 (1961) ("defendants' buildings were

5    . . . of a 'permanent, nature'"); *accord Capogeannis v. Superior Ct.*, 12 Cal. App. 4th

6    668, 682-83 (1993) (collecting cases). For example, the *Castelletto* court reversed a

7    judgment for the plaintiff, reasoning the three buildings, standing on plaintiff's property

8    for 12 years, "were of a 'permanent[], nature' and the statute had run long before the

9    plaintiffs acquired their property and before the action was commenced." 193 Cal. App.

10   2d at 67. Accordingly, plaintiff's claims were precluded by the limitations period. *Id.*

11   California courts also repeatedly have dismissed alleged nuisance and trespass

12   claims as untimely where the evidence on summary judgment showed the alleged

13   nuisance or trespass is a solid structure and the claim ran with the land for purposes of

14   the statute of limitations. *See, e.g.*, *Field-Escandon v. Demann*, 204 Cal. App. 3d 228,

15   233-34 (1988), *modified* (Sept. 27, 1988), *modified* (Sept. 29, 1988) (affirming

16   dismissal of trespass claim concerning sewer line that "was intended to be a permanent

17   structure" and installed more than 25 years prior to filing suit); *see also Bookout v. State

18   ex rel. Dep't of Transp.*, 186 Cal. App. 4th 1478, 1489 (2010), *as modified* (July 28,

19   2010) (granting judgment on the pleadings and dismissing nuisance and trespass claims

20   concerning raised rail bed and culvert pipe installed by railroad "at least since 1940,"

21   and finding that "there is nothing to suggest the pipe is temporary or might be modified

22   at any time").

23   The outcome here is no different. MDR has argued throughout these proceedings

24   that the entirety of the Well is a nuisance and a trespass and that the Well is a "structure."

25   SSUF 110. The Well thus is the quintessential "solid structure[]" that California courts

26   have found to "support[] findings of [a] permanent nuisance." *Capogeannis*, 12 Cal.

27   App. 4th at 682. MDR's Well claims therefore must be characterized as permanent,

28   making them untimely and barred by the limitations period.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

91668728.1                                    18                   Case No. 2:20-CV-08008-FLA-JPR
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT

**B.   Defendants Are Entitled To Judgment As A Matter of Law on MDR's Claims Because They Had Consent To Construct, Operate, and Abandon the Well**

MDR's  trespass and nuisance claims also fail as a matter of law because MDR cannot show that Defendants lacked consent to engage in their activities.  *See Wells Fargo Bank, N.A. v. Renz*, 795 F. Supp. 2d 898, 929 (N.D. Cal. 2011) (granting summary judgment on trespass claim where Plaintiff failed to raise a genuine dispute of material fact disputing consent).

**1.   MDR Cannot Prove Defendants Lacked Consent**

A property owner cannot assert a trespass or nuisance claim with respect to actions permitted by a prior owner.  "[T]respass is an unlawful interference with possession of property and *peaceable entry on land by consent is not actionable*."  *Cnty. of Santa Clara v. Atl. Richfield Co.*, 137 Cal. App. 4th 292, 315 (2006)) (quoting *Mangini I*, 230 Cal. App. 3d at 1141).  If a party in possession of property "consented to the process whereby the contamination entered [plaintiff's] property, [plaintiff] cannot bring a claim against Defendants for trespass."  *Hinds Invs., L.P. v. Angioli*, 445 F. App'x 917, 920 (9th Cir. 2011).  The same rule applies to nuisance claims.  *See Bd. of Tr. of Leland Stanford Junior Univ. v. Agilent Techs., Inc.*, 573 F. Supp. 3d 1371, 1377 (N.D. Cal. 2021); *Mangini I*, 230 Cal. App. 3d at 1139.[11]  Thus, lack of consent is an element of [a] plaintiff's prima facie case for nuisance and trespass."  *Rev 973 LLC v. Mouren-Laurens*, No. CV 98-10690, 2009 WL 1096278, at *8 (C.D. Cal. Apr. 22, 2009); *see also Wicker v. Walmart, Inc.*, 533 F. Supp. 3d 944, 948 (C.D. Cal. 2021) (public nuisance); *Gucci Shops, Inc. v. Conrad*, Nos. CIV.A. 86-20558SW, C 86-20560SW, 1987 WL 47298, at *6 (N.D. Cal. Dec. 17, 1987) (trespass).

---

[11] This is true of both public and private nuisance claims brought by a private entity. *Ream Holdings, LLC v. 3R Int'l Grp., Inc.*, No. 5:17-cv-00825, 2017 WL 8223645, at *2 (C.D. Cal. Aug. 17, 2017); *see also Mangini I*, 230 Cal. App. 3d at 1139 (the "defense of consent" [is not] vitiated simply because plaintiffs seek damages based on special injury from public nuisance").  Since there is no dispute that MDR is a private entity that seeks "damages for special injury from a public nuisance," Defendants are entitled to summary judgment on both MDR's private and public nuisance claims.  Compl. ¶¶ 35, 42, 62.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   Accordingly, where "an owner of property seeks damages for creation of a
2   nuisance [or trespass] by a prior lessee, the lessee has a defense that his use of the
3   property" was (1) "authorized by the lease; i.e., his use of the property was undertaken
4   with the consent of the owner" and (2) "lawful." *Mangini I*, 230 Cal. App. 3d at 1138.
5   Where a "plaintiff cannot disprove that 'the defendant acted lawfully in conducting the
6   consensual activities that gave rise to the claim of nuisance[,]'" its nuisance and trespass
7   claims must fail. *Rev 973 LLC*, 2009 WL 1096278, at *7 (quoting *Beck Dev. Co.,* 44
8   Cal. App. 4th at 1215).[12]

9   Here, the uncontroverted evidence demonstrates that Defendants at all times
10  operated with consent.  MDR accordingly cannot meet its burden of demonstrating
11  Defendants lacked consent to conduct their activities on the Property.  Consequently,
12  MDR's trespass and nuisance claims must fail.  *See, e.g.*, *Ash v. Bank of Am. N.A.*, No.
13  2:10-cv-02821, 2014 WL 301027, at *5 (E.D. Cal. Jan. 28, 2014) (granting summary
14  judgment where the plaintiff could not meet the lack of consent element for the trespass
15  claim); *Cnty. of Santa Clara*, 137 Cal. App. 4th at 315 (denying leave to file amended
16  pleading where the pleadings "indisputably establish[ed] that the lead was placed on
17  plaintiffs' property . . . with their consent); *Emeryville Redevelopment Agency v. Eltex
18  Inv. Corp.*, No. C 04-02737, 2004 WL 2359862, at *6 (N.D. Cal. Oct. 19, 2004)
19  (dismissing trespass and nuisance claims where the defendant received consent for a
20  billboard easement that was part of the grant deed to the original grantee and the
21  easement was recorded).

22              2.    **Defendants' Alleged Actions Were Authorized By Their Leases**
23                    a.    **Marathon's Activities Were Authorized By Its Lease**
24  There is no dispute that Marathon's activities were authorized specifically by the
25  ratified lease that gave Marathon the right "to *explore, mine and operate, take, store,*
26  *remove and dispose of oil, gas,* casing-head gas and other hydrocarbon substances"
27
28  ---
    [12] "Although some cases have termed consent a 'defense,' . . . consent is not an
    affirmative defense.  Rather, lack of consent is an element of the plaintiff's prima facie
    case for nuisance and trespass." *Rev 973 LLC,* 2009 WL 1096278, at *8.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

91668728.1                                    20                      Case No. 2:20-CV-08008-FLA-JPR
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT

1   from the Property, including the Well, for twenty years.  SSUF 1.  In 1931, Marathon
2   began to "explore, mine, and operate, take, store, remove and dispose of oil [and] gas"
3   by "[d]rill[ing]," "ream[ing]," "[c]ement[ing]," "coring," and "[s]wabb[ing]" the Well.
4   SSUF 10.  Marathon then operated the Well and extracted oil for several years.  SSUF
5   13.

6        There is *no evidence* that A.A. Curtice or RGC, the lessors, ever asserted a breach
7   of any provision of the original lease, the ratified lease, or any other legal document
8   governing Marathon's possession and use of the Property.  SSUF 21.  At no point did
9   A.A. Curtice and/or RGC demand the Property back and/or terminate the assignment.
10  *Id.* [13]  Instead, in January 1939, RGC *extended* the initial lease by at least 13 years, and
11  Marathon executed a quitclaim to RGC relating to the Well and the Property
12  surrounding it in 1941.  SSUF 14, 22.  RGC did not then or at any other time assert any
13  breaches of the lease agreement or operating agreement.  SSUF 21.

14              **b.    Dow's Activities Were Authorized By Its Lease**

15       Dow's July 1941 lease with RGC authorized it to "produc[e] oil, gas, other
16  hydrocarbon substances, waste salt water and iodine, and tak[e], stor[e], remov[e] and
17  dispos[e] of [the] same."  SSUF 30.  The lease also allowed Dow to remove any
18  improvements and to "pull all casing[s]" from the Well.  SSUF 31.  Further, the lease
19  provided Dow may quitclaim the lease in its entirety and, once so quitclaimed, Dow
20  "shall be released from all further obligations[.]"  SSUF 32.

21       Dow later executed a quitclaim deed to the County; the County accepted the
22  quitclaim deed and took no further action.  SSUF 44, 45.  Dow complied with the terms
23  of its lease, and, in the many decades after Dow executed its quitclaim deed, neither
24  RGC, the County, nor any other party claimed Dow breached its lease.  SSUF 46, 49.

25       Because the quitclaim deeds terminated the parties' respective obligations under
26  their leases, standard practice dictates that an assessment of the parties' compliance with

27  
28  _____

[13] It is therefore of no consequence that the original lease and the operating agreement
could not be located (at no fault of Marathon) because A.A. Curtice and RGC's actions
demonstrate Marathon's compliance with the lease terms.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

91668728.1                                    21                   Case No. 2:20-CV-08008-FLA-JPR
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT

their leases would have been conducted at that time.  SSUF 47, 48; *see also Alamitos Land Co. v. Shell Oil Co.*, 3 Cal. 2d 396, 404 (1935) (lease interpreted by reference "to the customs and usages of the trade").  Unless a breach was asserted by the lessor, acceptance of a quitclaim deed accomplishes conveyance of title and possession of the property to the lessor in an "as-is" condition.  SSUF 49.  Accordingly, for both Defendants, the acceptance of the quitclaim deeds terminated any further obligations regarding the Property.

### 3.    Defendants' Conduct Was Lawful

There is no material dispute Defendants acted lawfully.  MDR has asserted Defendants violated various Public Resource Code Provisions, including: for Marathon, ch. 535, §§ 3 & 16 (1929), and ch. 791 §§ 15 & 18 (1931); for Dow, ch. 93, §§ 3213, 3228, 3229, and 3501 (1939).  SSUF 113.[14]  But none of these assertions is correct.

Four of the statutory provisions MDR cited specifically require "methods approved by the supervisor or the district deputy."  Cal. Pub. Res. Code §§  3, 16 (1929), §§ 3220, 3228 (1939).[15]  The public record firmly establishes that Marathon informed DOGGR of its drilling, core, casing, cementing, and perforation history, and initial production," abandonment, water-shut off tests, and transfer of the Well to Dow, and DOGGR witnessed and approved these activities.  SSUF 11, 12.  Similarly, Dow informed DOGGR of its "[p]reforat[ing]," "plug[ging]," "cement[ing]," and "test[ing]" for saltwater production, and later its abandonment, water shut-off tests, and transfer of the Well to the County; again, DOGGR witnessed and approved of these activities.  SSUF 40, 41.  And it is undisputed DOGGR certified that Dow abandoned the Well to the agency's satisfaction.  SSUF 39.

The other claimed statutory violations are equally inapplicable.  Chapter 791, §15

---

[14] MDR's interrogatory responses asserted Defendants also violated PRC §§ 3220 and 3300.  But MDR has offered no evidence, expert or otherwise, to support these claimed statutory violations.  *Id.*

[15] The term "Supervisor" refers to "the State Oil and Gas Supervisor," the office charged with supervising "the drilling, operation, maintenance, and abandonment of wells." Cal. Pub. Res. Code §§ 3004, 3106(b) (Westlaw through Ch. 1 2023 Reg. Sess.).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

91668728.1                                                    22                         Case No. 2:20-CV-08008-FLA-JPR
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

concerns casing strength, and not only did DOGGR know of and approve Marathon's casing choice, but even MDR's purported expert acknowledged the Well's casing was typical of the day and commonly used in this region.  SSUF 20.  Chapter 791, § 18 concerns the requirements for a proper drilling log.  Marathon completed the required log and did so timely.  SSUF 11.

The remaining claimed statutory violations, ch. 93, §§ 3213, 3229, and 3501 are equally inapplicable.  Dow's filings show it recorded shots and plugs in compliance with § 3213.  SSUF 42.  Dow's notice to abandon properly described the condition of the Well in accordance with § 3229.[16]  SSUF 43.  And Dow properly plugged the Well as required by § 3501.  *See* SSUF 39, 40.

### C.    MDR's Nuisance Claims Fail as a Matter of Law

#### 1.    Civil Code Section 3482 Dictates The Well Is Not a Nuisance

MDR's nuisance claims independently fail because the Well is not a nuisance as a matter of law.  Under California law, "[n]othing which is done or maintained under the express authority of a statute can be deemed a nuisance."  Cal. Civ. Code § 3482.   As such, there is no nuisance liability where "the acts complained of are authorized by the express terms of the statute under which the justification is made, *or by the plainest and most necessary implication from the powers expressly conferred,* so that it can be fairly stated that the legislature contemplated the doing of the very act which occasions the injury."  *Today's IV, Inc. v. Los Angeles Cnty. Metro. Transp. Auth.*, 83 Cal. App. 5th 1137, 1177 (2022), *reh'g denied* (Oct. 25, 2022), *review denied* (Jan. 18, 2023).

---

[16] Jordan's report asserts DOGGR did not know about the Well's perforations when Dow noticed its reabandonment and that by this purported omission Dow violated the statute.  But the Court has already taken judicial notice that Dow informed DOGGR that it was perforating the Well and that DOGGR therefore knew that information. SSUF 116.  Moreover, in 1959, DOGGR had the information about the perforations in the County's description of the Well and still did not require the County to take any action to plug or otherwise address the perforations.  SSUF 34, 54, 56.  Any purported omission by Dow, therefore, was irrelevant to any DOGGR decision regarding reabandonment.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Courts have "broadly interpreted" the term "statute" in section 3482 "to include regulations and other express government approvals." *Williams v. Moulton Niguel Water Dist.*, 22 Cal. App. 5th 1198, 1205 (2018), *as modified* (May 18, 2018). For example, courts have applied section 3482 where government permits—issued pursuant to statutory authority—authorize the alleged nuisance. *See e.g.*, *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 888 (9th Cir. 2001) (granting summary judgment where permit issued by water quality board that authorized "the discharge of storm water containing pollutants, and there [wa]s no evidence that there was any lead-contaminated storm water runoff to the property prior to 1994 or a violation of the permits."); *Wheeler v. Gregg*, 90 Cal. App. 2d 348, 370 (1949) (affirming judgment where plaintiffs unsuccessfully sued to enjoin excavation by defendants who were operating pursuant to a permit authorized by the city ordinance).

There is no dispute Defendants' actions in constructing and abandoning the Well, which MDR alleges caused the purported nuisance, were taken with DOGGR's express authorization and thereafter inspected and approved by DOGGR.[17] SSUF 9, 11, 15, 18, 34, 35, 38, 39. Pursuant to permits and approvals it issued to Defendants, DOGGR expressly authorized Defendants' actions. These acts accordingly fall within section 3482. Further, while MDR now improperly faults Defendants for the Well's construction and abandonment, DOGGR's approvals did not specify any "method or manner of construction" for that work. *See Today's IV, Inc.*, 83 Cal. App. 5th, at 1181-82 (applying section 3482.6 where "the statute d[id] not limit the method or manner of construction allowed for building rail lines" and the "burdens complained of by appellant (noise, dust, and access limitation) are unavoidable byproducts of the statutorily authorized acts"). Moreover, it is undisputed Marathon's completion,

---

[17] DOGGR is the state entity responsible for ensuring compliance with California's laws and regulations regarding the drilling, operation, and closure of oil and gas wells in California, SSUF 7, and is to be given "all the powers which may be necessary to carry out the purposes" of the relevant statutory scheme. Cal. Pub. Res. Code § 53 (1915); *see also* Cal. Pub. Res. Code § 42 (1929); Cal. Pub. Res. Code § 3013 (Westlaw through Ch. 1 2023 Reg. Sess.).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

91668728.1
24
Case No. 2:20-CV-08008-FLA-JPR
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT

operation, and abandonment of the Well "adhered to common industry practices at the time in California and more specifically in the Playa del Rey oilfield," further demonstrating its compliance with the applicable statutes. SSUF 19. And both Defendants' abandonments were approved, witnessed, and found compliant by DOGGR. SSUF 18, 39.

Plaintiff's nuisance claims fail as a matter of law because Defendants' conduct was expressly authorized by the statutes in effect at the time and as interpreted and applied by DOGGR. *See Farmers Ins. Exch. v. State*, 175 Cal. App. 3d 494, 499, 503 (1985) (dismissing nuisance claim where "the nuisance complained of, the release of a chemically destructive spray into the atmosphere, was precisely what was authorized by the various statutes" that "designated specific eradication areas and set forth various means and methods which might be.").

### 2.      MDR Caused Any Nuisance

MDR's nuisance claims fail for an additional reason—even if the Well is a nuisance, MDR created that nuisance. Prior to MDR beginning its operations and excavating the Property, the Well undisputedly posed no danger. Both Marathon and Dow successfully abandoned the Well pursuant to DOGGR requirements, and DOGGR specifically approved of their abandonments. SSUF 18, 39. Then, the County reabandoned the Well in 1959, which DOGGR also approved, and there was "no mention of leakage [] identified." SSUF 56, 57.

There is no evidence of any issues with the Well, including blowouts and gas leaks, between the County's reabandonment in 1959 and 2017, when MDR leased and took control of the Property. SSUF 61, 74. Indeed, MDR acknowledges that "[t]here was no evidence of the defects prior to MDR coming to the Property." SSUF 111. The two blowouts that occurred while MDR was operating and reabandoning the Well were the only two blowouts that occurred in the Well in nearly six decades. SSUF 85. It is uncontroverted that had MDR not begun excavating the Property, the underground Well would have remained undisturbed and posed no risk to the public or to MDR. *See Beck*

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

91668728.1                                                  25                          Case No. 2:20-CV-08008-FLA-JPR
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

*Dev. Co.*, 44 Cal. App. 4th at 1210 ("The evidence was uncontradicted that the substance under [the plaintiff's] property poses no risk to health through personal proximity *if it is left where it is*."). Thus, to the extent there is a nuisance, MDR created it.

### D. MDR's Remaining Trespass Claim Fails Because Neither Defendant Caused Any Detrimental Substance to Enter the Property

MDR cannot prove a trespass. Trespass can occur only if a toxic substance enters the plaintiff's property *from the property of another*. *See* 11 Miller Starr Regalia, Miller & Starr California Real Estate, Trespass § 39.70 (4th ed. Westlaw through Dec. 2022 update); Cal. Civ. Prac. Enviro. Lit. § 2:7 (Westlaw updated Oct. 2022). As this Court previously explained, "failure to remove from land in the possession of another a thing which he has tortiously . . . placed on the land constitutes a continuing trespass for the entire time during which the thing is on the land." *MDR Hotels, LLC v. Dow Chem. Co.*, No. 2:20-cv-08008, 2021 WL 3519861, at *5 (C.D. Cal. Apr. 20, 2021) (quoting *Mangini I*, 230 Cal. App. 3d at 1148-49). And the Restatement refers to the "thing" intruding upon the land of another as "foreign matter." *See* Restatement (Second) of Torts § 158 cmt. i (1965) (Westlaw through Mar. 2023 update) (noting "it is not necessary that the foreign matter should be thrown directly and immediately upon the other's land"); *see also Mangini I*, 230 Cal. App. 3d at 1132 (case concerned "millions of pounds of waste rocket fuel materials and other hazardous substances which [defendant] burned, buried, or otherwise disposed of on the property"); *Capogeannis*, 12 Cal. App. 4th at 672, 674 (case concerned "deposition of petroleum hydrocarbons in the soil and groundwater" in "underground fuel storage tanks").[18] But MDR has not claimed or demonstrated either Defendant placed oil or gas onto the Property, or failed to remove any such oil or gas. MDR cannot do so, as it is undisputed the oil and gas

---

[18] To the extent MDR's trespass claim is based on construction of the Well itself, those construction activities were authorized by valid leases as set forth in Section B, *supra*, and would be a permanent trespass and barred by the limitations period as described in Section A.2, *supra*.



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  *pre-existed* Defendants' leases.  SSUF 4.

2        Thus, even if MDR could prove Defendants caused the complained of oil and gas

3  migration (it cannot) MDR has offered no evidence for its contention that permitting oil

4  and gas to migrate within a single property constitutes a trespass.   Accordingly,

5  summary judgment on MDR's trespass claim is proper. [19]

6        **E.      Defendants' Quitclaim Deeds Extinguished MDR's Remaining Claims**

7        MDR's remaining nuisance and trespass claims fail for the independent reason

8  that Defendants transferred the Property via quitclaim deeds, thereby extinguishing all

9  their obligations related to the Property and the activities thereon.   In July 1941,

10 Marathon executed a quitclaim deed to RGC with respect to the Well and the Property

11 around it, and then executed a quitclaim deed to the County with respect to the

12 remainder of the Property.  SSUF 22, 23, 26.  Dow executed a quitclaim deed to the

13 County in December 1961.  SSUF 44.

14       As this Court explained, quitclaim deeds, like other contracts, must be construed

15 taking into account the parties' intent. ECF No. 54 at 11.  Professor Laura Underkuffler,

16 an expert in property law and practice, has offered unrebutted testimony that, within the

17 oil and gas industry, it is understood that a lessee's surrender of an oil and gas lease by

18 quitclaim deed "release[s] the executing lessee from any further involvement in or

19 responsibility for the condition of the property." SSUF 47.  While the quitclaims do not

20 include the term "as-is," Professor Underkuffler explains that such language would be

21 redundant because a quitclaim transfer in this specific context and industry is

22 understood to be "an 'as-is' transfer," "with no representations made about the condition

23 of the property," including "the leasing operations and activities performed" thereon.

24

25 [19] MDR's unsupported allegations, that oil and gas migrated from one portion of the
   Property to another cannot rescue its deficient claims because a failure to remove theory
26 of trespass requires the transportation of foreign matter from *outside* the property onto
   the property.  *Mangini I*, 230 Cal. App. 3d at 1132; *Capogeannis*, 12 Cal. App. 4th at
27 672, 674.  MDR originally alleged that Defendants were responsible for the presence of
   heavy metals on the Property, ECF No. 1-2 ¶ 60), but have apparently abandoned that
28 claim.  There is no evidence suggesting Defendants had any involvement with those
   heavy metals.


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT

1  SSUF 49, 50. MDR has offered no rebuttal to Professor Underkuffler's opinions

2  regarding the oil and gas industry-specific understanding of quitclaims such as those

3  executed by Defendants and accepted by RGC and the County.

4        By executing these quitclaim deeds, Defendants were released of any and all

5  obligations related to the Property and the Well. MDR, as a subsequent lessee, inherited

6  "[n]o rights or obligations established by [the] oil and gas lease[s] that w[ere] previously

7  surrendered by [the] quitclaim deed[s]." SSUF 51. As such, MDR's claims are barred

8  by Defendants' quitclaim deeds.

9  **V.     CONCLUSION**

10       Defendants respectfully request the Court enter summary judgment in their favor

11 and dismiss MDR's remaining claims of trespass and continuing public and private

12 nuisance.

13

14 Dated: March 10, 2023          **LEWIS BRISBOIS BISGAARD**
                                  **& SMITH LLP**
15
                                  By:  */s/ Patrick J. Foley*
16                                    Patrick J. Foley
                                      Attorneys for Defendant
17                                    *The Dow Chemical Company*

18

19                                **PHILLIPS LYTLE LLP**

20                                By:  */s/ Tristan D. Hujer*
                                      Joel A. Blanchet (*Pro Hac Vice*)
21                                    Tristan D. Hujer (*Pro Hac Vice*)
                                      Myles K. Bartley (*Pro Hac Vice*)
22                                    Attorneys for Defendant
                                      *The Dow Chemical Company*
23

24

25                                **LATHAM & WATKINS LLP**

26                                By:  */s/ Mary Rose Alexander*
                                      Mary Rose Alexander
27                                    Shannon D. Lankenau
                                      Michael A. Hale
28                                    Attorneys for Defendant
                                      *Marathon Oil Company*

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

91668728.1                          28                    Case No. 2:20-CV-08008-FLA-JPR
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT

1

## **ATTESTATION**

2
Pursuant to Local Rule 5-4.3.4(a)(2)(I), I, Tristan D. Hujer, attest under penalty

3
of perjury that I have obtained concurrence and authorization from the other

4
signatories to affix their electronic signatures to this filing.

5

6
Dated: March 10, 2023                                    **PHILLIPS LYTLE LLP**

7
By */s/ Tristan D. Hujer*

8
Tristan D. Hujer

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2        The undersigned, counsel of record for the Defendant The Dow Chemical

3   Company, certifies that this brief complies with the page limit set by court order dated

4   February 17, 2023 (ECF No. 123).

5

6   Dated: March 10, 2023                        **PHILLIPS LYTLE LLP**

7                                                By */s/ Tristan D. Hujer*

8                                                    Tristan D. Huje

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  **CERTIFICATION OF CONCURRENCE FROM SIGNATORY**

2    I, Patrick J. Foley, am the ECF user whose ID and password are being used to

3  file this **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES**

4  **IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**.  In compliance with

5  C.D. Cal. Civ. L.R. 5-4.3.4(a)(2)(i), I hereby attest that I have obtained the

6  concurrence of the signatory to this document, who is also an ECF user.

7

8                                                  */s/ Patrick J. Foley*

9                                                  _____
                                                   Atty signature
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

91668728.1

Case No. 2:20-CV-08008-FLA-JPR

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT