1  Patrick J. Foley (Bar No. 180391)
   *Patrick.Foley@lewisbrisbois.com*
2  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
   633 West Fifth Street
3  Suite 4000
   Los Angeles, CA 90071
4  Telephone:   (213) 580-7914
   Facsimile:    (213) 250-7900
5
   *Attorneys for Defendant The Dow Chemical Company*
6
   [Additional Counsel Listed on Next Page]
7
                        **UNITED STATES DISTRICT COURT**
8
                        **CENTRAL DISTRICT OF CALIFORNIA**
9

| | |
|---|---|
| 10  MDR HOTELS, LLC, | Case No. 2:20-cv-08008-FLA (JPRx) |
| 11              Plaintiff, | The Honorable Fernando L. Aenlle-Rocha |
| 12       vs. | **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| 13  MARATHON OIL COMPANY; THE DOW CHEMICAL | |
| 14  COMPANY; and DOES 1 through 10, inclusive, | *[Filed Concurrently with Defendants' Response to Plaintiff's Statement of Genuine Disputes in Support of Opposition to* |
| 15 | *Defendants' Motion for Summary Judgment; Defendants' Objections to Evidence Offered* |
| 16              Defendants. | *in Support of Plaintiff's Opposition to* |
| 17 | *Defendants' Motion for Summary Judgment; Declaration of Myles K. Bartley with* |
| 18 | *Exhibits; and Appendix of Evidence]* |
| 19 | Trial Date: TBD |
| 20 | Judge: Hon. Fernando L. Aenlle-Rocha |
| 21 | Hearing |
|  | Date: April 14, 2023 |
| 22 | Time: 1:30 p.m. |
|  | Location:  Courtroom 6B |

23

24

25

26

27

28

Joel Blanchet (*Pro Hac Vice*)
jblanchet@phillipslytle.com
Tristan D. Hujer (*Pro Hac Vice*)
thujer@phillipslytle.com
Myles K. Bartley (*Pro Hac Vice*)
mbartley@phillipslytle.com
**PHILLIPS LYTLE LLP**
One Canalside
125 Main Street
Buffalo, NY 14203-288
Telephone:   (716) 847-7050
Facsimile:    (716) 852-6100

*Attorneys for Defendant The Dow Chemical Company*

LATHAM & WATKINS LLP
Mary Rose Alexander (Bar No. 143899)
mary.rose.alexander@lw.com
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Tel:  312.876.7700
Fax:  312.993.9767

Shannon D. Lankenau (Bar No. 294263)
shannon.lankenau@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel:  415.391.0600
Fax:  415.395.8095

Michael A. Hale (Bar No. 319056)
michael.hale@lw.com
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Tel:  213.485.1234
Fax:  213.891.8763

*Attorneys for Defendant Marathon Oil Company*

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ............................................................................... 1

II.  DISCUSSION ................................................................................... 1

    A.  MDR's Remaining Nuisance and Trespass Claims Are Untimely ......................................................................................... 1

        1.  The Statute of Repose Precludes MDR's Claims ...................... 1

        2.  MDR's Well Claims Are Barred By the Statute of Limitation because the Alleged Nuisance Is Permanent ....................................................................... 7

    B.  The Consent Defense Precludes MDR's Claims ................................ 10

    C.  MDR's Nuisance Claims Fail as a Matter of Law ............................ 14

        1.  Civil Code Section 3482 Dictates the Well Is not a Nuisance ........................................................................ 14

        2.  MDR Caused any Nuisance Related to the Well .................... 16

    D.  MDR Fails to Raise a Genuine Issue of Material Fact Regarding Tortious Intrusion onto the Property ................................. 17

    E.  MDR Fails to Meaningfully Contest that Defendants' Quitclaim Deeds Extinguished MDR's Remaining Claims ............. 18

III.  CONCLUSION ................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baker v. Burbank-Glendale-Pasadena Airport Auth.*,
   39 Cal. 3d 862 (1985) ................................................................ 10

*Barnhouse v. City of Pinole*,
   133 Cal. App. 3d 171 (1982), *holding modified by Geernaert v. Mitchell*, 31 Cal.
   App. 4th 601 (1995) ................................................................ 5

*Bookout v. State of California ex rel. Dep't of Transp.*,
   186 Cal. App. 4th 1478 (2010) ................................................ 10

*Capogeannis v. Super Ct.*,
   12 Cal. App. 4th 668 (1993) .......................................... 9, 10, 12

*Carson Harbor Vill., Ltd. v. Unocal Corp.*,
   270 F.3d 863 (9th Cir. 2001) ................................................... 15

*Dep't of Health & Human Servs. v. Chater*,
   163 F.3d 1129 (9th Cir. 1998) ................................................. 12

*Donell v. Keppers*,
   835 F. Supp. 2d 871 (S.D. Cal. 2011) ...................................... 1

*Eden v. Van Tine*,
   83 Cal. App. 3d 879 (1978) ...................................................... 4

*Emeryville Redevelopment Agency v. Eltrex Inv. Corp.*,
   No. C 04-02737 WHA, 2004 WL 2359862 (N.D. Cal. Oct. 19, 2004) .............................. 11

*Field-Escandon v. Demann*,
   204 Cal. App. 3d 228 (Ct. App. 1988) ..................................... 10

*Friedman v. Pac. Outdoor Advert. Co.*,
   74 Cal. App. 2d 946 (1946) ..................................................... 11

*Garcia v. Salvation Army*,
   918 F.3d 997 (9th Cir. 2019) ................................................. 2, 3

*Grimmer v. Harbor Towers*,
   133 Cal. App. 3d 88 (1982) ...................................................... 6

*Gundogdu v. King Mai, Inc.*,
   171 Cal. App. 4th 310 (2009) ................................................... 4

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

*Healy Tibbitts Const. Co. v. Ins. Co. of N. Am.*,
   679 F.2d 803 (9th Cir. 1982) ............................................................................ 2

*In re Kleidman*,
   2022 WL 195338 (C.D. Cal. Jan. 21, 2022) ................................................... 19

*Kohler v. Flava Enters., Inc.*,
   779 F.3d 1016 (9th Cir. 2015) .......................................................................... 2

*Lantzy v. Centex Homes*,
   31 Cal. 4th 363 (2003) ..................................................................................... 4

*Lincoln Props., Ltd. v. Higgins*,
   No. S-91-760DFL/GGH, 1993 WL 217429 (E.D. Cal. Jan. 21, 1993) ..................... 13, 14

*Magnuson-Hoyt v. Cnty. of Contra Costa*,
   228 Cal. App. 3d 139 (1991) ............................................................................ 3

*Mangini v. Aerojet–General Corp.*
   230 Cal.App.3d 1125, 281 Cal.Rptr. 827 (1991) ................................. 11, 13, 14, 17

*Martin v. Occupational Safety & Health Rev. Comm'n*,
   499 U.S. 144 (1991) ....................................................................................... 12

*Mortkowitz v. Texaco Inc.*,
   842 F. Supp. 1232 (N.D. Cal. 1994) ........................................................... 13, 14

*PGA W. Residential Ass'n, Inc. v. Hulven Int'l., Inc.*,
   14 Cal. App. 5th 156, 186 (2017), *as modified* (Aug. 23, 2017) ......................... 1

*Preston v. Goldman*,
   42 Cal. 3d 108 (1986) ................................................................................ 4, 5

*Ream Holdings, LLC v. 3R Int'l Grp., Inc.*,
   No. 517CV00825SVWFFM, 2017 WL 8223645 (C.D. Cal. Aug. 17, 2017) ..................... 11

*Renown, Inc. v. Hensel Phelps Constr. Co.*,
   154 Cal. App. 3d 413 (1984) ............................................................................ 6

*Simmons v. Navajo Cnty., Ariz.*,
   609 F.3d 1011 (9th Cir. 2010), *overruled in part on other grounds by Castro v.*
   *Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc) ......................... 2

*Sutton Place of Santa Clara Cnty. Owners Ass'n v. Queen*,
   No. H045422, 2020 WL 500172 (Cal. Ct. App. Jan. 30, 2020) ......................... 3

*Thomas Jefferson Univ. v. Shalala*,
   512 U.S. 504 (1994) ....................................................................................... 12

*Tomko Woll Grp. Architects, Inc. v. Superior Ct.*,
   46 Cal. App. 4th 1326 (1996) ........................................................................... 4

*Tri-Dam v. Yick*,
   No. 1:11-CV-01301 ......................................................................................... 11

*Underwood Cotton Co. v. Hyundai Merch. Marine (Am.), Inc.*,
   288 F.3d 405 (9th Cir. 2002) ............................................................................ 2

*United States v. Brodie*,
   858 F.2d 492 (9th Cir. 1988) (Opp'n ) .......................................................... 18

*Williams v. Moulton Niguel Water Dist.*,
   22 Cal. App. 5th 1198, 1205 (2018), *as modified* (May 18, 2018) ................... 14

**Statutes**

Cal. Civ. Proc. Code § 337.15(a) ..................................................................... 3, 6, 7

Cal. Civ. Proc. Code § 337.15(a)(2) ........................................................................ 5

Cal. Civ. Proc. Code §§ 337.15(a), 337.1(a) ........................................................... 3

Cal. Civ. Proc. Code § 337.15(e) ............................................................................ 3

Cal. Pub. Res. Code § 53 (1915) ..................................................................... 14, 15

Cal. Pub. Res. Code §§ 3219-20, 3228, 3300 ....................................................... 16

Cal. Pub. Res. Code §§ 3220, 3228 (1939) ..................................................... 15, 16

Civ. Code § 1542 .................................................................................................. 19

Civil Code § 3482 ........................................................................................... 14, 15

**Other Authorities**

Fed. R. Civ. P. 8(c)(1) .............................................................................................. 1

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

# I.      INTRODUCTION

This Court should grant Defendants' summary judgment motion as Plaintiff has offered neither a material disputed fact nor controlling law in its opposition.  Instead, Plaintiff asks this Court, based on the same facts then known to the relevant regulator or Defendants' lessors, to revisit the decisions made by those entities, but to reach a different conclusion.  Court are not in the business of re-writing history, especially where neither the law nor the facts require a different outcome.

# II.     DISCUSSION

## A.      MDR's Remaining Nuisance and Trespass Claims Are Untimely

### 1.      The Statute of Repose Precludes MDR's Claims

MDR's five arguments regarding the statutes of repose all lack merit: (a) the defense is not waived; (b) the owner exception does not apply because neither Defendant controlled the property at the time of MDR's alleged injury; (c) there is no statutory duty exception to the statute; (d) MDR's claims are barred regardless of whether the alleged defects are latent or patent; and (e) Dow's Well abandonment qualifies as an improvement because it was intended to make the Property suitable for use by others.

#### (a)      The Statute of Repose Is Properly Before the Court

MDR incorrectly contends that Defendants waived the statute of repose for several independent reasons.  First, "a statute of repose is not an affirmative defense that needs to be pleaded in a defendant's answer to avoid waiver." *PGA W. Residential Ass'n, Inc. v. Hulven Int'l., Inc.*, 14 Cal. App. 5th 156, 186 (2017), *as modified* (Aug. 23, 2017).  "Unlike a traditional statute of limitations, a statute of repose cannot be waived." *Donell v. Keppers*, 835 F. Supp. 2d 871, 877 (S.D. Cal. 2011).  Rule 8 specifically requires that statutes of limitation be pled as affirmative defenses, but does not list statutes of repose. Fed. R. Civ. P. 8(c)(1).

Second, both Defendants affirmatively pled that MDR's claims were untimely.

Although Defendants referred to statutes of limitation in their Answers, Dkt. 57, at 11; Dkt. 58, at 10, and there are "sometimes arcane distinctions" between statutes of limitation and repose, both limit a plaintiff's rights based on the passage of time. *Underwood Cotton Co. v. Hyundai Merch. Marine (Am.), Inc.*, 288 F.3d 405, 409 (9th Cir. 2002). Accordingly, MDR was put on notice that Defendants contest the timeliness of its claims. *See Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1023 (9th Cir. 2010), *overruled in part on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc) ("The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense."). The fair notice standard "only requires describing the defense in general terms." *Kohler v. Flava Enters., Inc.*, 779 F.3d 1016, 1019 (9th Cir. 2015). And MDR was aware that time bars "set forth in the California Code of Civil Procedure" were at issue. Dkt. 58, at 10.

Third, a party may raise a "defense in a motion for summary judgment, whether or not it was specifically pleaded as an affirmative defense, at least where no prejudice results to the plaintiff." *Healy Tibbitts Const. Co. v. Ins. Co. of N. Am.*, 679 F.2d 803, 804 (9th Cir. 1982). "There is no prejudice to a plaintiff where an affirmative defense would have been dispositive if asserted when the action was filed." *Garcia v. Salvation Army*, 918 F.3d 997, 1008 (9th Cir. 2019) (quotation omitted). "Rather, a party must point to a tangible way in which it was prejudiced by the delay." *Id.* at 1009 (quotation omitted). Given the timeliness of MDR's claims was thoroughly addressed at the motion to dismiss stage, before Defendants' Answers were filed, MDR cannot demonstrate prejudice. *See* Dkt. 54 at 6-9.

Here, MDR identifies a single theory of purported prejudice: it asserts that the statute of repose applies only to contractors, and it failed to conduct discovery relating to Defendants' contractors. Dkt. 135 at 15. But MDR's premise is flatly inconsistent with the statute. The statute of repose prohibits recovery from "**any person** . . . who develops real property or performs . . . construction of an improvement to real property."

Cal. Civ. Proc. Code § 337.15(a) (emphasis added); *see also id.* § 337.1(a).   As California courts have held expressly, the statute "clearly and unambiguously expresses a legislative intent to put a 10-year limit on latent deficiency liability exposure for '**any person**.'" *Magnuson-Hoyt v. Cnty. of Contra Costa*, 228 Cal. App. 3d 139, 143 (1991) (footnote omitted, emphasis added).   MDR's attempt to restrict the statute to contractors is meritless—"[t]he plain language of the statute does not support such an interpretation; it makes no mention of licensing requirements, nor does it specifically refer to 'contractors.'" *Sutton Place of Santa Clara Cnty. Owners Ass'n v. Queen*, No. H045422, 2020 WL 500172, at *9 (Cal. Ct. App. Jan. 30, 2020).[1]   The statute of repose would have been dispositive at the case's outset, regardless of any immaterial contractor-related discovery.   *Garcia*, 918 F.3d at 1008.   MDR cannot establish prejudice, and the statute of repose is properly before the Court.

> **(b)     The Owner Exception Does not Apply because Defendants Did not Control the Property at the Time of the Alleged Injury**

The statute of repose contains a narrow (and inapplicable) exception for defendants in possession of a property at the time a defect causes an injury.   Neither Defendant owned nor leased the Property when MDR's claimed injury occurred.   There is no dispute that the County had complete control over the Property decades earlier. Dkt. 135-1, ¶ 58.   Accordingly, MDR's reliance on the owner exception is misplaced.

The statutes of repose "shall not be asserted by way of defense by any person in actual possession or the control, as owner, tenant or otherwise, of such an improvement, at the time any deficiency in the improvement constitutes the proximate cause for which it is proposed to bring an action."   Cal. Civ. Proc. Code § 337.15(e); *see also id.* § 337.1(d) (same).   MDR's assertion that the statute refers to the owner or tenant at the

---

[1] Similarly, MDR's argument regarding whether Defendants are "developers" is misplaced. Dkt. 135, at 16.   Neither provision creates a "class of persons protected" by the statute of repose, as MDR asserts.   *Id.*   Instead, both statutes apply to "any person" who engages in activities related to the construction of an improvement.   Cal. Civ. Proc. Code §§ 337.15(a), 337.1(a).

time of construction has been squarely rejected.  The owner exception "does not refer to the person in possession or control at time of construction, but to the person in possession or control at the time that the deficiency becomes the proximate cause of the damage." *Eden v. Van Tine*, 83 Cal. App. 3d 879, 886 (1978).  As the California Supreme Court explained, this language refers to the time the injury occurred.  *Preston v. Goldman*, 42 Cal. 3d 108, 123-24 (1986) ("This exclusion does not apply to the [defendants] because they were not in 'actual possession or . . . control' of the property when the accident occurred."); *see also Eden*, 83 Cal. App. 3d at 886; *Tomko Woll Grp. Architects, Inc. v. Superior Ct.*, 46 Cal. App. 4th 1326, 1337 (1996).

MDR's urged interpretation, rejected by the California courts, "would defeat the intent of the statute" because "[a]ll contractors, developers, etc. are in control of the project at some stage of its development." *Eden*, 83 Cal. App. 3d at 886.  That is, a defendant necessarily will be in control of a property at the time of construction. "Absent any allegation that [defendant]'s conduct following completion of the [improvement] caused plaintiffs' damages, there is no reason why [defendant] should be denied the protection that section 337.15 extends to developers." *Gundogdu v. King Mai, Inc.*, 171 Cal. App. 4th 310, 315 (2009).

MDR cites no cases to the contrary.  In *Grange Debris Box & Wrecking Co. v. Sup. Ct.*, the court noted in passing that the owner exception applied to a city, but did not identify when the defect caused the injury or discuss how the timing of the exception is measured.  16 Cal. App. 4th 1349, 1353-55 (1993), *disapproved of by Lantzy v. Centex Homes*, 31 Cal. 4th 363 (2003).  Similarly, in *Nixon-Egli Equip. Co. v. John A. Alexander Co.*, the court referred in dicta to "the time of the alleged defect" with respect to a claim that was dismissed on other grounds.  949 F. Supp. 1435, 1445-46 (C.D. Cal. 1996).  Notably, the defendant did "not dispute that they would still be liable as an owner and could not raise the statute" of repose.  *Id.* at 1446.  Neither case addressed the reasoning of *Eden*, 83 Cal. App. 3d at 886, or purported to overrule the California

Supreme Court's holding in *Preston*, 42 Cal. 3d at 123-24. Because Defendants were not in control of the Property when the alleged defect caused MDR's alleged injury, the owner exception is inapplicable.

### (c)   The Statutes of Repose Bar MDR's Claims Regardless of any Claimed Statutory Violation

The statutes of repose provide that "**[n]o action** may be brought to recover damages" for "[i]njury to property, real or personal, arising out of" a latent or patent deficiency. Cal. Civ. Proc. Code § 337.15(a)(2) (emphasis added); *id.* § 337.1(a)(2) (emphasis added). They "declare[] broadly that '[n]o action may be brought' with respect to latent deficiency or injury to property arising therefrom" regardless of the type of claim. *Barnhouse v. City of Pinole*, 133 Cal. App. 3d 171, 186 (1982), *holding modified by Geernaert v. Mitchell*, 31 Cal. App. 4th 601 (1995).

Courts repeatedly have rejected attempts to narrow the statutory text by excepting specific types of actions, as MDR urges here. In *Barnhouse*, the court held "causes of action based upon warranty and duty to warn are not exempt from section 337.15." *Id.* at 187. In *Chevron U.S.A. Inc. v. Superior Ct.*, the court explained that the Legislature "did not engraft a pollution exception upon the broad terms of section 337.15." 44 Cal. App. 4th 1009, 1018 n.4 (1994). And in *Moseley v. Abrams*, the court held that nothing in the statute "suggests that contract actions are exempt from its scope." 170 Cal. App. 3d 355, 362 (1985). So too with respect to MDR's assertion that the repose provisions do not apply if a statutory violation is alleged. Nothing in the text of sections 337.1 or 337.15 support such a limitation.

Nor does the lone case cited by MDR. In *San Diego Unified Sch. Dist. v. Cnty. of San Diego*, the court merely observed that a plaintiff may proceed on claims for damages that "were not proximately caused by or did not arise out of the 'latent deficiency' identified in the property." 170 Cal. App. 4th 288, 306 (2009). In that case, the plaintiff asserted claims unrelated to any deficiencies, claiming to have suffered damages "even if the landfill had been perfect in every respect." *Id.*

But here, MDR made no such claims.  It does not assert a right to recovery even if Defendants' work on the Well was "perfect in every respect."  *Id.*  Instead, all of its claims rest on purported failings in construction and abandonment activities on the Well.  Indeed, MDR specifically alleges "Defendants' negligent construction . . . and abandonment" was "[t]he direct and proximate cause" of its damages.  Dkt. 1-2, ¶¶ 17-18.[2]  The statutes of repose "appl[y] to damages sought where the latent deficiency is the proximate cause of either a diminution of value in the real property, or an injury to the property, real or personal."  *Grimmer v. Harbor Towers*, 133 Cal. App. 3d 88, 92 (1982).  All of MDR's claims match that description and are untimely.

### (d)    The Latent/Patent Issue Is Immaterial

MDR's alleged defects qualify as "latent" because they were "submerged and not clearly apparent or certainly present to any but a most searching examination."  *Renown, Inc. v. Hensel Phelps Constr. Co.*, 154 Cal. App. 3d 413, 420 (1984).  But the Court need not decide the latent or patent issue to dismiss MDR's claims under the statutes of repose.  If the claimed defects are latent or patent, they are barred by the corresponding statutes of repose.  Cal. Civ. Proc. Code § 337.15(a) (10-year statute of repose for latent defects); *id.* § 337.1(a) (four-year statute of repose for patent defects).  In either event, MDR's claims must be dismissed.

### (e)    Dow's Well Abandonment Was an Improvement

"As it is used in section 337.15, the term 'improvement' has been given a very broad interpretation."  *Gaggero*, 124 Cal. App. 4th at 615.  Dow's Well abandonment work plainly qualifies under *Gaggero*, which is directly on point.  There, defendant's abandonment of a landfill was held to be an improvement because "in filling it, covering it and selling it, the [defendant] was engaged in making the real property suitable for further use by others."  *Id.* at 618.  Statutes of repose unambiguously cover "these sorts of purposeful alterations."  *Id.*  The *Grange* court likewise explains that removal and

---

[2] MDR's claimed deficiencies are specifically identified in its Interrogatory Response Nos. 15-16.  *See* Dkt. 129-30.

abandonment work is governed by the statutes, applying them to work "to demolish the existing structures on the site, remove underground tanks, remove and dispose of debris, cap sewer laterals and undertake minor grading."  16 Cal. App. 4th at 1353.

Faced with these controlling authorities, MDR attempts to minimize Dow's Well abandonment activities.  Initially, even if it were true that Dow attempted only to remove the Well casing, that activity would qualify as an improvement as did the removal of underground tanks in *Grange*. *Id.*  But the Well records show that Dow also "[i]nstalled Mac Clatchie cement head," "cemented under pressure with 150 sacks of cement and displaced heavy mud," "[s]hot hole in 11 3/4" casing at 625' and pumped in 150 sacks of cement," "[d]umped 32 sacks of cement on wooden plug," and "[h]ung wooden plug 35' from surface," Dkt. No. 129-3 (Hujer Decl., Ex. 3, at 24).  Like the filling and covering of a landfill in *Gaggero* and the demolition and capping in *Grange*, this work qualifies under the broad interpretation of improvement in the statutes of repose.  MDR's filed  its claims decades after the repose period expired; the Court accordingly find these claims untimely.

### 2.   MDR's Well Claims Are Barred By the Statute of Limitation because the Alleged Nuisance Is Permanent

#### (a)   MDR Has Not Abated the Nuisance

MDR implicitly or explicitly concedes it (1) feasibly could have abated the Well before it rendered the Well's condition permanent; (2) could not do so after dropping its drill string into the Well, causing an insurmountable obstruction; (3) did not fully abandon the Well by failing to isolate the upper hydrocarbon gas zone and to prevent further gas migration, leaving the Well at a *heightened risk for future gas releases and blowouts*; and (4) failed to comply with DOGGR's requirements.  Opp'n at 21-22.  It is also undisputed that DOGGR disapproved of MDR's re-abandonment because the Well "remains an elevated risk for future gas releases," and both DOGGR and the County

agreed that "gas migration pathways at depth were not sealed" by MDR.[3]   SSUF 92,
95-96; Hujer Decl. Ex. 53 (MDR admitting that DOGGR disapproved of MDR's re-
abandonment).

Having conceded these critical points supporting summary judgment in
Defendants' favor, MDR is left to argue that (1) it eventually abandoned the Well under
a modified abandonment plan (that did not comply with DOGGR requirements);
(2) because the hotel has been operational since October 2020, the nuisance was
somehow abated; (3) the Well was abatable prior to MDR's faulty re-abandon efforts;
and (4) policy interests favor a finding of a continuing nuisance.   None of these
arguments, alone or combined, proves the Well is a continuing nuisance.

*First*, it is undisputed the only reason DOGGR eventually allowed MDR to
proceed with its alternative plan—leaving the upper hydrocarbon gas zone unsealed—
was because MDR claimed that re-abandoning the Well to depth in compliance with
regulations (*i.e.*, abating the Well) was no longer feasible due to the obstruction MDR
caused, and DOGGR agreed.   SSUF 88, 89.   This fact alone demonstrates the Well is a
permanent nuisance (if it is a nuisance at all).   Isolating *some*, but not all, of the required
zones means the Well was not abated.   Ironically, **MDR failed to isolate the very same
zones**—the uppermost hydrocarbon gas and upper oil-bearing zones—**that MDR
alleges Defendants failed to isolate** thereby causing the alleged nuisance in the first
place.   MDR did not abate the very circumstance it claims created a nuisance.

*Second*, MDR does not allege that the *hotel property* is a nuisance.   The fact that
MDR completed its hotels is irrelevant to whether the Well remains, and will remain,
at a heightened risk for future gas releases and blowouts (which it does and will forever)
due to MDR's own failure to properly re-abandon the Well.

*Third*, whether the Well was abatable prior to the blowout caused by MDR is

---

[3] The County's approval of MDR's abandonment is of no consequence.  The County
was not involved in the interpretation or application of oil and gas regulations, nor is
that within its authority to do so.  *C.f.* SSUF 7.

immaterial.  MDR cites no authority for the proposition that a permanent nuisance is not permanent if it was once—but is no longer—abatable.  Nor are Defendants aware of any authority allowing such a maneuver to avoid the statute of limitations.  Indeed, MDR's own authority confirms that whether a nuisance is continuing does not turn on whether the Well *could* have been abated in the past, but whether the Well "**can** be discontinued, or abated, 'at any time[.]'"  *Capogeannis*, 12 Cal. App. 4th at 677 (emphasis added).

*Fourth*, "policy considerations" cannot save MDR's nuisance claim.  Opp'n at 18-19, 20-21.  MDR's sole case stands only for the proposition that in a "close or doubtful" case, a court may allow a plaintiff to "elect . . . to pursue" a continuing nuisance theory.  *Capogeannis v. Super Ct.*, 12 Cal. App. 4th 668, 679 (1993).  This is not a "close or doubtful" case—MDR readily admits it could not isolate the uppermost hydrocarbon gas or the upper oil-bearing zones, and its failure to do so prevented MDR from completing the reabandonment in accordance with DOGGR requirements.  At any rate, the so-called policy considerations cut against finding the alleged nuisance to be continuing in this case.[4]  MDR already attempted unsuccessfully to abate the alleged nuisance and finding the nuisance to be continuing at this juncture would not incentivize MDR to perform any further work to abate the Well.   Moreover, there is little "policy" argument to be made for protecting MDR after it leased the Property "as is," disturbed a long-abandoned oil well, and sued two extremely remote lessees who left the Property decades ago.  For these reasons, and because the Well cannot now be abated, it is a permanent nuisance (if it is a nuisance at all).

---

[4] MDR's discussion of brownfields and trace pollution is inapposite.  Opp'n at 20-21. The relevant alleged nuisance is the Well, which remains at a heightened risk for future gas releases and blowouts, not trace soil contamination or "vapor," which was removed and thus clearly constitutes a continuing nuisance.  *Id.*  In addition, the Court should disregard MDR's attempt to confuse the issue by referencing a consequence of the permanent nuisance (permanent monitoring), *id.*, rather than the alleged permanent nuisance itself (the Well) and its accompanying risk.

**(b)     The Well Is a Quintessential Permanent Structure**

MDR's undisputed position throughout these proceedings has been that **the entirety of the Well is a nuisance** and a trespass and that the Well is a "structure." SSUF 110; Dkt. 135-1.  But MDR now contends, without citing a single authority in support, that the nuisance's classification as continuing or permanent is based on the means taken to abate the nuisance.  Opp'n at 18.  California courts repeatedly have held the encroachment of similar physical structures like buildings, walls, foundations, pipes, and vents erected on and under another's property are permanent in nature.  *Field-Escandon v. Demann*, 204 Cal. App. 3d 228, 233 (Ct. App. 1988) (collecting cases); *see also Baker v. Burbank-Glendale-Pasadena Airport Auth.*, 39 Cal. 3d 862, 869 (1985).  As one example, in *Bookout v. State of California ex rel. Dep't of Transp.*, 186 Cal. App. 4th 1478, 1489-90 (2010), the court held that the raised rail bed and culvert pipe installed "at least since 1940" by the railroad defendant, and which allegedly caused flooding to the plaintiff's property, were "solid structure[s]" that were not removed and thus, permanent in nature.  MDR's own authority highlights its absurd position, as it distinguished these quintessential solid structures from the storage tanks at issue in that case because the storage tanks that leaked and contaminated the property "were removed, long before the [] complaint was filed" and thus, "there were . . . no[] 'solid structures.'"  *Capogeannis*, 12 Cal. App. 4th at 682.  There is no dispute that the Well remains on the Property and it is not going anywhere.  By its very nature, the Well is "unquestionably permanent," and MDR's Well claims are barred by the three-year limitations period.  *Baker*, 39 Cal. 3d at 869.

**B.     The Consent Defense Precludes MDR's Claims**

**1.     Public Nuisance Claims by Private Parties are Subject to the Consent Defense**

MDR ignores the California appellate court's holding that non-representative public nuisance claims brought by **private parties** for damages (as opposed to representative public nuisance claims to protect public rights) are subject to the consent

defense.  *See Mangini v. Aerojet–General Corp.* 230 Cal.App.3d 1125, 1139, 281
Cal.Rptr. 827, 835 (1991) ("*Mangini I*"); *accord Ream Holdings, LLC v. 3R Int'l Grp.,
Inc.*, No. 517CV00825SVWFFM, 2017 WL 8223645, at *2 (C.D. Cal. Aug. 17, 2017).
In explaining the consent defense's applicability, the Court of Appeal held the "defense
of consent [is not] vitiated simply because plaintiffs seek damages based on special
injury from public nuisance." *Mangini I*, 230 Cal. App. 3d at 1139; *see also Ream
Holdings, LLC v. 3R Int'l Grp., Inc.*, No. 517CV00825SVWFFM, 2017 WL 8223645,
at *2 (C.D. Cal. Aug. 17, 2017) ("With any private or public nuisance claim brought by
a private entity, consent to the entry or activity is an affirmative defense to the asserted
claim for nuisance.").  MDR's cited authority that consent is not a defense to public
nuisance is unconvincing.  Opp'n at 27.  Both *Emeryville Redevelopment Agency* and
*Tri-Dam* are cases of a public or quasi-public entity pursuing a public nuisance claim,
they are inapposite here.  *Emeryville Redevelopment Agency v. Eltrex Inv. Corp.*, No. C
04-02737 WHA, 2004 WL 2359862, *6 (N.D. Cal. Oct. 19, 2004); *Tri-Dam v. Yick*,
No. 1:11-CV-01301 AWI-SMS, 2016 WL 4061348, *3 (E.D. Cal. July 18, 2016).
*Friedman* did not involve a public nuisance claim at all.  *Friedman v. Pac. Outdoor
Advert. Co.*, 74 Cal. App. 2d 946 (1946).  In light of *Mangini I*, and absent contrary
authority, MDR's argument fails.

## 2.    MDR Offers No Evidence of Unlawful Acts

MDR's argument that the consent defense is inapplicable because Defendants'
actions (Marathon's alleged failure to shut-off gas-bearing zones; Dow's (a) perforation
of the Well, (b) supposed failure to disclose the perforations or their location in
"sensitive geologic zones," and (c) claimed failure to shut off and isolate oil, gas, and
water zones) violated PRC §§ 3219, 3220, 3228 is wrong because MDR ignores the
statutes' controlling language.  Each statute's mandate or prohibition (*e.g.*, equipping
the well with sufficient strength, encasing the well with water-tight and adequate casing,
or abandoning the well) is subject to the requirement that the action is accomplished "in

accordance with methods approved by the supervisor or the district deputy."  PRC §§ 3219, 3220, 3228.  And for every purportedly unlawful act, MDR admits those acts were approved by DOGGR.  SSUF 9, 11, 34-35, 40-42.

Offering no authority, MDR asks this Court to second-guess DOGGR's decades-old decisions and find a statutory violation, when DOGGR—the entity MDR agrees is responsible for ensuring compliance with California laws and regulations regarding the drilling, operation, and closure of oil and gas wells in California, SSUF 7—did not, despite being armed with the same information MDR now puts before this Court.  *See Dep't of Health & Human Servs. v. Chater*, 163 F.3d 1129, 1135 (9th Cir. 1998) (deference afforded to agency's reasonable construction of its own regulatory language because its expertise makes it well-suited to interpret its own language); *Martin v. Occupational Safety & Health Rev. Comm'n*, 499 U.S. 144, 151 (1991) ("Because applying an agency's regulation to complex or changing circumstances calls upon the agency's unique expertise and policymaking prerogatives, we presume that the power authoritatively to interpret its own regulations is a component of the agency's delegated lawmaking powers."); *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (deference to agency's interpretation is warranted when "the regulation concerns a complex and highly technical regulatory program, in which the identification and classification of relevant criteria necessarily require significant expertise and entails the exercise of judgment grounded in policy concerns") (citation omitted).  MDR itself concedes that "[c]ourts look to what the public agencies view as the appropriate form of abatement."  Opp'n at 19 (citing *Capogeannis*, 12 Cal. App. 4th at 683).

MDR's "failure to disclose" allegations also fail because they ignore this Court's prior decision taking judicial notice of DOGGR's records.  Dkt. 54 at 5.  DOGGR's records demonstrate Dow informed it of the Well perforations, and MDR offers no evidence to dispute this fact.  SSUF 34.  And those same records show exactly where those perforations were in the Well and whether they were (or were not) in "sensitive

geologic zones" (whatever that is supposed to mean).  *Id.*  Thus, MDR's argument that Dow failed to disclose this information is belied by DOGGR's own records and the Court's judicial notice of those facts.  Dkt. 54 at 4-5.[5]

### 3.   Defendants Acted within the Scope of Their Consent

MDR's argument that Dow allegedly (1) violated the law, and (2) violated its lease thereby acting outside of its consent is also incorrect.[6]  There is no evidence Dow violated its lease (other than MDR's re-reading of the lease's terms nearly 70 years after Dow exited its lease).  MDR points to no claim or action by the property owner or any lessor asserting Dow did not fully comply with the lease terms.  And the complained-about actions MDR does note (*e.g.*, pulling the casing or leaving the casing in place following abandonment) were expressly authorized by Dow's lease.  SSUF 29; *see also* Hujer Decl. Ex. 7 at 2 & para. 8.

Nor does MDR attempt to prove that Marathon violated the terms of its lease— it cannot.  Marathon's ratified lease, which is the only available document setting forth the scope of Marathon's consent, granted it broad powers, including expressly authorizing it to "explore, mine and operate, take, store, remove and dispose of oil, gas . . . and other hydrocarbon substances."  SSUF 1.  And as with its failure regarding Dow's lease, MDR fails to identify a single lessor, owner, regulator, or other entity claiming any violation of Marathon's lease or ratified lease.[7]

MDR's authority is inapposite.  *See Mangini I*; *Mortkowitz v. Texaco Inc.*, 842 F. Supp. 1232 (N.D. Cal. 1994); *Lincoln Props., Ltd. v. Higgins*, No. S-91-760DFL/GGH,

---

[5] Even if the Court were to examine the "failure to shut off" allegations, there would still be no unlawful acts found as Defendants did properly shut off the requisite zones. Marathon properly shut off the oil-producing zone when it completed its operations, and DOGGR witnessed and approved its action.  SSUF 15-16, 18.  Similarly, Dow plugged and abandoned the Well with DOGGR's representative witnessing the action and approving Dow's operations.  SSUF 34-43.

[6] Importantly, MDR fails to rebut Defendants' argument that proving lack of consent is part of MDR's prima facie case.  Mot. at 1, 19-20.  MDR thus concedes it has the burden to prove lack of consent.

[7] As set forth Section II.B.2, *supra*, it is undisputed that MDR, not Defendants, has the burden of establishing that Defendants lacked consent for their activities.  The fact that Marathon's lease has not be located does not relieve MDR of its burden of proof.

1993 WL 217429 (E.D. Cal. Jan. 21, 1993). *Mangini I* dealt only with pleading standards, and unlike here, was not addressing a summary judgment motion. In *Mortkowtiz*, the defendant admitted it installed the defective pipes and tanks which caused the purported harm. 842 F. Supp. at 1241. Here, in contrast, not only is there no admission of liability or any evidence Defendants acted negligently, all available evidence indicates their actions were witnessed and approved by DOGGR, which is the entity responsible for ensuring compliance with California's laws and regulations regarding the drilling, operation, and closure of oil and gas wells in California. SSUF 7, 8, 15, 18, 34-43. In *Lincoln Props.*, the defendant was acting without a permit and plaintiff sought an injunction, whereas here both Defendants' actions were pursuant to DOGGR-issued permits (or approvals) and no injunction is or ever was sought.

### C.   MDR's Nuisance Claims Fail as a Matter of Law

#### 1.   Civil Code Section 3482 Dictates the Well Is not a Nuisance

MDR claims section 3482 is inapplicable because Defendants purportedly failed to cite any statute or "anything" that expressly authorized Defendants' activities in constructing and abandoning the Well. Opp'n at 29. But MDR overlooks that DOGGR expressly authorized Defendants' actions, Mot. at 24, and ignores clear authority that section 3482 "include[s] regulations and **other express government approvals**." *Williams v. Moulton Niguel Water Dist.*, 22 Cal. App. 5th 1198, 1205 (2018), *as modified* (May 18, 2018) (emphasis added). DOGGR had the broad power and authority to interpret and incorporate the applicable statutes' requirements regulating Defendants' activities into the specific permits and approvals it issued once the operations were performed.[8] SSUF 7; Cal. Pub. Res. Code § 53 (1915); *see also id.* § 42 (1929); *id.* § 3013 (Westlaw through Ch. 1 2023 Reg. Sess.). DOGGR issued permits to Defendants to perform all relevant activities on the Well and issued subsequent

---

[8] MDR concedes that DOGGR is responsible for ensuring compliance with California's laws and regulations regarding the drilling, operation, and closure of oil and gas wells in California. SSUF 7.

approvals after inspecting and witnessing Defendants' activities.  SSUF 9, 11, 15, 16, 18, 34, 35, 38, 39.[9]

Contrary to MDR's assertion, *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 888 (9th Cir. 2001), underscores section 3482's applicability.  There, the Ninth Circuit granted summary judgment in defendants' favor where there was no evidence the Water Quality Board issued permit violations.  *Id.*  The Court specifically referenced the permits, not statutes or "other laws." *Id.*  Nowhere in the Complaint does MDR allege Defendants violated the permits or approvals that DOGGR issued pursuant to Cal. Pub. Res. Code §§ 53 (1915), 42, and 3013.  Conversely, DOGGR's approvals of Defendants' operations demonstrate the opposite.

Further, while it is true section 3482 is inapplicable if the manner in which permitted acts are performed constitute a nuisance, MDR ignores that the statutes themselves do not specify any specific method or manner for construction of the work; rather, the statutes make clear the well activities be done by "methods **approved by the supervisor** or the district deputy."  Cal. Pub. Res. Code §§ 3220, 3228 (1939) (well activities may be done "in accordance with methods **approved by the supervisor** or the district deputy") (emphasis added).  To the extent DOGGR specified any method or manner for Defendants' activities, MDR does not allege Defendants violated the permits or approvals DOGGR issued.  Nor could it.  It is undisputed that Marathon informed DOGGR of its drilling, core, casing, cementing, and perforation history, and

---

[9] MDR does not meaningfully dispute SSUF 11, 18, 34, 35, 38, and 39.  With respect to SSUF 11, MDR does not dispute that DOGGR approved of Marathon's proposed actions to drill the well, and offers no evidence that Marathon did not ultimately drill the Well in accordance with those specifications.  With respect to SSUF 18, MDR admits that DOGGR approved of the location and hardness of the cement plug that Marathon placed at 3,376 bgs, which was the only plugging and abandonment activity that Marathon undertook.  With respect to SSUF 34, MDR does not dispute that Dow notified DOGGR of its plan to perforate the Well in 1941 or that DOGGR approved of its plan.  With respect to SSUF 35, MDR does not dispute that DOGGR approved of Dow's plan to plug and abandon the Well.  MDR also does not dispute SSUF 38 insofar as DOGGR observed and approved of Dow's actions to address the 1956 blowout.  Finally, it is indisputable that DOGGR issued a finding that Dow "fulfilled" the requirements of the Division.  SSUF 39.

its abandonment, water-shut off tests, and transfer of the Well to Dow.  SSUF 11, 12.  DOGGR approved of Marathon's proposed and actual activities, including its drilling and abandonment.   SSUF 15, 16, 18.   Similarly, Dow informed DOGGR of its "[p]reforat[ing]," "plug[ging]," "cement[ing]," and "test[ing]" for saltwater production, and later its abandonment, water shut-off tests, and transfer of the Well to the County; again, DOGGR witnessed and approved of these activities.  SSUF 40, 41.  DOGGR witnessed and approved Defendants' water shut-off tests as required by Cal. Pub. Res. Code §§ 3220, 3228.[10]  SSUF 12, 41.  Thus, it is undisputed that Defendants conducted their activities pursuant to the statutes in effect at the time as interpreted and applied by DOGGR, as evidenced by DOGGR's permits and approvals.

## 2.   MDR Caused any Nuisance Related to the Well

MDR does not dispute that, had it not developed the Property or constructed a building directly over the Well, the Well would have remained undisturbed, it would have posed no risk to the public or to MDR, and MDR would not have had to re-abandon it or "remedy the [alleged] problem."  Opp'n at 29.  Moreover, MDR does not contest that there was "no mention of leakage [] identified" when the County reabandoned the Well in 1959, and there was no evidence of any issues with the Well **prior to MDR coming to the Property**.  SSUF 56, 57, 111.  Further, MDR's supposed damages are the result of its own negligence.  *See* Opp'n at 5-9; SSUF 85.  MDR admits that the

---

[10]  MDR repeatedly conflates "isolation of oil and gas-bearing zones" with the requirement to "shut off water from gas and oil zones."  *See, e.g.*, Opp'n at 2, 6.  But none of the applicable statutes required "isolation" of oil and gas-bearing zones during Defendants' operations.  *See* Cal. Pub. Res. Code §§ 3219-20, 3228, 3300.  Instead, sections 3220 and 3228 required that an owner or operator "in accordance with the methods approved by the supervisor or the district deputy" and "under his direction" "shut off" and "exclude" all water from entering oil-bearing or gas-bearing strata encountered in the well.  *Id.* §§ 3220, 3228.  The requirement to "isolate" oil and gas-bearing zones was not added until 1984.  *See* Bartley Decl., Ex. 1, 1983-84 California Legislature's Regular Session and Second Extraordinary Session, Chapter 278 ("Under existing law, before abandoning a well, the owner or operator is required to shut off and exclude all water from entering oil-bearing or gas-bearing strata.  This bill would instead require the owner or operator to isolate all oil-bearing or gas-bearing strata.").

Well only blew out twice in the past six decades—both times while MDR was operating and abandoning the Well.  SSUF 85.  MDR thus created any nuisance.

### D.   MDR Fails to Raise a Genuine Issue of Material Fact Regarding Tortious Intrusion onto the Property

Summary judgment regarding the lack of intrusion is proper for several independent reasons.  First, MDR failed to address Defendants' main point: oil and gas were not intrusions because they pre-existed Defendants' presence at the Property.  Not only was MDR silent on this key issue, but these facts are indisputable and conspicuously stated in the public Well file.  Dkt. 128-1 at 26-27 (citing SSUF 4).

Second, MDR offers no legal or factual support contradicting the point that a trespass does not occur where, as here, a substance simply migrates within the same property.  The only case MDR cites, *Mangini I*, does not support the argument that Defendants trespassed when they "pulled up [oil and gas] from over a half mile below the surface."  Dkt. 135 at 31 (citing *Mangini I*, 230 Cal. App. 3d at 1141-42).  *Mangini I* did not involve an intrusion that began below ground, but rather rocket fuel brought onto the property from elsewhere.  *See* Dkt. 128-1 at 26.  And MDR admits that "[t]here is no legal support for the[] claim that a trespass claim can be based [on] crude oil removed from 3,400 ft. bgs and left at the surface."  Dkt. 135, at 30.  Defendants agree.

MDR also offers Jeffrey Jordan's conclusory declaration claiming the Well may have pulled oil and gas from outside the Property's boundaries.  Jordan Decl. ¶ 6.  Mr. Jordan's new claim is not only conclusory, but wrong, as MDR again incorrectly asserts the Well is "adjacent to the boundary of the Property," when in fact it admitted the Well lies inside the Property and underneath MDR's own parking garage.  Opp'n at 9, 31 ("The well was located . . . within the planned footprint of the development, under the planned parking garage.").  It is from this location that the Well extracted oil and gas.

Finally, MDR asserts that the Well itself is an intrusion.  But again, Defendants' leases authorized construction and operation of the Well.  *See* Section II.B.3, *supra*.  Moreover, after it became the owner, the County continued to operate the Well.  SSUF

55, 56.  And if the Well is *the* intrusion, it is a permanent one, and MDR's claim is barred by the limitations period.  Dkt. 128-1 at 17-18; *see also* Section II, A., 2., (b)., *supra*.  As neither the soil nor the Well are an unauthorized intrusion on the Property or because MDR's claim is stale and precluded by the limitations period, summary judgment should be granted on MDR's trespass claim.[11]

### E.   MDR Fails to Meaningfully Contest that Defendants' Quitclaim Deeds Extinguished MDR's Remaining Claims

MDR misrepresents Professor Laura Underkuffler's expertise and opinions.[12] Contrary to MDR's unsupported assertions,[13] Professor Underkuffler specifically testified that she has expertise in oil well leases, quitclaim deeds, and California law as it relates to real property issues.  Bartley Decl., Ex. 2, Underkuffler Tr. at 26:13-28:8, 29:7-16, 46:20-47:24, 68:16-70:17, 75:16-77:8, 189:24-190:19.  Nonetheless, MDR incorrectly asserts that Professor Underkuffler's "opinion" is impermissible contractual interpretation, but then fails to explain how Professor Underkuffler is offering contractual interpretation.[14]  Opp'n at 32-34.  She is **not**.  She instead opines on the historic understanding within the oil and gas industry as to the purpose and intended effect of quitclaim deeds.  This contemporaneous historic understanding is relevant to the **Court's** interpretation of the quitclaim deeds at issue and their effect on MDR's

---

[11] For the second time, MDR is in a state of high dudgeon over Defendants pointing out its acceptance of a $10 million rent credit from the County for "extras."  Opp'n at 32; Dkt. 127 at 9-10.  But its feigned offense is not accompanied by any evidence disputing Defendants' showing.  *See, e.g.*, SGD 126 (Mr. Pangelinan, who admitted on Defendant's questioning that the "extras," including "oil well abandonment, the methane mitigation, and the soil remediation," testified in response to MDR's leading examination, when asked if these items were included in the "extras," said "I don't recall . . . but if that's what . . . [our financial consultant] wanted, we probably had to do it.").  His lack of recollection from MDR's friendly exam, accompanied by the contemporaneous email and spreadsheet detailing the credit, is more than enough evidence for this Court to find MDR received the $10 million credit.  SSUF 73.

[12] MDR does not ask the Court to exclude Professor Underkuffler's opinions.

[13] MDR tellingly does not include a single citation to or quotation from Professor Underkuffler's deposition transcript (or report) despite deposing her for a full day.

[14] MDR's cases are inapposite for this reason.  Opp'n at 32-33.  And, unlike in *United States v. Brodie*, 858 F.2d 492, 496-97 (9th Cir. 1988) (Opp'n at 33), Professor Underkuffler is providing relevant historic background, not "instructions on the law." Unlike in *Brodie*, which rested on the "judge instruct[ing] the jury in the law," 858 F.2d at 496, there is no jury here.

claims.  Indeed, the Court previously explained that these deeds must be construed by taking into account the parties' intent, Dkt. 54 at 11, a point MDR does not contest. Defendants are not offering the "exact same evidence" or seeking reconsideration. Opp'n at 35.  This is no longer the pleading stage.  Defendants have submitted evidence, *i.e.*, Professor Underkuffler's **unrebutted** expert testimony, that coupled with the quitclaim deeds leads to the inexorable conclusion that Defendants were released of any and all obligations (including tort liability) related to the Property and Well and that MDR thus could not have inherited any rights or obligations established by the surrendered leases.  MDR did not offer any expert testimony to rebut Professor Underkuffler's opinion regarding the historic understanding of the purpose and effect of quitclaim deeds, thereby conceding her opinions and testimony.  *In re Kleidman*, 2022 WL 195338, at *6 (C.D. Cal. Jan. 21, 2022) ("Appellant failed to offer any expert testimony to rebut [expert's] testimony and, as a result, Appellant failed to demonstrate that there were any genuine issues of fact for trial.").[15]  Defendants respectfully request that the Court consider the undisputed evidence regarding the purpose, intent, and understanding of quitclaims deeds in the historic oil and gas industry and hold that MDR's claims are thereby barred.

## III.   CONCLUSION

Curiously, MDR contends Defendants' motion does not address its whole claim. Opp'n at 37.  But MDR does not have a stand-alone "soil contamination" claim. Defendants' arguments that MDR's trespass and public/private nuisance claims are barred by the statutes of repose, untimely, barred by consent, fail as a matter of law, fail because there is no trespass, and are barred by the quitclaim deeds naturally include both "Well" and "soil" claims, as MDR did not plead them separately.

Defendants respectfully move the Court enter summary judgment in their favor .

---

[15] Contrary to MDR's assertion that Defendants provide no evidence that RGC waived protections relating to unknown future tort claims, Opp'n at 36 (citing Civ. Code § 1542), Defendants provided **unrebutted** expert testimony that establishes exactly that.

Dated: March 31, 2023

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

By: */s/ Patrick J. Foley.*
　　Patrick J. Foley
　　Attorneys for Defendant
　　*The Dow Chemical Company*


**PHILLIPS LYTLE LLP**

By: */s/ Joel A. Blanchet*
　　Joel A. Blanchet (*Pro Hac Vice*)
　　Tristan D. Hujer (*Pro Hac Vice*)
　　Myles K. Bartley (*Pro Hac Vice*)
　　Attorneys for Defendant
　　*The Dow Chemical Company*


**LATHAM & WATKINS LLP**

By: */s/ Mary Rose Alexander*
　　Mary Rose Alexander
　　Shannon D. Lankenau
　　Michael A. Hale
　　Attorneys for Defendant
　　*Marathon Oil Company*

## <u>ATTESTATION</u>

Pursuant to Local Rule 5-4.3.4(a)(2)(I), I, Myles K. Bartley, attest under penalty of perjury that I have obtained concurrence and authorization from the other signatories to affix their electronic signatures to this filing.

Dated: March 31, 2023

**PHILLIPS LYTLE LLP**

By */s Myles K. Bartley*
Myles K. Bartley

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for the Defendant The Dow Chemical Company, certifies that this brief complies with the page limit set by court order dated February 17, 2023 (ECF No. 123).

Dated: March 31, 2023                    **PHILLIPS LYTLE LLP**

                    By */s/ Myles K. Bartley*
                    Myles K. Bartley

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT